**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WCA HOLDINGS III, LLC<br><br>         Plaintiff,<br><br>- against -<br><br>PANASONIC AVIONICS CORPORATION,<br><br>         Defendant. | Case No.: 1:20-cv-7472<br><br>**AMENDED COMPLAINT** |

Plaintiff WCA Holdings III, LLC alleges as follows:

## NATURE OF CLAIMS

1. WCA Holding III, LLC ("WCA") owns a Boeing 737-700 BBJ private aircraft (the "Aircraft"). Pursuant to a "General Terms Agreement" and series of amendments thereto (collectively, the "GTA"), Panasonic Avionics Corporation ("Panasonic") agreed to provide a number of products and services for the Aircraft in exchange for cash or in-kind payment by WCA. Panasonic has materially breached the GTA by failing to perform its obligations.

2. Panasonic offered—and WCA accepted—the installation of (i) an eXConnect system (creating a broadband connection to the Aircraft) and (ii) a new cabin management and in-flight entertainment system in the Aircraft, known as the eX1 system. WCA paid for the eXConnect system pursuant to the payment terms in the Agreement. WCA agreed to pay Panasonic for the eX1 system by providing "demonstration flights" (allowing Panasonic to show the system to other prospective customers) and flight testing activities (allowing Panasonic to obtain Federal Aviation Administration certification of its system for commercial use). To the extent WCA elected not to provide demonstration flights, WCA was alternatively obligated to pay Panasonic the cash value of the eX1 system pursuant to Exhibit F of the Agreement. WCA did in

fact provide the in-kind payment to Panasonic in the form of demonstration flights and flight-testing for FAA certification.

3.  While Panasonic installed the eXConnect and eventually installed the eX1 system after years of delays, the combination of the eXConnect and eX1 products and software were not free from defects and did not operate in accordance with Panasonic's specifications.  As a result, the products and software did not perform as intended and represented.  For example, the exConnect and eX1 system was intended to provide live television streaming to the Aircraft and an in-cabin management system.  The exConnect and eX1 system did not perform as specified, failing to provide live television streaming and containing numerous non-working or incomplete components in the cabin management system.

4.  Although Panasonic made efforts to repair or replace the defective products and software, those efforts were unsuccessful.  Panasonic representatives have stated that Panasonic is unable to repair or replace the original products and software to put the combined eXCOnnect and eX1 system in full working condition.

5.  Panasonic further agreed in the amendments to the GTA that the eX1 system would be upgraded over time.  WCA again agreed to pay Panasonic for the cost of the eX1 system upgrades via (i) flight tests to obtain FAA certification and (ii) in-kind demonstration flights and/or cash.  Alternatively, under Exhibit F to the Agreement, WCA was permitted to pay cash for the future eX1 system if it chose not to pay in-kind with demonstration flights.  Despite years of waiting, Panasonic has not installed the eX1 upgrades in the Aircraft.  Prior to the initiation of this action, Panasonic employees acknowledged Panasonic's obligations to provide upgrades to the eX1 system.  In a May 9, 2020 email, a Panasonic representative implicitly acknowledged that

Panasonic cannot perform its obligations to provide the eX1 upgrades and requested that WCA accept a separate system from third party IDAIR GmbH, which was to be paid for in cash by WCA.

6. Panasonic has materially breached the GTA by (i) failing to provide a fully working eXConnect and eX1 system, (ii) failing to repair or replace the eXConnect and eX1 system as required by the GTA's warranty provisions, and (iii) failing to provide any of the eXConnect eX1 upgrades. At a minimum, WCA has suffered or will suffer hundreds of thousands of dollars damages from Panasonic's breach in the form of the cost of obtaining replacement performance of Panasonic's obligations and/or the diminution in value of the Aircraft.

## PARTIES

7. Plaintiff WCA Holdings III, LLC is a Montana limited liability company with its principal place of business in Missoula, Montana. The sole member of WCA Holdings III, LLC is Washington Capital Advisors, LLC, a Montana limited liability company. The sole member of Washington Capital Advisors, LLC is the personal trust of Dennis Washington. Dennis Washington is a citizen of and resides in the state of Montana.

8. Defendant Panasonic Avionics Corporation is a Delaware corporation with its principal place of business in Lake Forest, California.

## JURISDICTION, VENUE AND GOVERNING LAW

9. This Court has original jurisdiction as to these claims pursuant to 28 U.S.C. § 1332 because the citizenship of WCA is diverse from the citizenship of Panasonic and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

10. This Court has personal jurisdiction over Panasonic, and venue in this judicial district is proper, because Panasonic and WCA contractually consented to personal jurisdiction in the Southern District of New York pursuant to the GTA and amendments thereto.

