# EXHIBIT 2

# GENERAL TERMS AGREEMENT

## BETWEEN

## PANASONIC AVIONICS CORPORATION

## AND

## WCA HOLDINGS III, LLC.

**eXConnect on BBJ**

**Dated as of June 29, 2010**



Panasonic Proprietary/Confidential Information

TABLE OF CONTENTS...................................................................................... Page

1.    DEFINITIONS ........................................................................................2
2.    ORDERS, PRICING, PAYMENT AND ACCEPTANCE ...........................2
3.    PACKAGING AND SHIPPING ................................................................4
4.    SOFTWARE LICENSE ...........................................................................4
5.    INDEMNITY .........................................................................................5
6.    WARRANTY .........................................................................................6
7.    WARRANTY EXCLUSIONS ...................................................................8
8.    OUT-OF-WARRANTY REPAIRS............................................................8
9.    LIMITATION OF LIABILITY.................................................................9
10.   DESIGN REVIEWS AND RETROFIT AIRCRAFT ...................................9
11.   INTEGRATION AND TESTING..............................................................10
12.   TECHNICAL MANUALS, SERVICE BULLETINS AND REPAIR STATIONS.............10
13.   TERM AND TERMINATION..................................................................11
14.   GENERAL PROVISIONS .......................................................................12
15.   EXECUTION.........................................................................................15

## EXHIBITS

EXHIBIT A:  EQUIPMENT PRICES

EXHIBIT B:  PRODUCTS LISTS

EXHIBIT C:  REPAIR STATIONS

EXHIBIT D:  INSTALLATION

EXHIBIT E:  PANASONIC PROVIDED TRAINING

EXHIBIT F:  ADDITIONAL INCENTIVES



**GENERAL TERMS AGREEMENT**

### PANASONIC AVIONICS CORPORATION

This General Terms Agreement ("AGREEMENT"), dated as of the 29th day of June, 2010 (the "Effective Date"), is made and entered into by and between **WCA HOLDINGS III, LLC**, a Montana corporation with offices at 101 International Drive, Missoula., MT 59808 ("Buyer"), and **PANASONIC AVIONICS CORPORATION**, a Delaware corporation with offices at 26200 Enterprise Way, Lake Forest, California 92630 ("Panasonic").

### W I T N E S S E T H:

**WHEREAS**, Buyer desires to acquire from Panasonic, and Panasonic is willing to provide to Buyer, certain products of Panasonic that are used in commercial aircraft, upon the terms and conditions which are hereinafter set forth.

**NOW, THEREFORE**, in consideration of the mutual covenants and promises herein set forth, the parties hereby agree as follows:

1. **DEFINITIONS**

    For the purposes of this Agreement, the following definitions shall be applicable:

    1.1    "**Duly Authorized Representative**" shall mean, with respect to Panasonic, an officer of Panasonic, and shall mean, with respect to Buyer, any person who holds himself out or purports to be a duly authorized representative of Buyer.

    1.2    "**Line Replaceable Units**" or "**LRUs**" shall mean those Products having Panasonic issued manufacturing serial numbers.

    1.3    "**Products**" shall mean the items set forth in **Exhibit A**. Products are not delivered with downloadable Software or Interactive Application Software.

    1.4    "**Services**" shall mean certain installation, integration, testing, certification, non-recurring engineering (NRE) and out-of-warranty repair services that Panasonic may perform for Buyer from time to time pursuant to this Agreement.

    1.5    "**Shipset**" shall mean Panasonic's proprietary communication system consisting of the Products and the Software set forth in **Exhibit A**.

    1.6    "**Software**" shall mean Panasonic's proprietary operating software in object code format, which is embedded in or downloadable to the Products. Software shall not include any Interactive Application Software.

    1.7    "**Spare Product**" shall mean any Product which is acquired by Buyer as a replacement for a Product.

    1.8    "**Workmanlike**" shall mean worthy of a good workman; "a competent job" and work will be done in accordance with accepted aviation industry standards.

2. **ORDERS, PRICING, PAYMENT AND ACCEPTANCE**

    2.1    **Generally**. Buyer agrees to purchase the Products, the Spare Products, and the Services and license the Software from Panasonic, and Panasonic agrees to sell the Products, the Spare Products, and the Services and license the Software to Buyer, during the term of this Agreement, in accordance with the terms and conditions of this Agreement.



2.2 **Purchase Orders**. Buyer shall submit firm written purchase orders to Panasonic for the Products, the Software, the Spare Products and the Services in accordance with agreed upon lead times. All purchase orders shall set forth the part number and quantity desired, the Services to be performed, the price, date or dates of delivery desired, instructions regarding invoicing and the shipment's intermediate and/or final destination address. Purchase orders shall be subject to written acknowledgement by Panasonic. Once acknowledged by Panasonic, purchase orders shall be non-cancelable. Delivery date(s) of Products, Software, the Spare Products and/or Services shall not be rescheduled by Buyer without the prior written consent of Panasonic and the payment by Buyer to Panasonic of any rescheduling charge specified by Panasonic.

By executing this Agreement, Buyer hereby places its firm, non-cancelable and irrevocable purchase order to purchase one (1) Shipset at the price set forth on **Exhibit A** and to take delivery of the Shipset on or before 1 July, 2010.

2.3 **Prices**. The current prices, stated United States Dollars, for the Shipset, Spare Products, and the broadband services are set forth in **Exhibit A**. In addition to the pricing set forth in Exhibit A, the Buyer shall have the option to upgrade the hardware and software included in the Shipset at the same prices set forth in **Exhibit A** for as long as the Buyer has extended to Panasonic the opportunity to use the Aircraft as detailed in Exhibit D, Paragraph 7.

2.4 **Prices for Spare Products**. Prices, stated United States Dollars, for the Spare Products shall be as set forth in a written quotation from Panasonic to Buyer and based on the year of delivery. Prices for the Spare Products set forth in a quotation shall remain in effect for a period of ninety (90) days from the date of such quotation. Panasonic agrees not to increase the price of the Spare Products more than once per calendar year.

2.5 **Quotations for Spare Products**. Panasonic shall use reasonable commercial efforts to respond to Buyer's request for a quotation for delivery lead times and prices for standard Components and Spare Products within the timeframes set forth below:

Mail requests: Ten (10) days after receipt
Telex/Email/facsimile requests: Twenty four (24) hours after receipt
Telephone requests: Within eight (8) hours after receipt

2.6 **Payment**.

2.6.1 Buyer shall pay Panasonic for the Products, the Software, the Spare Products, and/or the Services in United States Dollars and within thirty (30) days from the date of Panasonic's invoice for the Products, the Software, the Spare Products, and the Services. Panasonic reserves the right at any time, to decrease, eliminate or otherwise limit the amount or duration of credit extended to Buyer in general and/or with respect to any specific order.

2.6.2 Payment of invoices shall be made to the address shown on the face of each invoice or by electronic funds transfer to the account designated by Panasonic in writing from time to time.

2.7 **Taxes**. All prices for the Products, the Software, the Spare Products, and/or the Services are exclusive of all excise, value added, sales, use and similar taxes, the



payment of which shall be the sole responsibility of Buyer unless Buyer provides Panasonic with acceptable tax exemption certificates.

