# EXHIBIT 6

## AMENDMENT NO. 4 TO THE GENERAL TERMS AGREEMENT

## BETWEEN PANASONIC AVIONICS CORPORATION

## AND WCA HOLDINGS III, LLC

This Amendment No. 4 ("AMENDMENT"), dated as of the 10th day of April, 2017, is made and entered into by and between **WCA HOLDINGS III, LLC**, a Montana corporation ("Buyer"), and **PANASONIC AVIONICS CORPORATION**, a Delaware corporation ("Panasonic").

### RECITALS:

WHEREAS, Buyer is the owner or that certain 737-73Q aircraft, serial number 30329, bearing United States Registration No. N162WC (the "Aircraft").

WHEREAS, Buyer and Panasonic are parties to that certain General Terms Agreement dated June 29, 2010 (the "Agreement"), pursuant to which, among other things, Panasonic agreed to install in the Aircraft a new cabin management system / in-flight entertainment system (the "eX1 System").

WHEREAS, Panasonic completed the installation of the eX1 System in the Aircraft on or about May 19, 2013.

WHEREAS, the eX1 System was installed in the Aircraft with a Broadband Controller (BC) RD – NB2500-01 commercial satellite modem (the "Original Broadband Controller"), and Buyer and Panasonic desire to replace the Original Modem with a Newtec MDM5000 commercial satellite modem and the other items set forth in Schedule A hereto (the "New Broadband Controller").

WHEREAS, replacement of the Original Broadband Controller with the New Broadband Controller will require that the tests set forth on Schedule B hereto (each, a "Flight Test" and collectively, the "Flight Tests") be conducted using the Aircraft in order for Panasonic to obtain FAA certification to use the New Broadband Controller in the eX1 System in the Aircraft and other aircraft similar to the Aircraft.

WHEREAS, Panasonic has requested that Buyer conduct the Test Flights for Panasonic, which Buyer has agreed to do subject to the terms and conditions of this Amendment.

NOW, THEREFORE, in consideration of the mutual covenants and promises herein set forth, the parties hereby agree as follows:

1.  **AFFIRMATION OF RECITALS.** The parties hereto affirm and acknowledge that all facts set forth in the Recitals of this Amendment are true and correct.

2.  **DEFINITIONS.** All capitalized terms used in this Amendment and not otherwise defined herein have the meanings specified in the Agreement.

3.  **BROADBAND EQUIPMENT.** Panasonic shall install the New Broadband Controller in the Aircraft at no cost to Buyer on or prior to Flight Test No. 5 set forth on Schedule B hereto. The New Broadband Controller shall be covered by the warranty provided in Section 6 of the Agreement. It is the intention of the Buyer and Panasonic that the costs of the New Broadband Controller shall be exchanged for the Flight Tests as described in Section 4 and the Compensation as described in Section 4.4.



- 3.1 **Equipment Upgrades**. Panasonic shall also install in the Aircraft in September 2017 (or such other month as the parties may agree) any and all upgrades to the eX1 System then available, including touch screens, Blu-ray players, audio speakers, LCD cabin monitors, cabin handsets, system remote controls and related software. All such upgrades to the eX1 System shall be covered by the warranty provided in Section 6 of the Agreement, as amended by this Amendment. It is the intention of the Buyer and Panasonic that the costs of all such upgrades shall be exchanged for Demonstration Flights as described in Amendment 3, Section 5.4.

4. **FLIGHT TESTS**. Subject to the terms and conditions of this Amendment, Buyer agrees to provide the Aircraft for the Flight Tests.

    - 4.1 **Scheduling**. Buyer shall have final authority and discretion over all scheduling of the Aircraft, and Buyer shall not, at any time, be under any obligation to provide the Aircraft to Panasonic for a particular Flight Test on a particular day.