11. Pursuant to the parties' agreement in the GTA, the performance of the GTA is governed by laws of the State of New York without regard to the conflict of laws principles thereof.

## FACTS

12. As of June 2010 and throughout the relevant period of the GTA, WCA owned and operated the Aircraft as a private business aircraft.

13. As of June 2010 and throughout the relevant period of the GTA, Panasonic was engaged in the business of engineering and designing in-flight telecommunications and entertainment systems for private aircraft.

**The 2010 GTA**

14. WCA and Panasonic jointly negotiated the "General Terms Agreement between Panasonic Avionics Corporation and WCA Holdings III, LLC," which is dated June 29, 2010 and was executed by WCA on June 30, 2010 and by Panasonic on July 8, 2010 (the "2010 GTA"). The 2010 GTA was the original agreement between WCA and Panasonic with respect to Panasonic's provision of products and services for the Aircraft.

15. Pursuant to Section 2.1 of the 2010 GTA, WCA agreed to purchase "Products, the Spare Products, and the Services and license the Software from Panasonic," as those terms are defined in the 2010 GTA. In exchange, Panasonic agreed to "sell the Products, the Spare Products, and the Services and License the Software to [WCA] during the term of the Agreement, in accordance with the terms and conditions of this [2010 GTA]." The original Products WCA purchased pursuant 2010 GTA included a Shipset eXConnect, which was essentially an antenna system that connected to a satellite in order to provide in-flight broadband internet service to the Aircraft.

16. The original Products were identified in Exhibit A to the 2010 GTA. The Services are defined as: "certain installation, integration, testing, certification, non-recurring engineering (NRE) and out-of-warranty repair services that Panasonic may perform for Buyer from time to time pursuant to this Agreement. WCA agreed to pay $342,500 for the eXConnect system and various other prices for spare parts and monthly broadband service.

17. Pursuant to Section 6 of the 2010 GTA, Panasonic warranted that the "Products shall be free from defects in material and workmanship for a period of thirty-six (36) months from the date of shipment of the Products." Panasonic further warranted that the "Software shall substantially operate in accordance with the applicable specification" and that, at the time of delivery, the "Products shall conform to Panasonic's applicable specifications . . . ." Panasonic further warranted that the Services shall be completed in a good and workmanlike manner.

18. Pursuant to Exhibit D to the 2010 GTA, the parties further agreed to a process that would allow Panasonic to obtain FAA certification of the eXConnect system, including a number of test flights using the Aircraft for that purpose.

19. Exhibit F to the 2010 GTA was entitled "Additional Incentives" and stated that "Panasonic is pleased to offer a new cabin management system / in-flight entertainment system in consideration of [WCA's] participation in the eXConnect system testing." With respect to this new system offered by Panasonic—known as the eX1—Panasonic promised in Exhibit F that the eX1 "would provide the following features" that included, among many other components, audio-video on demand, streamed independently to each cabin zone, with high definition video available from a media file server. Panasonic's promises as to the functionality of the eX1 system in Exhibit F were material to the GTA and WCA would not have proceeded with the installation of the eX1 system absent such promises.

20. The price to WCA for the future eX1 system was $500,000. Exhibit F further provided that the "eX1 prices shall be payable in kind with flight hours at the rate and definitions described in Exhibit D" and, alternatively, "should [WCA] decline to participate in this additional flight and demonstration testing, Panasonic shall invoice and [WCA] shall pay any balance of the discounted eX1 pricing per section 2 of this [2010] GTA."

21. WCA accepted Panasonic's offer to install the eX1 system at the price listed in Exhibit F to the 2010 GTA.

**Installation of the eX1 System**

22. Panasonic's installation of the eX1 system in the Aircraft was plagued with delays and failures.

23. On or about May 25, 2012, Panasonic provided WCA a completion schedule for installation of the eX1 system. The schedule stated that WCA was to deliver the Aircraft to an airfield in Washington State no later than July 16, 2012, and Panasonic would complete the installation no later than September 20, 2012. WCA delivered the Aircraft as scheduled, but Panasonic could not complete the installation on time.

24. On October 19, 2012, Panasonic and WCA entered into "Amendment No. 1 to the General Terms Agreement between Panasonic Avionics Corporation and WCA Holdings III, LLC" ("GTA Amendment No. 1"). Under GTA Amendment No. 1, Panasonic was given until December 20, 2012 to complete the eX1 installation.