2.8 **Acceptance**. Within fifteen (15) days after delivery at the Delivery Point, Buyer shall give Panasonic written notice of any rejection of the Products, Software, and/or Spare Products. If Buyer does not provide Panasonic with such notice, the Products, the Software and/or the Spare Products shall be deemed to be accepted by Buyer, subject to the indemnities provided in **Section 5** and the warranties provided in **Sections 6.**

3. **PACKAGING AND SHIPPING**

3.1 **Packaging**. Panasonic agrees to use ATA Specification 300 Category III as a guide for the packaging of the Products, the Software and the Spare Products shipped to Buyer.

3.2 **Shipping**. Shipping terms for the Products, the Software and the Spare Products shall be Ex Works (Panasonic's named location) as defined in Incoterms 2000, the "Delivery Point".

3.3 **Title and Risk of Loss.** With respect to the Products, the Software, and the Spare Products, title and risk of loss shall pass to Buyer from Panasonic upon tender to Buyer at the Delivery Point.

3.4 **Duty Drawback**. Upon Panasonic's request, Buyer agrees to furnish proof of exportation to a foreign destination to Panasonic's customs compliance representative for the purpose of supporting Panasonic's duty drawback program.

4. **SOFTWARE LICENSE**

4.1 **License**. Upon delivery of the Software to Buyer, Panasonic grants to Buyer a world-wide, paid up, non-exclusive license to use the Software in accordance with the terms and conditions of this Agreement. Buyer acknowledges that Buyer is receiving only a limited license to use the Software and that Buyer shall obtain no title, ownership nor any other rights in or to the Software nor in or to the algorithms, concepts, designs and ideas represented by or incorporated in the Software, all of which title, ownership and rights shall remain with Panasonic.

4.2 **Restrictions**. Buyer may only use the Software with the Products. Buyer and its employees and agents shall keep the Software in strict confidence. Buyer may not transfer, assign, distribute or otherwise make the Software available to any third party without the prior written consent of Panasonic; provided, however, that Buyer may transfer this license and the Software to any assignee of the aircraft upon which the Products are installed upon prior written notice to Panasonic. Buyer may not modify, attempt to modify, copy or reproduce, or permit to be copied or reproduced, the Software for any purpose, without Panasonic's prior written consent, except that Buyer may make one (1) copy of the Software for backup purposes only in support of Buyer's own use of the Software. Buyer may not remove any copyright, trademark or other notice or product identification from the Software, and Buyer must reproduce and include any such notice or product identification on any copy of the Software permitted hereunder. **BUYER MAY NOT REVERSE ASSEMBLE, REVERSE COMPILE, REVERSE ENGINEER OR MECHANICALLY OR ELECTRONICALLY TRACE THE SOFTWARE, OR ANY COPY THEREOF, IN WHOLE OR IN PART.**



5.   **INDEMNITY**

5.1   **Product Liability Indemnity**.  Panasonic shall indemnify and hold Buyer harmless from and against any and all actions, claims, proceedings or suits brought by third parties relating to any injury to persons or property arising or resulting directly from defects in or failures of the Products, and the Software caused by Panasonic (collectively, "Product Liability Claims").  Panasonic shall assume the defense of any Product Liability Claim brought against Buyer by counsel retained at Panasonic's own expense, and shall pay any damages assessed against or otherwise payable by Buyer in such Product Liability Claim as a result of the final disposition of such Product Liability Claim, provided Buyer, upon receiving notice thereof, immediately notifies Panasonic of the Product Liability Claim or of the commencement of the Product Liability Claim, or threats thereof, and Panasonic is afforded the opportunity, in its sole and absolute discretion, to determine the manner in which the Product Liability Claim shall be handled or otherwise disposed of.  Buyer shall give Panasonic the cooperation Panasonic reasonably requires, at Panasonic's sole cost and expense for all reasonable direct costs and expenses incurred by Buyer in rendering such cooperation, except for salaries of the employees of Buyer and fees and expenses of any counsel retained by Buyer in the defense of the Product Liability Claim.  Notwithstanding the foregoing, Buyer may be represented in any such Product Liability Claim by its own counsel at its own cost and expense; provided, however, that Buyer shall not consent to any judgment or decree in any such suit or pay or agree to pay any sum of money or agree to do any other act in compromise of the Product Liability Claim without first obtaining Panasonic's consent thereto in writing, which consent Panasonic may withhold in its sole discretion.

5.2   **Intellectual Property Right Indemnity**.

5.2.1   Panasonic shall indemnify and hold Buyer harmless against all claims that the Products, the Software and the Services infringe any issued United States patent, registered United States copyright or trademark or any other United States intellectual property right of third parties.  Panasonic shall assume the defense of any suit, action, proceeding or objection based on any such claim of infringement brought against Buyer specifically relating to the Products, the Software and the Services by counsel retained at Panasonic's own expense, and shall pay any damages assessed against or otherwise payable by Buyer in any such suit as a result of the final disposition of any such claim, suit, action, proceeding or objection, provided Buyer, upon receiving notice thereof, promptly notifies Panasonic of such claim or of the commencement of any such suit, action, proceeding and/or objection, or threats thereof, and Panasonic is afforded the opportunity, in its sole and absolute discretion, to determine the manner in which such claim, suit, action, proceeding or objection shall be handled or otherwise disposed of.  Buyer shall give Panasonic the cooperation Panasonic reasonably requires, at Panasonic's sole cost and expense for all reasonable direct costs and expenses incurred by Buyer in rendering such cooperation, except for salaries of the employees of Buyer and fees and expenses of any third party retained by Buyer in the defense of any such claim, suit, action, proceeding or objection. Notwithstanding the foregoing, Buyer may be represented in any such suit by its own counsel at its own cost and expense; provided, however, that Buyer shall not consent to any judgment or decree in any such suit or pay or agree to pay any sum of money or agree to do any other act in compromise of any such claim of a third party without first obtaining Panasonic's consent thereto in writing, which consent Panasonic may withhold in its sole discretion.



5.2.2   <u>Injunction</u>. In the event that the use of the Products,, the Software and the Services or any part thereof, is preliminarily or permanently enjoined by reason of a finding of infringement or the likelihood of infringement of the intellectual property rights described in <u>Section 5.2.1</u> (collectively, the "Enjoined Products"), Panasonic shall, at Panasonic's sole cost and expense, take any one of the following actions, in Panasonic's sole and absolute discretion: (i) procure for Buyer the right to continue the use of the Enjoined Products; or (ii) modify the Enjoined Products so they become non- infringing.

5.2.3   <u>Entire Obligation</u>. **THIS SECTION 5.2 SETS FORTH THE ENTIRE OBLIGATION AND LIABILITY OF PANASONIC FOR INFRINGEMENT OF ANY INTELLECTUAL PROPERTY RIGHTS RELATED TO THE PRODUCTS, THE SOFTWARE, THE SERVICES OR OTHERWISE RELATED TO THIS AGREEMENT.**

5.3   <u>Limitations and Buyer's Indemnity.</u>

5.3.1   <u>Notwi</u>thstanding anything herein to the contrary, this <u>Section 5</u> shall not apply to (i) any designs, specifications or modifications originating with or performed by Buyer or (ii) the combination of the Products, the Software and the Services with items not supplied by Panasonic; but, rather, Buyer shall indemnify and hold Pana**sonic harmless and** defend **Panasonic against all claims that the same infringe any patent, copyright, trade secret, trademark or other intellectual property rights of third parties upon the terms and conditions equivalent to those applicable to** Panasonic's indemnities in **Sections 5.1** and **5.2** herein.