    - 4.2 **Operational Control**. Buyer shall be responsible for the physical and technical operation of the Aircraft and the safe performance of all Flight Tests, and shall retain full authority and control, including exclusive operational control, and possession of the Aircraft at all times at during all Flight Tests. In accordance with applicable FAA regulations, the qualified flight crew provided by Buyer will exercise all required and/or appropriate duties and responsibilities in regard to the safety of each flight conducted hereunder. The pilot-in-command shall have absolute discretion in all matters concerning the preparation of the Aircraft for each Flight Test and the Flight Test itself, the load carried and its distribution, the decision whether or not a Flight Test shall be undertaken, the route to be flown, the place where landings shall be made, and all other matters relating to operation of the Aircraft. Panasonic specifically agrees that the flight crew shall have final and complete authority to delay or cancel any flight for any reason or condition which in the sole judgment of the pilot-in-command could compromise the safety of the flight, and to take any other action which in the sole judgment of the pilot-in-command is necessitated by considerations of safety. No such action of the pilot-in-command shall create or support any liability to Panasonic or any other person for loss, injury, damage or delay. The parties further agree that Buyer shall not be liable for delay or failure to furnish any Aircraft or any crew pursuant to this Amendment for any reason or no reason including, without limitation, circumstances when such failure is caused by government regulation or authority, mechanical difficulty or breakdown, war, civil commotion, strikes or labor disputes, weather conditions, acts of God, or other circumstances within or beyond Buyer's reasonable control.

    - 4.3 **Observation**. For any Flight Test, the Buyer or the Buyer's designee shall have the right to have up to two (2) observers essential to the flight on board the Aircraft to observe the operation of the New Broadband Controller and the eX1 System.

    - 4.4 **Compensation**. To compensate Buyer for the Flight Tests and any flights requested by Panasonic to move the airplane from its current location to another location for purposes of the Flight Tests (" Repositioning Flights") required to conduct such Test Flights, Panasonic shall pay to Buyer an amount equal to the sum of (a) the lesser of (i) $8,000.00 for each flight hour (or fraction thereof) elapsed during such flights or (ii) the maximum amount permitted to be paid to Buyer under applicable FAA regulations to comply with Part 91 requirements plus (b) $16,000.00 for each day (or fraction thereof) that the Aircraft is unavailable for use by Buyer as a result of conducting the Flight Tests or Repositioning



Flights and including each day (or fraction thereof) that the Aircraft has a special airworthiness certificate in the experimental category.

4.5 **Special Airworthiness Certificates.** Panasonic shall be fully responsible for, including payment of all costs, all regulatory and other filings necessary to obtain for the Aircraft (1) a special airworthiness certificate in the experimental category to permit Buyer to operate the Aircraft during the Flight Tests and (2) a standard airworthiness certificate upon the completion of the Flight Tests. Panasonic hereby represents that when obtaining the special airworthiness certificate, it has fully advised the Federal Aviation Administration of all flight operations, crew, on-board observers and technicians related to its conduct of the flight tests. Panasonic hereby represents that all test flights (and all demonstration flights under section 5.4 of Amendment No. 3) will comply with all Federal Aviation Regulations, including without limitation 14 C.F.R. § 91.319.

4.6 **Indemnification.** Notwithstanding anything to the contrary in the Agreement (or any of its Amendments), Panasonic agrees to indemnify, hold harmless and defend Buyer and its employees from and against any claims, causes of actions and/or damage arising from any and all claims by the Federal Aviation Administration and/or Department of Transportation, that the operations conducted under this Agreement and all Amendments violate Federal Aviation Regulations, U.S. Statutes or other governmental authority. Panasonic shall assume the defense of such claim by counsel retained at Panasonic's own expense and shall pay any damages assessed against or otherwise payable by Buyer as a result of the final disposition of such claim. Sections 5.3 and 9 of the Agreement shall not apply to this Section 4.6.

5. **EXTENSION OF TERM.** Panasonic and Buyer each agree to amend Section 13.1 of the Agreement to delete the phrase "not to exceed two (2) renewal periods" and to substitute the phrase "not to exceed three (3) renewal periods." Panasonic and Buyer each agree that the term of the Agreement shall be extended through December 31, 2017.

6. **WARRANTY.** Panasonic and Buyer each agree that the term "Products" shall include the New Broadband Controller and any Equipment Upgrades referenced in Section 3.1. Without limiting Section 6 of the Agreement and notwithstanding the expiration, termination or cancellation of the Agreement, Panasonic represents to Buyer that the New Broadband Controller and any Equipment Upgrades shall be free from defects in material and workmanship for a period commencing on the date of the installation (the "Installation Date") and ending on the later to occur of (a) the date that is sixty (60) months after the Installation Date or (b) the date that ownership of the Aircraft is transferred to an entity that is not controlled by or is under common control with Buyer.

7. **GENERAL PROVISIONS**

   7.1 **Assignment.** Neither party may assign this Amendment except as provided in Section 14.3 of the Agreement.