25. Additionally, in GTA Amendment No. 1, Panasonic and WCA agreed that the warranty periods under Sections 6.1.1. and 6.1.2 relating to the Products extended to the earlier of 60 months after the Extended Completion Date or the date that ownership of the Aircraft was transferred to an entity that is not controlled by or is under common control with WCA.

26. Finally, in further consideration for the extension of the deadline to complete the eX1 system, Panasonic further agreed in GTA Amendment No. 1 that it would "install in the Aircraft in September 2017 (or such other month as the parties may agree) any and all upgrades to the eX1 System then available, including touch screens, Blu-ray players, audio speakers, LCD cabin monitors, cabin handsets, system remote controls and related software." Panasonic and WCA agreed that "[i]t is the intention of [WCA] and Panasonic that the costs of all such upgrades shall be exchanged for Demonstration Flights as described below."

27. Unfortunately, Panasonic did not meet its obligation to complete installation of the eX1 system under GTA Amendment No. 1. The parties then entered into "Amendment No. 2 to the General Terms Agreement between Panasonic Avionics Corporation and WCA Holdings III, LLC" ("GTA Amendment No. 2"), which further extended the installation date to February 15, 2013. Among the changes in GTA Amendment No. 2, the parties agreed that the warranty provisions would extend to the *later to occur* of 60 months after the Extended Completion Date or the date that ownership of the Aircraft was transferred to an entity that is not controlled by or is under common control with WCA.

28. Yet again in February 2013, Panasonic stated that it could not meet its obligation to complete installation of the eX1 system on schedule. The parties then entered into "Amendment No. 3 to the General Terms Agreement between Panasonic Avionics Corporation and WCA Holdings III, LLC" ("GTA Amendment No. 3"), which further extended the installation date to May 19, 2013. The extended warranty provisions agreed to in GTA Amendment No. 2 remained in GTA Amendment No. 3.

**Performance of the eX1 System**

29. Following GTA Amendment No. 3, Panasonic finally completed installation of the eX1 system in the Aircraft.

30. As agreed, WCA paid for the eX1 system in the form of in-kind flight testing and customer demonstration flights in the Aircraft. WCA timely provided access to the Aircraft to Panasonic throughout the payment process and fulfilled all of its obligations under the 2010 GTA and subsequent amendments.

31. The combined eX1 and eXConnect system did not, however, perform according to its specifications or Panasonic's representations. Among other failures, the eX1 and eXConnect system was not able to consistently provide streaming video or television to the Aircraft. The eX1 and eXConnect system was also unable to provide high definition video and other cabin-management system requirements. On information and belief, these failures occurred in part because Panasonic failed to install the eX1 and eXconnect systems pursuant to Panasonic's own specifications, as indicated by the failure of the systems to work as Panasonic itself expected and represented.

32. WCA identified the eX1 and eXConnect system failures to Panasonic, including but not limited to various communications with Panasonic representatives David Burner, Gilbert Dizon, Rob Senk and Marshal Perlman. WCA's chief pilot, Will Clark, engaged in communications with Panasonic representatives to discuss the eX1 and eXConnect system failures and sought to resolve the errors.

33. The failures of the eX1 and eXConnect system were numerous occurred over many years, dating from early installation through the present. Throughout the process of resolving WCA's complaints, Panasonic did not assert that the failures were outside the scope of the various

warranty provisions in the Agreement and its amendments. Rather, Panasonic engaged in warranty repairs (some successful some unsuccessful) on the eXConnect and eX1 systems. Nor did Panasonic assert that repeated system failures that continued after unsuccessful efforts at repair were outside the statute of limitations for enforcement of the Agreement and its amendments. To the contrary, Panasonic continually stated that it would make efforts to repair the non-working features of the combined eXConnect and eX1 systems. WCA relied on such statements in delaying the initiation of litigation in an effort to allow Panasonic to fix the failures.

34. In a November 13, 2019 letter from WCA's representative to Panasonic, WCA reminded Panasonic of the ongoing system failures and stated that the "warranty provision in the agreement and various amendments covers the products and software the entire time we own the Aircraft. As such, all warranty issues should be addressed during the installation of the agreed-upon upgrades." In responding to the letter, Panasonic did not take the position that WCA's view of the warranty provisions was incorrect.

35. Despite numerous efforts to resolve the failures in the combined eX1 and eXConnect system, Panasonic has been unable or unwilling to put the eX1 and eXConnect systems in the working condition it represented and warranted.