5.3.2   Buyer hereby acknowledges and agrees that Panasonic shall not be liable for any claims arising from or related to applications, content, data, devices, equipment, media, products, software and similar items provided by Buyer or Buyer's agents, subcontractors, customers and/or passengers for use with, on or in combination with the Products. Buyer shall indemnify and hold Panasonic harmless and defend Panasonic against all such claims upon the terms and conditions equivalent to those applicable to Panasonic's indemnities in **Sections 5.1** and **5.2** herein.

6.   <u>**WARRANTY**</u>

6.1   <u>Generally</u>. Panasonic represents and warrants to Buyer that:

6.1.1   The Products shall be free from defects in material and workmanship for a period of thirty-six (36) months from the date of shipment of the Products.

6.1.2   For a period of one hundred eighty (180) days from the date of installation, the Software shall substantially operate in accordance with the applicable specification.

6.1.3   At the time of delivery to Buyer, the Products shall conform to Panasonic's applicable specifications and the applicable airworthiness authority rules, regulations and specifications which are in effect at such time.

6.1.4   At the time of delivery to Buyer, the Products shall be designed for operation in a commercial aircraft environment.

6.1.5   The Services shall be performed in a good and workmanlike manner.



6.2 **Exclusive Remedy**. Buyer's sole and exclusive remedy for any breach of the representations and warranties set forth in **Section 6.1** shall be, at Panasonic's option:

    6.2.1 **Products**. (a) the repair of the defective Product; or (b) the replacement of the defective Product.

    6.2.2 **Software**: Either: (a) the revision; or (b) replacement of the nonconforming Software.

    6.2.3 **Services**. Either: (a) the re-performance of the Services; or (b) the issuance of a credit to Buyer equal to the amount paid by Buyer to Panasonic for the Services.

6.3 **Returned Product**. If a Product is returned by Buyer hereunder for repair during the warranty period and such Product is subsequently found by Panasonic to be non-defective, then Buyer shall reimburse Panasonic for all costs incurred by Panasonic to test and recertify such Product.

6.4 **Turn Around Time**.

    6.4.1 Panasonic shall use reasonable commercial efforts to achieve a turnaround time for warranty repair or replacement of Products of ten (10) working days. Turn around time starts on the date Panasonic receives at its repair facility the returned Product together with Buyer's claim or return order, and it ends on the date the repaired or replaced Product is shipped from Panasonic's repair facility.

    6.4.2 Panasonic will provide Buyer with a loaner unit for the defective Product (the "Loaner") at no cost if (a) Panasonic fails to achieve the ten (10) working day turnaround time set forth in **Section 6.4.1** above, and (b) Buyer notifies Panasonic in writing that a Loaner is needed. Buyer shall, at Buyer's cost, return the Loaner to Panasonic within thirty (30) days of Buyer's receipt of the repaired or replaced Product. If Buyer does not return the Loaner to Panasonic, or if Panasonic does not receive the Loaner from Buyer within forty five (45) days from Buyer's receipt of the repaired or replaced Product, then Buyer will be deemed to have purchased the Loaner and will be invoiced for the Loaner at Panasonic's then current price for the Product.

6.5 **Buyer's Obligations**. In the event that Buyer alleges that a Product is defective, Buyer shall promptly, but in no event more than sixty (60) days following the date on which the alleged defect is discovered, or sixty (60) days following the expiration of the applicable warranty period, whichever is earlier, submit in writing to Panasonic the information set forth in this paragraph. Buyer shall return the affected Product to Panasonic, at Buyer's sole expense, for Panasonic's inspection and verification of any alleged defect. Any Product returned by Buyer to Panasonic for repair, replacement or credit shall, as a precondition of Panasonic's obligations pursuant to this **Section 6**, be accompanied by documentation in the English language setting forth the following information: (i) a written notice of warranty claim stating Buyer's name, (ii) the description, part number and serial number of the Product returned, as applicable, (iii) a description of the alleged defect, (iv) the reason for removal of the Product, (v) the date of removal of the Product, (vi) the registration number of the aircraft from which the Product was removed (i.e. the aircraft tail number), (vii) the aircraft zone from which the Product was removed, (viii) the number of flight hours on the Product, (ix) the address of Buyer's facility where the Product was removed from the aircraft, and (x) the address of Buyer's facility where return shipment of the Product should be made.



6.6    **Warranty for Repairs Performed**.  Any Product repaired pursuant to this **Section 6** shall continue under warranty for the longer of (i) the remainder of the original warranty period of the repaired Product or (ii) but only with respect to the specific repaired defect, twelve (12) months from the date of such repair.

6.7    **Assignment of Warranty**.  Buyer shall have the right to assign the warranties set forth in this **Section 6**, for the remainder of the applicable warranty periods, to any purchaser of a Product from Buyer, and Buyer shall promptly notify Panasonic in writing of any such assignment.

7.    **WARRANTY EXCLUSIONS**

7.1    **Generally**.  Notwithstanding anything herein to the contrary, Panasonic shall have no obligation to Buyer for normal wear and tear arising from operation of the Products or for any defects in the Products that have been caused by (i) Buyer's shipment or storage of the Products (ii) articles not supplied by Panasonic including, without limitation, the aircraft into which the Products are installed, or (iii) accident, misuse, neglect, abuse, mishandling, misapplication, modification, alteration, acts of God, or improper installation, service or maintenance.  In addition, without limiting the generality of the foregoing, no warranty of any kind is offered on any Component of a Product which is designed to wear out with normal use and is to be replaced on a scheduled basis.

7.2    **Software**.  Panasonic does not warrant that the functions contained in the Software will meet Buyer's requirements or that the operation of the Software will be uninterrupted or error free.

7.3    **Disclaimer of Warranties**.  **THE WARRANTIES SET FORTH IN THIS AGREEMENT ARE EXCLUSIVE AND ARE IN LIEU OF ALL OTHER WARRANTIES, WHETHER ARISING FROM A COURSE OF DEALING, COURSE OF PERFORMANCE OR TRADE USAGE, OR WHETHER ORAL, WRITTEN, EXPRESS, IMPLIED OR STATUTORY, INCLUDING, BUT NOT LIMITED TO, THE WARRANTIES OF NON-INFRINGEMENT, MERCHANTABILITY, AND FITNESS FOR A PARTICULAR PURPOSE, ALL OF WHICH ARE HEREBY WAIVED BY BUYER.**  The employees and agents of Panasonic are not authorized to make modifications to such warranties, or additional warranties binding on Panasonic; accordingly, additional statements, whether oral or written, do not constitute warranties and should not be relied upon by Buyer.

7.4    **No Action**.  No action or suit shall be brought on an alleged breach of the warranties set forth in this Agreement more than twelve (24) months following the expiration of the applicable warranty period.

7.5    **Allocation of Risk**.  The warranties set forth in this Agreement allocate the risks of product failure between Panasonic and Buyer, as authorized by the Uniform Commercial Code and other applicable law.  Panasonic's pricing reflects this allocation of risk and the limitations of liability contained in this Agreement.

8.    **OUT-OF-WARRANTY REPAIRS**

8.1    **Generally**.  If any Product malfunctions, but such malfunction is not covered by the warranties set forth in **Section 6.1** or occurs at any time subsequent to the expiration of the applicable warranty period, then Panasonic shall provide to Buyer, at Buyer's request, maintenance and repair Services for such Product at Panasonic's current rate



of $125 USD/hour and other terms and conditions for such Services. The Buyer shall be notified in writing, ninety (90) days prior to any change in the current rate.