   7.2 **Notices.** Any notice, request, consent, demand or other communication given or required to be given under this Amendment shall be effective only if in writing and shall be deemed to have been given as provided in Section 14.5 of the Agreement.

   7.3 **Governing Law.** This Amendment and performance hereunder, shall be governed by and construed in accordance with the laws of the State of New York without regard to the conflict of laws principles thereof.



7.4 **Entire Agreement.**

    7.4.1 This Amendment and the Agreement sets forth the entire understanding, and hereby supersedes any and all prior agreements, oral or written, heretofore made, between the parties with respect to the subject matter of this Amendment.

    7.4.2 No delay on the part of either party in exercising any of its respective rights hereunder or the failure to exercise the same, nor the acquiescence in or waiver of a breach of any term or condition of this Amendment shall be deemed or construed to operate as a waiver of such rights or acquiescence thereto except in the specific instance for which given.

    7.4.3 The terms and conditions of this Amendment may not be amended, changed, waived, varied or modified except by an amendment in writing signed by Duly Authorized Representatives of both parties.

    7.4.4 The invalidity or unenforceability of any term or condition of this Amendment pursuant to any applicable law shall not affect the validity or enforceability of the remaining provisions hereof, but this Amendment shall be construed as if not containing the provision held invalid or unenforceable in the jurisdiction in which so held.

    7.4.5 The section headings used herein do not form a part of this Amendment but are for convenience only and shall not limit or be deemed or construed in any way to affect or limit the meaning of the language of the Sections herein contained.

8. **EXECUTION.**

    8.1 **Counterparts.** This Amendment may be executed in two or more counterparts, each of which shall be an original, and all of which, taken together, shall constitute one and the same agreement.

    8.2 **Duly Authorized.** Each party represents and warrants to the other party that the person executing this Amendment on its behalf is its Duly Authorized Representative.

[Remainder of page intentionally left blank; signature page follows]



IN WITNESS WHEREOF, each party has caused this Amendment to be executed on the respective dates entered below.

| WCA HOLDINGS III, LLC | PANASONIC AVIONICS CORPORATION |
|---|---|
| By: *(signature)* | By: *(signature)* |
| Name: Lawrence R Simkins | Name: Mark Jennings |
| Title: President/Manager | Title: Chief Operating Officer |
| Date: 4/10/2017 | Date: April 11th 2017 |

## Schedule A

Parts List

| Vendor | Part Number | Quantity | Description |
|---|---|---|---|
| LCOM | CC-TMTME020 | 2 | Coaxial cable, LMR-200, TNC male, 50 Ohm, length 20 ft. |
| Pasternack | PE6229 | 2 | 2 Watt 50 Ohm RF Load Up to 6 GHz with TNC Female Input Tri-Metal Plated Brass |
| NewTec | MDM5000 | 1 | Commercial satellite modem |



## Schedule B

### Flight Test Cases

| Test No. | Test Name | Test Date | Duration | Description | Aircraft Status | Performance Metric |
|---|---|---|---|---|---|---|
| 1. | Ground Test | | | Aircraft parked on ground. Remote joins network. Verify that 2-way link is stable. | Regular | Packet error rate |
| 2. | Take-off link test | April 12, 2017 | 4 hours | Remote joins network at least 5 minutes before takeoff, and stays in network during takeoff, to cruising altitude | Special airworthiness certificate in the experimental category | Packet error rate |
| 3. | 360 degree coordinated turn link test | May 17, 2017 | 4 hours | Remote in network for at least 5 minutes before beginning of 360° coordinated turns (±30° roll). Remote should stay in network throughout entire maneuver. | Special airworthiness certificate in the experimental category | Packet error rate  Recovery time if remote drops out of network. |
| 4. | SPA Polarization Performance | June 14, 2017 | 4 hours | Monitor listener parameter "DSP_POLXPOL_TX_P2_LF" to see how MxDMA impacts SPA's perceived XPOL isolation | Special airworthiness certificate in the experimental category | DSP_POL XPOL_TX _P2_LF statistics |
| 5. | Landing link test | July 12, 2017 | 4 hours | System in network at least 5 minutes before landing, and stays in network for duration of landing. | Regular | Packet error rate |
| 6. | BC and DPA Antenna Certification Testing | August 16, 2017 | 4 hours | TBD | Special airworthiness certificate in the experimental category | TBD |

4829-0589-9842v.2 0058174-000001

7