36. As provided in GTA Amendments 2 and 3, the warranty period for the Products and Software extends to the later of the 60 months from the delivery date or the date on which WCA no longer owns or controls the aircraft. The warranty provision for the Services is not limited in time. Thus, the warranty provisions remain effective, but Panasonic has not performed its warranty obligations with respect to the combined eX1 and eXConnect systems.

**The eX1 Upgrades**

37. On April 10, 2017, the parties entered into "Amendment No. 4 to the General Terms Agreement between Panasonic Avionics Corporation and WCA Holdings III, LLC" ("GTA Amendment No. 4"), which further clarified Panasonic's obligation to provide a New Broadband Controller and all additional Equipment Upgrades for the eX1 system available as of September 2017. Such Equipment Upgrades included, but were not limited to, touch screens, Blu-ray players, audio speakers, LCD cabin monitors, cabin handsets, system remote controls and related software.

38. The parties' rights and obligations pursuant to GTA Amendment No. 4 is not limited to Panasonic's obligation to install the Equipment Upgrades. Rather, GTA Amendment No. 4 was made "in consideration of the mutual covenants and promises herein set forth," which include among others: (i) WCA's agreement on a "test flight" process in Section 4, which gave Panasonic the right to conduct test flights on the Aircraft, (ii) a modification of the "Term" provision in Section 5, and (iii) the "General Provisions" in Section 7. These various mutual promises in GTA Amendment No. 4 collectively formed the consideration for that agreement.

39. As they had throughout the GTA, the New Broadband Controller and Equipment Upgrades were intended by the parties to be paid for via in-kind test flights to obtain FAA certification and demonstration flights for potential Panasonic customers or, alternatively, for cash payment by WCA pursuant to the terms of Exhibit F to the 2010 GTA. WCA agreed to and was obligated to pay for the New Broadband Controller and Equipment Upgrades through such test flights, demonstration flights and/or cash payments.

40. In GTA Amendment No. 4, the warranty provisions of the 2010 GTA, as amended, were further extended to change the definition of "Products" to include the New Broadband Controller and Equipment Upgrades.

41. Under GTA Amendment No. 4, the deadline for the installation of the Equipment Upgrades was September 2017.

42. Panasonic did not complete installation of the Equipment Upgrades by the end of September 2017. As of the date of this Complaint, and despite demands therefore, Panasonic has not completed installation of any of the Equipment Upgrades. As a result, the Aircraft has been left with a sub-standard, largely-obsolete system.

43. Panasonic representatives, including but not limited to Marshal Perlman, have acknowledged that Panasonic does not have the ability and/or willingness to provide the Equipment Upgrades to WCA as required under the GTA.

## CAUSES OF ACTION

### COUNT I: Breach of Contract

44. Plaintiff incorporates and re-alleges the allegations in paragraphs 1-40 above.

45. The 2010 GTA, GTA Amendment No. 1, GTA Amendment No. 2, GTA Amendment No. 3, and GTA Amendment No. 4 individually and collectively constitute a valid and enforceable contract between WCA and Panasonic.

46. WCA performed any and all of its obligations under the GTA.

47. Panasonic's conduct and actions constitute material breaches of the GTA as follows:

   a. Panasonic has breached the GTA by failing to install the eX1 and eXConnect systems in a fully working condition and in the manner described in the GTA and related specifications for the eX1 system. Such breach includes, among others, Panasonic's promises in Exhibit F to the GTA that "Panasonic's eX1 system . . . *will provide* the following functional features . . . Audio-video on demand (AVOD), streamed

independently to each cabin zone, with high definition video available from a media file server . . . Connectivity features brought by integration with the eXConnect hardware." (Emphasis added). Panasonic's breaches occurred periodically since 2010 when the combined eX1 and eXConnect systems did not perform as promised.

b. Panasonic has breached the warranty provisions of the GTA relating to the Products, Software and Services by failing and refusing to repair or replace the combined eX1 and eXConnect system to put it in good working condition and to render the eX1 system free from defects in material and workmanship.

c. Panasonic has breached its obligations under the GTA to provide Equipment Upgrades to the Aircraft no later than September 2017.

48. Panasonic's breaches of the GTA have caused or will cause damages to WCA in the form of at least hundreds of thousands (if not millions of dollars) of losses resulting from (i) obtaining performance of Panasonic's promises under the GTA, including replacement of the existing eX1 system, and/or (ii) the diminution in value to the Aircraft as a result of Panasonic's failure to correctly install the original eX1 and eXConnect systems and failure to install the eX1 Equipment Upgrades as promised in the GTA (including Exhibit F) and amendments.