8.2     **Returned Product Found Operational.**   If any out-of-warranty Product or Component is returned by Buyer hereunder for repair and is subsequently found by Panasonic to be non-defective, then Buyer shall reimburse Panasonic for all costs incurred by Panasonic to test and recertify such Product or Component.

8.3     **Warranty for Repairs Performed on Out-of-Warranty Products.**  Any Product repaired by Panasonic will be warranted for twelve (12) months from the date of such repair but only with respect to the specific repaired defect.

9.     **LIMITATION OF LIABILITY.** IN NO EVENT SHALL PANASONIC HAVE ANY LIABILITY OR RESPONSIBILITY FOR ANY SPECIAL, INDIRECT, INCIDENTAL, EXEMPLARY, CONSEQUENTIAL OR PUNITIVE DAMAGES ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT, INCLUDING, WITHOUT LIMITATION, ANY WORK DELAYS, LOST GOODWILL, PROFIT, REVENUE OR SAVINGS, LOSS OF USE, COST OF CAPITAL, COST OF SUBSTITUTE EQUIPMENT, FACILITIES OR SERVICES, OR DOWNTIME COSTS, EVEN IF PANASONIC HAS BEEN ADVISED OR IS AWARE OF THE POSSIBILITY OF SUCH DAMAGES.  IN NO EVENT SHALL PANASONIC'S LIABILITY FOR MONETARY DAMAGES UNDER THIS AGREEMENT EXCEED THE TOTAL AMOUNTS PAID BY BUYER TO PANASONIC HEREUNDER.

10.     **DESIGN REVIEWS AND RETROFIT AIRCRAFT**

10.1     **Design Reviews.**  Unless otherwise agreed to in writing by the parties, Buyer and Panasonic shall participate in customary and reasonable design reviews related to the Products, at each party's sole cost and expense.

10.2     **Retrofit Aircraft.**

10.2.1     Buyer shall provide Panasonic with all technical data and documentation necessary to retrofit the aircraft, including the design phase and the certification phase, within thirty (30) days after written notice of the retrofit award or the initial coordination meeting.   Such technical data and documentation may include, but shall not be limited to, the following: aircraft production illustrations; wire routing drawings; wire diagram manuals; aircraft wiring data; electrical load analyses; weight and balance reports; interface load analyses (where Panasonic's products interface with aircraft); LOPA; seat and galley drawings; service bulletins from seat/galley vendors to install Panasonic products; and any OEM/airline modifications and service bulletins related to cabin communications/entertainment. Unless otherwise agreed to by the parties in writing, Buyer shall provide such technical data and documentation in electronic format.  During the retrofit, Buyer shall be obligated to provide Panasonic with any changes or updates to such technical data and documentation.

10.2.2     Buyer shall be responsible for entering into all necessary agreements and arrangements to obtain the technical data and documentation from third parties.  Buyer shall pay all costs associated with obtaining and making such technical data and documentation available to Panasonic.

10.2.3     Buyer acknowledges and agrees that Buyer's failure to timely provide Panasonic with such technical data and documentation or any changes or updates to such technical data and documentation after its initial provision to



Panasonic may cause a delay in the timely completion of the retrofit. Buyer hereby discharges and releases Panasonic from any and all liability for retrofit delays or failures by Panasonic to perform its obligations under this Agreement resulting from Buyer's failure to provide such technical data and documentation.

10.2.4   For the aircraft defined in this agreement Panasonic shall be responsible, at Panasonic's sole cost and expense, for: (i) providing all labor necessary to install the Products on Buyer's aircraft, (ii) conforming the parts purchased by the Buyer, (iii) all flight tests required for certification by the appropriate airworthiness authorities of the Products installed on Buyer's aircraft, and (iv) the preparation of job cards.

## 11.   INTEGRATION AND TESTING

In the event that the Buyer requests the installation of any additional equipment not provided by Panasonic, Buyer shall be responsible, at Buyer's sole cost and expense, for providing Panasonic with all necessary third party equipment and/or services needed in connection with the integration and testing of the Shipsets. Buyer shall provide such third party equipment and/or services at the dates, times and quantities designated by Panasonic.

## 12.   TECHNICAL MANUALS, SERVICE BULLETINS, REPAIR STATIONS AND TRAINING

12.1   **Component Maintenance Manuals.** Panasonic shall, at no cost to Buyer, provide Buyer with one non-editable PDF copy of a Component maintenance manual (the "CMM") for each repairable LRU purchased by Buyer. Level Three information (sub-sub component) is provided in the CMMs for LRUs that are determined by the Panasonic to be repairable at this level. Non-repairable LRU sub-components shall be documented to Level Two. Panasonic shall use the ATA-100 Specification as a guide in the preparation of the CMM.

12.2   **Aircraft Maintenance Manual and Aircraft Illustrated Parts Catalog.** Panasonic shall, at no cost to Buyer, provide Buyer with one non-editable electronic copy of the following manuals for each different system and aircraft type purchased by Buyer: the aircraft maintenance manual (the "AMM") and the aircraft illustrated parts catalog (the "AIPC"). Panasonic shall use the ATA-100 Specification as a guide in the preparation of the AMM and the AIPC. Manuals, if available, will be delivered upon completion of the aircraft retrofit, or no later than one month following aircraft certification.

12.3   **Additional Copies of Manuals.** At Buyer's request, additional copies of manuals (either in non-editable electronic or hard-copy paper format) will be supplied to Buyer, at Panasonic's standard rates plus shipping and handling.

12.4   **Service Bulletins.** For so long as Buyer has any Product equipped aircraft remaining in service, Panasonic shall provide service bulletins to Buyer in accordance with ATA Specification 100. If the changes discussed in a service bulletin affect the CMM, revised pages for the CMM will be supplied by Panasonic to Buyer.

12.5   **Copyright Restrictions.** Buyer shall not modify, alter, or edit any manuals, bulletins or similar items provided by Panasonic to Buyer without Panasonic's prior written consent.

12.6   **Mandatory Design Changes.**



12.6.1 Panasonic shall make all mandatory design changes required by the applicable airworthiness authority at no cost to Buyer. Panasonic may permit Buyer to make such changes by supplying modification kits to Buyer at no cost to Buyer, and reimbursing Buyer for the cost of labor for installing such modification kits. Such reimbursement shall be based upon the labor times set forth in the service bulletin applicable to the Product and the labor rates mutually agreed upon by the parties.

12.6.2 Panasonic shall not be liable for any loss of Product functionality resulting from a mandatory design change required by the applicable airworthiness authority.

12.7 **Repair Stations**. Panasonic's repair stations as of the Effective Date are set forth in **Exhibit C**. Panasonic reserves the right at any time to add or remove repair stations at Panasonic's discretion, without notification to Buyer.

12.8 **Training**

12.8.1 **Scope**. Panasonic shall provide Buyer with the training set forth in **Exhibit E**. Training will be provided on a mutually agreeable schedule between the Parties.

12.8.2 **Additional Training**. In addition to the training set forth in **Exhibit E**, Panasonic shall, upon Buyer's written request, make available to Buyer additional training at Panasonic's then standard rates, for such requested dates, and for such periods, as shall be mutually agreed upon by Buyer and Panasonic.

12.8.3 **English Language**. All training performed by Panasonic pursuant to this **Section 12.8** will be conducted in the English language.