**COUNT II: Breach of Implied Covenant of Good Faith and Fair Dealing**

49. Plaintiff incorporates and re-allege the allegations in paragraphs 1-40 above.

50. The 2010 GTA, GTA Amendment No. 1, GTA Amendment No. 2, GTA Amendment No. 3, and GTA Amendment No. 4 individually and collectively constitute a valid and enforceable contract between WCA and Panasonic.

51. WCA performed any and all of its obligations under the GTA.

52. The 2010 GTA, GTA Amendment No. 1, GTA Amendment No. 2, GTA Amendment No. 3, and GTA Amendment No. 4 individually and collectively contain an implied covenant of good faith and fair dealing, which is breached when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of their right to receive the benefits under their agreement. The implied covenant of good faith and fair dealing includes a promise not to act arbitrarily or irrationally in exercising discretion as to performance of the GTA.

53. Panasonic agreed to provide WCA with a working eX1 and eXConnect systems with any and all upgrades to the system available as of September 2017. WCA had reasonable expectations that (i) Panasonic would perform these obligations on a timely basis, (ii) the parties would continue their course of dealing pursuant to which WCA would pay for the eX1 system and Equipment Upgrades through certification test flights and demonstration flights, and (iii) Panasonic would not seek to pass its obligations under the GTA to other entities.

54. Panasonic has acted unreasonably and in bad faith by failing to perform its remaining obligations under the GTA in the manner the parties intended and had practiced over the course of several years. This unreasonable action includes Panasonic's assertion that the upgrades in GTA Amendments 1-4 were too uncertain to allow it to perform and in not making an effort to install then-available upgrades in 2017. Panasonic was obligated to act in good faith in attempting to identify and install the upgrades in 2017 and, in making no effort to do so, failed to act in good faith.

55. Panasonic's unreasonable and bad faith conduct deprived WCA of the benefit of its bargain with respect to the GTA, damaging WCA in the form of at least hundreds of thousands (if not millions of dollars) of losses resulting from (i) obtaining performance of Panasonic's promises

under the GTA, including replacement of the existing eX1 system, and/or (ii) the diminution in value to the Aircraft as a result of Panasonic's failure to correctly install the original eX1 system and failure to install the eX1 Equipment Upgrades.

### COUNT III:  Promissory Estoppel (in the alternative)

56. Plaintiff incorporates and re-allege the allegations in paragraphs 1-40 above.

57. To the extent Panasonic contends that any of GTA Amendments 1-4 do not constitute valid and existing contracts between the parties, Panasonic is liable to WCA under the doctrine of promissory estoppel.

58. Panasonic's promises in GTA Amendments 1-4 constitute clear and unambiguous promises to WCA to provide upgrades to the eX1 system in the form of upgrades that were available from Panasonic in the year 2017.

59. WCA relied on those promises in foregoing alternative opportunities to contract with other providers of products and services to upgrade the Aircraft.  WCA's reliance on Panasonic's promises was reasonable, as Panasonic was a large commercial avionics company that had provided similar products and services to WCA in the past on the same terms (in kind payment).

60. WCA was injured by Panasonic's failure to perform its promises as set forth in GTA Amendments 1-4 because it lost the opportunity to contract for alternative upgrades for the Aircraft available at the time of the promises and lost the opportunity negotiate for similar payment options, including in-kind payments in the form of demonstration flights and assisting counter-parties with FAA approval for new systems.

**PRAYER FOR RELIEF**

**WHEREFORE**, WCA prays for judgment as follows:

a. Judgment in WCA's favor as to all of its claims and an award of monetary damages in amount to be determined on summary judgment or at trial;

b. An award of pre- and post-judgment interest at to WCA's damages;

c. An award of litigation costs and reasonable attorneys' fees as to the extent provided by the parties' contracts, statute or other applicable rules; and

d. Such other legal and equitable relief as this Court deems proper.

Dated: New York, New York
December 3, 2020

K&L GATES LLP

By: */s/ Justin H. Roeber*
Justin H. Roeber (JR-9100)
599 Lexington Avenue
New York, New York 10022
Tel.: 212.536.3900
Fax: 212.536.3901
E-mail: justin.roeber@klgates.com

Christopher M. Wyant (*pro hac vice*)
K&L Gates LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
Tel.: (206) 623-7580
Fax: (206) 623-7022
E-mail: chris.wyant@klgates.com

*Attorneys for Plaintiff*
*WCA Holdings III, LLC*