13. **TERM AND TERMINATION**

13.1 **Term**. This Agreement shall begin on the Effective Date and shall continue for a period of five (5) years from the Effective Date. This Agreement shall thereafter automatically renew for successive one (1) year periods ("renewal period") not to exceed two (2) renewal periods, unless one party gives written notice to the other party of its intention not to renew this Agreement at least ninety (90) days prior to the expiration of the then current term of this Agreement.

13.2 **Termination**. This Agreement may be terminated by either party effective immediately upon written notice to the other party as follows:

13.2.1 in the event of a material breach by the other party of any of the terms or conditions of this Agreement and if the party in default fails to cure such material breach within thirty (30) days (five (5) days in the event of a failure by Buyer to timely make any payments to Panasonic) after written notice from the other party describing the breach and requesting its cure; or

13.2.2 in the event that performance of this Agreement by Panasonic shall have been rendered impossible for a period of six (6) consecutive months by reason of a Force Majeure Event (as defined in **Section 14.1**); or

13.2.3 upon or after the filing of a petition by or against the other party for the reorganization, liquidation, dissolution, or similar relief under any present or future federal or state statute, law or regulation, or the entry of a decree or



order by a court having competent jurisdiction in respect of any such petition, which decree or order is unstayed and in effect for a period of thirty (30) consecutive days, or the appointment, with or without the consent of the other party, of any receiver, liquidator, custodian, assignee, trustee, sequestrator or other similar official of such party or of any substantial part of its property, or the making by the other party of an assignment for the benefit of creditors, or the admission by the other party in writing of its inability to pay its debts generally as they become due, or the taking of action by the other party in furtherance of any such action.

13.3 **Rights**.  Except as expressly provided herein, the expiration or termination of this Agreement shall not affect or impair the rights, liabilities and obligations of either party to the other party as provided pursuant to this Agreement existing prior to such expiration or termination, nor shall such expiration or termination relieve either party of any obligation or liability accrued under this Agreement prior to such expiration or termination.

13.4 **Buyer's Payment Obligations**.  Buyer agrees that Buyer shall, not later than thirty (30) days following the effective date of expiration or termination of this Agreement, pay in United States dollars all monies owed to Panasonic at the time of the expiration or any termination of this Agreement regardless of the terms of payment of such monies that may have otherwise been granted to Buyer by Panasonic prior to the effective date of such expiration or termination; provided, however, that if any terms of payment for payment of any invoice to Panasonic by Buyer at the time of such expiration or termination then provide for payment thereof in less than thirty (30) days, such invoice shall be payable pursuant to the applicable terms of payment. Panasonic agrees that in the event monies are due the Buyer, Panasonic shall issue payment not later than thirty (30) days following the effective date of expiration or termination of this Agreement.

14. **GENERAL PROVISIONS**

14.1 **Excusable Delay**.  Panasonic shall not be liable for any loss, damage, delay or failure of performance resulting directly or indirectly from any cause which is beyond its reasonable control (a "Force Majeure Event"), including but not limited to, acts of God, epidemics, wars, acts of public enemy, terrorism, labor stoppages or failures to act or delays of governments or any department or regulatory agency thereof or entity created thereby, including without limitation, national aviation authorities (whether or not valid), or a supplier to Panasonic. The occurrence of a Force Majeure Event shall not constitute a breach hereunder and shall not reduce or eliminate the full amount of Products, Spare Products, Software, Components and Services purchased or licensed or to be purchased or licensed by Buyer hereunder.

14.2 **Export Control**.  Buyer acknowledges that the purchased items sold under this Agreement, which may include technology and software, are subject to export control laws and regulations of the United States ("U.S.") and may also be subject to the export control laws and regulations of the countries in which the Products are manufactured. It is the Buyer's responsibility to comply with and abide by those laws and regulations including without limitation the Export Administration Regulations. Under U.S. law, the items purchased pursuant to this Agreement may not be exported or re-exported to (i) any country subject to U.S. embargo; or (ii) to any person on the U.S. Treasury Department's Specially Designated Nationals list or on the U.S. Commerce Department's Table of Denial Orders or Denied Parties List.  Buyer represents and warrants they are not located in, under the control of, or a national or



resident of any such country or on any such list. Buyer agrees not to provide any written regulatory certifications or notifications on behalf of Panasonic.

Items exported from the U.S. by Panasonic will be in accordance with the export control laws and regulation so the U.S. and the countries of manufacture, including without limitation the Export Administration Regulations. Diversion contrary to U.S. law is prohibited.

14.3 **Assignment**. Neither party may assign this Agreement without the prior written consent of the other party; provided however Panasonic shall have the right to assign this Agreement to an affiliate or to a successor to all or substantially all of its assets or issued and outstanding shares of capital stock without the prior consent of Buyer. This Agreement shall be binding upon the parties' successors and permitted assigns.

14.4 **Independent Contractor**. Each party acknowledges and agrees that the other party is an independent contractor and is not an employee, agent or partner of the other party. The parties do not intend to form a partnership or joint venture. No party is granted any right or authority to assume or create any obligation or responsibility, express or implied, in behalf of, or in the name of, the other party, or to bind the other party in any matter or thing whatsoever.

14.5 **Notices**. Any notice, request, consent, demand or other communication given or required to be given under this Agreement shall be effective only if in writing and shall be deemed to have been given when either mailed by first class registered or certified mail, postage prepaid, return receipt requested, or sent by a reputable express courier, addressed to the parties as follows:

To Buyer:            WCA Holdings III, LLC

                     WCA Holdings III, LLC
                     Attention: Lawrence R. Simkins
                     101 International Drive
                     Missoula, MT 59808
                     lsimkins@washcorp.com
                     Office Phone: 406-523-1363


To Panasonic:        Contracts and Legal Affairs Department

                     Panasonic Avionics Corporation
                     22333 29th Drive, S.E.
                     Bothell, Washington 98021

                     With a copy of all legal notices to:

                     General Counsel
                     Panasonic Avionics Corporation
                     26200 Enterprise Way
                     Lake Forest, CA 92630

or to such other addresses as may hereafter be designated by like notice.

14.6 **Survival**. The expiration or termination of this Agreement shall not release either party from any liability, obligation or agreement which, pursuant to any provision of this Agreement, is to survive or be performed after any such expiration or



termination.  Sections 5, 6 and 7 of this Agreement shall survive any expiration or termination of this Agreement.

14.7    <u>Governing Law</u>.  This Agreement and performance hereunder, shall be governed by and construed in accordance with the laws of the State of New York without regard to the conflict of laws principles thereof.  The parties hereby agree that any and all causes of action arising under this Agreement shall be brought only in the United States Federal District Court for the Southern District of New York or, if the United States Federal District Court does not have jurisdiction, the Supreme Court of New York County, and the parties hereby submit to the jurisdiction of said Court, and agree not to object to the venue nor the convenience of the forum.  The parties agree that the 1980 United Nations Convention on Contracts for the International Sales of Goods, as amended to date, shall not apply to this Agreement.

14.8    <u>Entire Agreement</u>.

14.8.1    This Agreement sets forth the entire understanding, and hereby supersedes any and all prior agreements, oral or written, heretofore made, between the parties with respect to the subject matter of this Agreement, and there are no representations, warranties, covenants, oral or otherwise, agreements or collateral understandings, express or implied, affecting this instrument that are not expressly set forth herein; provided, however, that nothing herein contained shall be construed as relieving Buyer from any pre-existing obligation owing to Panasonic, including, without limitation, payment of any monies payable to Panasonic.  Without limiting the generality of the foregoing, the terms and conditions of this Agreement shall take precedence over, and shall supersede, the terms and conditions of any other agreement, whether heretofore or hereafter made, between Panasonic and any third party, which other agreement purports to give Buyer certain rights as a "third party beneficiary."

14.8.2    No delay on the part of either party in exercising any of its respective rights hereunder or the failure to exercise the same, nor the acquiescence in or waiver of a breach of any term or condition of this Agreement shall be deemed or construed to operate as a waiver of such rights or acquiescence thereto except in the specific instance for which given.

14.8.3    The terms and conditions of this Agreement may not be amended, changed, waived, varied or modified except by an amendment in writing signed by Duly Authorized Representatives of both parties.

14.8.4    During the term of this Agreement, all agreements between Buyer and Panasonic for the sale of the Products, the Spare Products, the license of the Software, and the provision of the Services by Panasonic to Buyer shall include and be governed exclusively by the terms and conditions set forth in this Agreement, except as the parties may otherwise agree in a writing executed by their respective Duly Authorized Representatives.  In case of any conflict between this Agreement and any purchase orders, acknowledgments, or other documents for or relating to the Products, the Spare Products, the Software and the Services exchanged by Buyer and Panasonic during the term of this Agreement which are not executed by Duly Authorized Representatives of the parties, this Agreement shall govern and prevail; and any printed terms of any purchase order of Buyer, or acknowledgment of Panasonic, and any other terms, provisions or conditions in any purchase order of Buyer, or acknowledgment of Panasonic, which vary from, or are



inconsistent with, contrary to or in addition to the terms, provisions and conditions of this Agreement, shall be null and void.

14.8.5   The invalidity or unenforceability of any term or condition of this Agreement pursuant to any applicable law shall not affect the validity or enforceability of the remaining provisions hereof, but this Agreement shall be construed as if not containing the provision held invalid or unenforceable in the jurisdiction in which so held unless, in the reasonable opinion of either party hereto, such invalid or unenforceable provisions comprise an integral part of, or are otherwise inseparable from the remainder of, this Agreement, in which case this Agreement, in such jurisdiction, shall immediately terminate and be of no further force and effect.

14.8.6   The section headings used herein do not form a part of this Agreement but are for convenience only and shall not limit or be deemed or construed in any way to affect or limit the meaning of the language of the Sections herein contained.

### 14.9   Confidentiality.

The parties shall keep the terms and conditions of this Agreement confidential except: as may be necessary or advisable for such party to carry out its obligations under this Agreement or to obtain advice from legal or financial advisors, (ii) as may be required by law or legal process, or (iii) as may be required to permit such party to pursue all available remedies for a breach of this Agreement by the other party.

## 15.   EXECUTION.

15.1   This Agreement may be executed in two or more counterparts, each of which shall be an original, and all of which, taken together, shall constitute one and the same Agreement.

15.2   Each party represents and warrants to the other party that the person executing this Agreement on its behalf is its Duly Authorized Representative.

IN WITNESS WHEREOF, each party has caused this Agreement to be executed on the respective dates entered below.

| WCA Holdings III, LLC | PANASONIC AVIONICS CORPORATION |
|---|---|
| By: _Paul W. Keip_ | By: _Susan Hall_ |
| Name: PAUL W. KEIPER | Name: SUSAN HALL |
| Title: Vice President | Title: VP, Legal |
| Date: June 30, 2010 | Date: 8 July 2010 |



## EXHIBIT A: EQUIPMENT PRICES

| Product | Standard Price per Shipset | Buyer's Price per Shipset |
|---|---|---|
| One (1) Shipset eXConnect  (Items 1-19 as set forth in Exhibit B) | $685,000.00 | $342,500.00 |

### SPARES PRICES

| Component | Part number | Price |
|---|---|---|
| Wireless Access Point | 901164-3 | $5182.50 |
| Ku-Band Antenna Assembly | RD-NB2111-01 | $188,514.00 |
| Broadband Controller | RD-NB2500-01 | $15,898.50 |
| SPM (Antenna power supply) | RD-FA3621-01 | $1,797.00 |
| Ku-Band Radome | 119166-01 | $37,980.00 |

Purchased spares shall be kept at Panasonic's facility in the continental US, and delivered AOG as required.

### Monthly Payment

The price to Buyer for a monthly subscription for a certain number of minutes of eXConnect broadband service is 50% of the standard rates, which as of the Effective Date are the amounts specified below. Panasonic will continue to provide this discounted rate to Buyer for the period during which Buyer and Panasonic agree to shared usage of the aircraft beyond the initial test period. The discounted rates shall continue for as long as the Buyer has extended to the Panasonic the opportunity to use the Aircraft as detailed in Exhibit D, Paragraph 7.  Buyer may choose the Lite, Platinum, Gold or Bronze plan and is entitled to one plan change in a calendar year with 30 calendar days prior notice to Panasonic.

### Monthly Service Pricing Options

| Plan | Minutes per Month | Minimum Fee/Month | Overage Fee |
|---|---|---|---|
| Lite | Up to 150 Min/month | $995.00 | $6.50/min |
| Bronze | Up to 720 Min/month | $3,240.00 | $6.00/min |
| Gold | Up to 1500 Min/month | $5,250.00 | $5.50/min |
| Platinum | Up to 3000Min/month | $9,000.00 | $5.00/min |

### Option eXTV

Converter equipment  will be required for the eXTV service to convert the digital signal to an analogue output, details of such converter equipment to be determined in the future should Buyer notify Panasonic of Buyer's desire to use eXTV.  Other than converter equipment, only a monthly subscription is required to receive the eXTV service.  The service will be rolled out globally over the next two years starting first in



United States, North Atlantic and Europe.  The service will start with 7 channels and be expanded based on customer request.  The projected Global Service standard pricing is $1000 per aircraft per month as of the Effective Date.  Buyer will receive service free of charge (FOC) until the service is formally offered for sale.  Buyer will receive a 50% discount off the then-current standard global service monthly subscription price during the period that Panasonic uses the aircraft for chartered testing.  Panasonic will provide Buyer a 30 calendar day notice prior to changing the pricing to the then current price.



### EXHIBIT B: PRODUCTS LIST

| Item Number | Part Number | Description | Quantity /Shipset |
|---|---|---|---|
| 1 | 119530-01 | Antenna Adapter – B737 / 757 Adapter Plate Base Assembly | 1 |
| 2 | 120283-01 | Radome Assy - B737 Lower Skirt Assembly, w/ Hardware | 1 |
| 3 | RD-NB2111-01 | Antenna Assembly - Ku Band | 1 |
| 4 | RD-NB2500-01 | Broadband System Controller (BC) | 1 |
| 5 | RD-KA1006-02 | Crew Panel (CP) | 1 |
| 6 | RD-AA902559-01 | Mounting Kit – Crew Panel  Shroud | 1 |
| 7 | 09T103T004-1 | Top Kit, Integration Kit, Exconnect, 737-700 | 1 |
| 8 | 119166-01 | Radome - GCS C-Sandwich, w/ Hardware Kit | 1 |
| 9 | RD-FA3621-01 | Seat Power Module, 250W (SPM) | 3 |
| 10 | SE91D12A-F-8 | Covers - Power Cap | 6 |
| 11 | 120572-01 | Install Kit – Antenna Installation Kit | 1 |
| 12 | RD-AA8101-03 | Cell Modem | 1 |
| 13 | RD-KA1003-03 | File Server | 1 |
| 14 | 117445-02 | Cell Modem Bracket | 1 |
| 15 | 119163-01 | Install Kit – Fuselage Feed Through Connector | 1 |
| 16 | 119520-01 | Install Kit – B737 / 757 Fuselage External Fitting Kit | 1 |
| 17 | 120296-01 | Install Kit – B737 / 757 Fuselage Intercostal Kit | 1 |
| 18 | 901164-3 | Wireless Access Point (WAP) | 2 |
| 19 | 901167-2 | Antenna - WAP | 4 |



**EXHIBIT C: REPAIR STATIONS**

**AMERICAS**

**Bothell, USA**

22333 29th Drive SE Bothell, WA 98021

**Bothell Repair Shop Director:** George Hargrave
**Phone:** +(425) 415-9432
**Tie-Line:** 49-432
**Mobile:** +(206) 852-8375
**Fax:** +(425) 482-3580

**FAA Certificate:** HD6R583N (03/26/86)
**EASA Approval Certificate:** EASA.145.4437
**CAAC Certificate:** F00100424

**Dallas, USA**

1405 Beltline Road S., Ste 300 Coppell, TX 75019

**Dallas Repair Shop Manager:** Kimberley English
**Phone:** +(972) 745-1250
**Fax:** +(972) 745-0361

**FAA Certificate:** U9MR592Y (03/22/00)
**EASA Approval Certificate:** EASA.145.5633

**ASIA**

**Osaka, Japan**

2-15 Matsuba-cho, Kadoma, Osaka, 571-8503 Japan



**Osaka Repair Shop Director:** <u>Hideshi Yamamoto</u>
**Phone:** +81-6-6906-2771
**Fax:** +81-6-6906-2110

**FAA Certificate:** M5YY809N (04/20/99)
**Thailand. DOA:** 231/2543

Singapore

No. 9 Loyang Lane Singapore 508792

**Singapore Repair Shop Manager:** <u>John Koo</u>
**Phone:** +(65)-6586-8300
**Fax:** +(65)-6545-7484

**FAA Certificate:** QM9Y454Y (01/01)
**CAAS Certificate:** AWI/164
**China:** CAAC:F06500278
**Thailand:** DOA:230/2542
**Malaysia:** AO/0057/97 HK CAD: AI/107/999

<u>**EUROPE**</u>

**London, UK**

Quadrant HouseHeron Drive, Parlaunt RoadLangley Berks, SL3 8XP, UK

**London Repair Shop Manager:** <u>Ken Bird</u>
**Phone:** 44 +(0) 1753 741452
**Mobile:** 44 +(0) 7983 462394
**Fax:** 44 +(0) 1753 741481

**EASA Approval Ref:** UK.145.00297 (1993)
**FAA Certificate:** UZVY163X



**MIDDLE EAST**

**Dubai, UAE**

P.O. Box 54340 Dubai Airport Free Zone Dubai, UAE

**Dubai Repair Shop Director:** Michael Bernard
**Phone:** +(971) 04 299 5650 Ext 111
**Tie Line:** 45-200
**Mobile:** +(971) 0 50 654 3762
**Fax:** +(971) 04 2995652 or 425-415-2312

**General CAA Certificate:** EM/MAS/99
**EASA Approval Ref:** UK.145.00297 (9/98)

**OCEANIA**

**Sydney, Australia**

Bldg 5, 41-43 Bourke Road, Alexandria, NSW, Australia

**Sydney Repair Shop Manager:** Amal Wijeyaratne
**Phone:** +61 02 8332 2340
**Mobile:** +61 (0)448 206 091
**Fax:** +61 02 8332 2398

**CASA Certificate:** 1-1IROX



## EXHIBIT D: INSTALLATION

1. Fleet

The applicable aircraft for Panasonic eXConnect installation is as follows:

| Aircraft Model | Boeing Serial | N-registry |
|---|---|---|
| B737-700 BBJ | 30329 | N129QS |

2. System Functional Description

eXConnect is a two-way satellite communications system intended for passenger entertainment and communications, as well as operations purposes. The system is comprised of:

- A Ku-band antenna and supporting hardware installed on the upper fuselage, which communicates with geostationary FSS (fixed satellite services) satellites.
- A Broadband Controller which contains the system modem, processor for system software, and connection to aircraft discretes and wireless access points
- Two 802.11 b/g wireless access points installed above cabin ceiling panels, for passenger device access to the system
- A Crew Panel installed in the cabin that serves as control interface for the system

The Buyer's installation will represent the first installed and certified eXConnect installation for Panasonic. As such, initial functionality will consist of wireless Internet access to passenger devices in the cabin as Panasonic validates system operation and performance. Panasonic will progressively develop hardware and software to expand system functionality as options for Buyer's consideration, consisting of:

- eXTV: Satellite-based content delivery over eXConnect, distributed and displayed via existing cabin IFE system.

The optional functionality, as requested by Buyer, will be scoped and implementation schedule presented at a program coordination meeting.

3. Installation Steps

The following high-level steps will utilize the equipment list shown in Exhibit B.

1. Perform eXConnect radome and antenna installation at the 727 plug area, upper fuselage, aft of the wing. This will include structure provisions and feed-through connectors.
2. Install antenna power supply modules (SPMs) on top of ceiling panels in the office area.
3. Remove existing Rockwell Collins DBS TV receiver from forward cargo electronics rack. Install Broadband Controller and File Server in the vacated area along with trays and cooling fans.
4. Install Crew Panel in forward crew rest area, on aft side of galley G2 wall. Master power for the system will be wired through the existing PES switch in the cockpit.
5. Install one wireless access point in the main cabin area. Install one wireless access point in the office area. Both WAPs to be mounted directly to the top of ceiling panels in the respective areas.
6. Install wiring kits to connect all system components.
7. Install applicable system software. Perform antenna alignment and commission the system.
8. Remove existing Tailwind DBS TV antenna and radome, and repair the aircraft fuselage at that location.

4. Certification Deliverables

The eXConnect system shall be installed on the Buyer's aircraft via the 14 CFR 21 Supplemental Type Certificate (STC) process. Three STC's are anticipated for the system:



- Outside installation including radome, adapter plate, antenna, and appropriate structural provisions
- Interior wiring and structural provisions
- LRU installation and system activation

Panasonic may pursue FAA Form 337 and subsequent Field Approval for certain certification elements should that process facilitate the first aircraft entry into service. It is understood however that the outside installation element must be accomplished via STC.

A group of three flight tests to demonstrate compliance to STC requirements will be performed for the installation. The first two flight tests will involve flying a radome certification flight profile (fly to Vmo) and obtaining vibration data from the radome adapter plate. eXConnect will not be activated for the first two flight tests, and the FAA will review and approve a vibration test report in between the first two flight tests. The third flight test will demonstrate compliance to eXConnect system functional check and EMI requirements. The flight test charges will be charged at the normal $6,000 USD per hour rate. Buyer will operate the aircraft for the STC flight tests.

Panasonic shall be responsible for the certification project charges. Panasonic's certification supplier shall perform the following steps in support of the first installation:
- Apply for STC project numbers with the FAA
- Facilitate data package approvals and submittal to the FAA (ACO and AEG)
- Apply for TIA (Type Inspection Authorization)
- Conduct on-aircraft conformity inspections for first installation
- Facilitate transfer of aircraft status into experimental for STC flight tests
- Provide flight test Designated Engineering Representative (DER) for STC flight tests
- Facilitate transfer of aircraft status out of experimental to standard airworthiness certificate
- Provide STC approvals within 48 hours of flight test completion and final data submittal

For any of the STCs or 337s incorporated by Panasonic, Panasonic will need to provide a DER-approved Form 8110-3 demonstrating compliance with the certification basis of the lower cabin altitude (LCA) STC number ST01697SE, listing all the applicable FARS. If such Form 8110-3 cannot be completed, Panasonic must provide technical justification as to 1) why Panasonic's installation modifications do not affect the pressure vessel and 2) why no substantiation is required.

This documentation will be required and added to the package to obtain the LCA STC.

Should the final STC approval not be obtained after 10 business days from final data submittal and STC flight test completion, and Buyer has trip commitments that are in jeopardy, Buyer has the right to have the eXConnect system removed and aircraft returned to the condition it was when it was inducted for the eXConnect modifications. This work will be accomplished at Panasonic's expense. Buyer will be refunded the purchase price for the equipment.

Upon modification completion, Buyer will be provided license to utilize the eXConnect Supplemental Type Certificates.

The following documents will be provided to Buyer after STC issuance:
- Installation drawing package
- Component maintenance manuals
- Airplane Flight Manual supplement
- Aircraft Maintenance Manual supplement



- Illustrated Parts Catalog supplement
- Electrical Loads Analysis
- Weight and Balance report
- Instructions for Continued Airworthiness including:
  - § 26.11 EWIS report
  - § 26.47 supplemental inspection criteria
- Wiring Diagram Manual supplement

5.  Impact to Existing Airworthiness Directives
Panasonic's certification supplier will review applicable IFE AD's with Buyer for coordination and possible integration into the modification package.  eXConnect will be designed to meet current applicable FARs and may or may not impact terminating action and Alternate Means of Compliance for AD's against existing equipment.  Terminating action for AD's outside of the eXConnect design and installation scope is the responsibility of the Buyer.

6.  System Installation
The eXConnect system shall be installed at an FAR 145 approved repair station based in the continental United States, agreed to by Panasonic.  Panasonic shall be responsible for the MRO installation costs for the modification.  Panasonic shall not be responsible for ferrying the aircraft to the MRO facility for installation.  Panasonic shall not be responsible for maintenance work performed concurrent with but unrelated to the modification.

The modification is anticipated to take seven days elapsed time, not including aircraft-side repair or restoration required to correct discrepancies (such as non-conformance to existing drawings) discovered during modification, and not including certification tests.

7.  Panasonic Flight Scheduling
Panasonic will purchase a minimum of 24 hours flight time from Buyer on the aircraft in which the Shipset is installed ("Installed Aircraft"), for purposes of system testing, validation, and customer demonstrations.  All flight time (defined as wheels up, which is aircraft off of ground) shall be charged at a $6,000 USD per hour rate billed in tenths of an hour increments, inclusive of crew, fuel, insurance and all other associated expenses for flying the Aircraft.  Panasonic shall develop a flight schedule request to Buyer for said usage.  The Installed Aircraft availability will be agreed by both Buyer and Panasonic based on the aircraft assigned trips and or other required scheduled/unscheduled maintenance. Notwithstanding anything to the contrary, Buyer shall make the Installed Aircraft available for Panasonic's use for at least a four (4) hour time period at least once every ten (10) days at the Installed Aircraft's base of operations, which is Boeing Field in Seattle, Washington.

7.1   Cancellation or Rescheduling of flights
    Buyer and or Panasonic may cancel or reschedule a flight for any reason without penalty.  Each party will use commercially reasonable efforts to provide the other party with at least twenty-four (24) hours prior written notice of a cancellation or rescheduling of a flight.



EXHIBIT E

PANASONIC PROVIDED TRAINING

**Line Maintenance Training – GCS eXConnect (Or as mutually agreed to) (Training shall be conducted at Buyer's Facility)**
1.  Introduction
    a.  Safety and Hazard Awareness Notice
    b.  About this Manual
    c.  Course Learning Objectives
    d.  Course Description
    e.  Acronyms and Abbreviations
2.  General Description
    a.  Product features
        i.  User benefits
        ii.  Theory of operation
        iii.  Coverage map
        iv.  Pricing scheme and forms of payment
    b.  System Overview
    c.  Purpose
    d.  Services
    e.  System Design
    f.  Cabin Operations Software
    g.  Cabin Operations GUI
    h.  Maintenance Operations
    i.  Maintenance GUI
    j.  Special Tools and Test Equipment
3.  LRU Physical, Functional, and Interface Description
    a.  Crew Panel
    b.  Broadband Controller
    c.  Seat Power Module
    d.  Antenna/Radome/Mounting Plate
4.  System Interfaces
    a.  Basic antenna and SATCOM overview
        i.  SATCOM concepts
            1.  Bent pipe
            2.  Uplink/downlink
            3.  Forward link/return link
            4.  Hub/remote
        ii.  Antenna
            1.  Gain
            2.  Pattern
            3.  Link budget
            4.  Adjacent satellite interference
            5.  Off-axis power spectrual density
            6.  Pointing and tracking
                a.  Open loop (ARINC-429 NAV inputs)
                b.  Closed loop (carrier noise from modem)
        iii.  Modem
            1.  DVB-S2
            2.  DVB-S2



       3.   Mobility - mapserver and handoff
b.   Broadband connectivity signal flow
c.   Power distribution



## EXHIBIT F

## ADDITIONAL INCENTIVES

In addition to the eXConnect shipset parts list described in Exhibit B, Panasonic is pleased to offer a new cabin management system / in-flight entertainment system in consideration of Buyer's participation in the eXConnect system testing.  Panasonic's eX1 system is intended to replace the existing Airshow cabin distribution system and will provide the following functional features (all items listed below are defined as the eX1 CSM/IFE Shipset Equipment):

- Cabin lighting, flight attendant call, and temperature control as per existing system.
- Audio-video on demand (AVOD), streamed independently to each cabin zone, with high definition video available from a media file server.
- Existing switch panels replaced by software-configurable touch screens.
- Laptop inputs to video monitors.
- Blu-ray players with inputs to monitors.
- Replacement overhead audio speakers.
- Upgraded LCD cabin monitors.
- New cabin handsets for voice-over-IP capability.
- System remote control from iPod Touch devices using Panasonic proprietary software.
- Connectivity features brought by integration with eXConnect hardware.

Additional integration engineering and certification are required for this system.  An installation schedule will be determined at a program coordination meeting to be scheduled between Panasonic and Buyer.

The following prices apply to the installation of eX1:

| Item | Retail Price | Discounted Price |
|------|-------------|------------------|
| eX1 CSM/IFE Shipset Equipment | $1,200,000.00 | $500,000.00 |
| eX1 Installation Engineering | $100,000.00 | FOC |
| eX1 Certification | $400,000.00 | FOC |
| eX1 Installation Labor | $60,000.00 | FOC |

In consideration of Buyer's participation in the eXConnect system testing, the eX1 prices shall be payable in kind with flight hours at the rate and definitions described in Exhibit D, above and beyond the minimum described in Exhibit D.  Should Buyer decline to participate in this additional flight and demonstration testing, Panasonic shall invoice and Buyer shall pay any balance of the discounted eX1 pricing per section 2 of this GTA.

