**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| WCA HOLDINGS III, LLC |
| Plaintiff, |
| -against- |
| PANASONIC AVIONICS CORPORATION, |
| Defendant. |

Case No. 1:20-cv-7472 (GHW)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT PANASONIC AVIONICS**
**CORPORATION'S MOTION TO DISMISS THE AMENDED COMPLAINT**

LOEB & LOEB LLP
Wanda D. French-Brown
Mary Jean Kim
345 Park Avenue
New York, New York 10154
(212) 407-4000

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 3

The General Terms Agreement and the Shipset eXConnect ............................................. 3

The eX1 system .................................................................................................................. 4

Amendment No. 1 to the GTA ........................................................................................... 5

Amendment Nos. 2 and 3 to the GTA ............................................................................... 6

Panasonic Completes Installation of the eX1 System and the Parties Execute
Amendment No. 4 to the GTA ........................................................................................... 7

STANDARD OF REVIEW .................................................................................................. 8

ARGUMENT ....................................................................................................................... 9

    I.     PLAINTIFF'S BREACH OF CONTRACT CLAIM AS TO THE EX1
         SYSTEM IS FATALLY DEFICIENT AND SHOULD BE
         DISMISSED ........................................................................................................ 9

         A.    WCA's Breach of Contract Claim is Incurably Defective and is
              Otherwise Time-Barred ...................................................................... 10

         B.    The eX1 System is Not Covered by Any Express or Implied
              Warranty ............................................................................................. 12

         C.    The Alleged Equipment Upgrade Agreement is Unenforceable
              For Lack of Mutuality of Obligation .................................................. 15

         D.    The Alleged Equipment Upgrade Bargain is Too Indefinite to
              be Enforced ......................................................................................... 17

    II.    PLAINTIFF'S BREACH OF IMPLIED COVENANT OF GOOD
         FAITH AND FAIR DEALING AND PROMISSORY ESTOPPEL
         CLAIMS FAIL AS A MATTER OF LAW ........................................................ 20

         A.    The Breach of Covenant of Good Faith and Fair Dealing is
              Duplicative of Plaintiff's Breach of Contract Claims and Must
              Be Dismissed ...................................................................................... 21

i

B.    The Promissory Estoppel Claim Cannot Survive Independently of the Breach of Contract Claim and Lacks an Unambiguous "Promise" and "Reasonable Reliance" on the "Promise"........................23

CONCLUSION.................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Arbitron, Inc. v. Tralyn Broad., Inc.*,
400 F.3d 130 (2d Cir. 2005)...................................................................................17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................8, 20

*Ashland Inc. v. Morgan Stanley & Co.*,
700 F. Supp. 2d 453 (S.D.N.Y. 2010), *aff'd*, 652 F.3d 333 (2d Cir. 2011)............................24

*Bennett v. State Farm Fire & Cas. Co.*,
181 A.D.3d 777 (2d Dep't 2020)...........................................................................23

*CARI, LLC v. 415 Greenwich Fee Owner, LLC*,
91 A.D.3d 583 (1st Dep't 2012), *aff'd*, 19 N.Y.3d 845 (2012)...............................................15

*Carter, Jr. v. Neverett Farms, Inc.*,
173 F.3d 843 (2d Cir. 1999)....................................................................................11

*CBI Capital LLC v. Mullen*,
No. 19 Civ. 5219 (AT), 2020 U.S. Dist. LEXIS 125943 (S.D.N.Y. July 16, 2020)..........15, 16

*Companhia Siderurgica Nacional v. D B Organ Co.*,
No. 90 Civ. 5661 (RJW), 1991 U.S. Dist. LEXIS 6848 (S.D.N.Y. May 23, 1991) ....11, 12, 15

*DDCLAB Ltd. v E.I. du Pont de Nemours & Co.*,
No. 03 CV 3654 (GBD), 2005 US Dist LEXIS 2721 (S.D.N.Y. Feb. 18, 2005) ...................25

*DiMare Homestead, Inc. v. Alphas Co. of New York*,
No. 09 Civ. 6644 PKC, 2012 U.S. Dist. LEXIS 48546 (S.D.N.Y. Apr. 5, 2012), *aff'd*, 547 F.
App'x 68 (2d Cir. 2013)...........................................................................................18

*Dragon Head LLC v. Elkman*,
118 A.D.3d 424 (1st Dep't 2014) .............................................................................18

*Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*,
93 N.Y.2d 584 (1999) ..........................................................................................20

*Foros Advisors LLC v. Digital Globe, Inc.*,
333 F. Supp. 3d 354 (S.D.N.Y. 2018)......................................................................18

*Four Finger Art Factory, Inc. v. DiNicola*,
99 Civ. 1259 (JGK), 2000 U.S. Dist. LEXIS 1221 (S.D.N.Y Feb. 5, 2000) .........................24

*GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*,
    667 F. Supp. 2d 308 (S.D.N.Y. 2009)........................................................................19

*Gillespie v. St. Regis Residence Club*,
    343 F. Supp. 3d 332 (S.D.N.Y. 2018).............................................................*passim*

*Gray v. Toyota Motor Sales, U.S.A., Inc.*,
    806 F. Supp. 2d 619 (E.D.N.Y. 2011) ........................................................................23

*Harris v. Provident Life & Accident Ins. Co.*,
    310 F.3d 73 (2d Cir. 2012).........................................................................................21

*Homeward Residential, Inc. v. Sand Canyon Corp.*,
    298 F.R.D. 116 (S.D.N.Y. 2014) ..................................................................................9

*Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*,
    52 N.Y.2d 105 (1981) .................................................................................................17

*Karmilowicz v. Hartford Fin. Servs. Grp.*,
    494 F. App'x 153 (2d Cir. 2012) ..........................................................................21, 23

*LiveIntent, Inc. v. Naples*,
    293 F. Supp. 3d 433 (S.D.N.Y. 2018).........................................................................12

*Major League Baseball Props. v. Opening Day Prods.*,
    385 F. Supp. 2d 256 (S.D.N.Y. 2004).........................................................................19

*Mandarin Trading Ltd. v. Wildenstein*,
    16 N.Y.3d 173 (2011) .................................................................................................20

*Mariah Re Ltd. v. Am. Family Mut. Ins. Co.*,
    52 F. Supp. 3d 601 (S.D.N.Y. 2014), *aff'd*, 607 F. App'x 123 (2d Cir. 2015).......................21

*Nungesser v. Columbia Univ.*,
    169 F. Supp. 3d 353 (S.D.N.Y. 2016)...................................................................23, 24

*Richbell Info. Servs. v. Jupiter Partners, L.P.*,
    309 A.D.2d 288 (1st Dep't 2003) ...............................................................................24

*Ridenhour v. Bryant*,
    No. 1:19-CV-2587 (ALC), 2020 U.S. Dist. LEXIS 55772 (S.D.N.Y. Mar. 29, 2020) ...........24

*Roberts v. Weight Watchers Int'l, Inc.*,
    217 F. Supp. 3d 742 (S.D.N.Y. 2016), *aff'd*, 712 F. App'x 57 (2d Cir. 2017)...........10, 14, 15

*Rojas v. Don King Prods.*,
    No. 11 Civ. 8468 (KBF), 2012 U.S. Dist. LEXIS 32192 (S.D.N.Y. March 6, 2012) .21, 22, 23

*Rounds v. Beacon Assocs. Mgmt. Corp.*,
   No. 09-cv-6910, 2009 U.S. Dist. LEXIS 117360 (S.D.N.Y. Dec. 14, 2009) ..........................9

*Saul v. Cahan*,
   153 A.D.3d 947 (2d Dep't 2017) .................................................................................20

*Souveran Fabrics Corp. v. Virginia Fibre Corp.*,
   37 A.D.2d 925 (1st Dep't 1971) ............................................................................15, 16

*Sud v. Sud*,
   211 A.D.2d 423 (1st Dep't 1995) ..................................................... 9, 10, 12-13, 20

*U.S. Bank v. ILDA, LLC*,
   No. 13-CV-3082, 2014 U.S. Dist. LEXIS 121413 (S.D.N.Y. Aug. 29, 2014) ......................14

*Wechsler v. HSBC Bank USA, N.A.*,
   No. 15-CV-5907 (JMF), 2016 U.S. Dist. LEXIS 55404 (S.D.N.Y. April 26, 2016),
   *aff'd*, 674 F. App'x 73 (2d Cir. 2017) ................................................................12

**Statutes**

N.Y.U.C.C. § 2-316 ..........................................................................................14

**Other Authorities**

C.P.L.R. §213(2).............................................................................................11

Fed. R. Civ. P. 12(b)(6)...................................................................................8

Defendant Panasonic Avionics Corporation ("Panasonic"), by its attorneys, Loeb & Loeb

LLP, respectfully submit this memorandum of law in support of its motion to dismiss the amended

complaint ("Amended Complaint") of Plaintiff WCA Holdings III, LLC ("WCA"), as to Count I

with respect to the eX1 system, and Counts II and III, in their entireties, pursuant to Federal Rule

of Civil Procedure 12(b)(6).[1]

## PRELIMINARY STATEMENT

Plaintiff's initial Complaint alleged breach of contract and warranty claims as to

Panasonic's installation of its eX1 system.   Panasonic moved to dismiss Plaintiff's initial

complaint under Fed. R. Civ. P. 12(b)(6).   Thereafter, Plaintiff filed an Amended Complaint

alleging breach of contract and warranty claims as to the installation of the eX1 system and, a

different system, the eXConnect.   The Amended Complaint does not remedy the fatal defects of

the initial Complaint, and instead, consists of allegations designed to obfuscate the terms of the

parties' 2010 General Terms Agreement ("GTA")[2] and the subsequent amendments (Amendment

Nos. 1 through 4), which, to be clear, obligated Panasonic to install into Plaintiff's private jet *two*

*separate systems* – only one of which (the eXConnect) – was covered by express warranties.   The

other, eX1 system, is neither covered by the express warranties nor defined as a "Product" under

terms of the GTA or any amendment.   Accordingly, Plaintiff's breach of contract claim as to the

eX1 system (which accrued upon installation on May 19, 2013) is time barred.   The only viable

breach of contract and warranty claims are those applicable to the eXConnect, which is distinct

---

[1] A copy of the Amended Complaint ("Am. Compl.") (ECF Docket No. ("Dkt.") 27) is attached as Exhibit 1 to the Declaration of Wanda D. French-Brown, dated December 14, 2020 ("French-Brown Decl."). Unless otherwise noted, references to exhibits ("Ex.") are attached to the French-Brown Decl.

[2] *See* Ex. 2 (hereinafter, the "GTA"), which is governed by New York law. *See* GTA § 14.7 ("Governing Law").

from the eX1 system.  Plaintiff's breach of contract and warranty claims as to the eX1 system should be dismissed, with prejudice.

The purported equipment upgrade "agreement" is too indefinite to be enforced.  The Amended Complaint is essentially premised on a purported "agreement," by which the parties intended that Panasonic would provide *indeterminate* equipment upgrades to the eX1 system in exchange for an *unspecified number* of "in-kind test flights" and "demonstration flights," which *may or may not* occur at some *future* date at Plaintiff's *unilateral* and *sole* discretion, or, alternatively *yet-to-be-determined* "cash payments."  The Amended Complaint fails to (and cannot) answer two questions material to enforcement:  How many flights were to be provided in exchange for the equipment upgrade?  What was the monetary price for the equipment upgrade?  Furthermore, nowhere does Plaintiff even allege that it provided demonstration flights after executing Amendment No. 4, and the equipment upgrades were never intended to be provided for free.  Thus, the so-called "agreement" to provide equipment upgrades must be dismissed as a matter of law.  In addition, the alleged eX1 upgrade agreement is unenforceable for lack of mutuality of obligation because Plaintiff was free to preform or not, at its sole discretion.

Plaintiff's remaining theories fail to allege valid causes of action and should be dismissed as well.  Specifically, the Amended Complaint fails to state a claim upon which any relief can be granted for, at least, the following reasons:

     i.     the "breach of implied covenant of good faith and fair dealing" cause of action is duplicative of the defective "breach of contract" claim and, thus, must be dismissed; and

    ii.     the promissory estoppel claim is precluded because a breach of contract claim may not give rise to tort liability unless a legal duty independent of the contract has been

violated, and because Plaintiff fails to allege essential elements of a promissory

estoppel claim – a "clear and unambiguous promise" and "reasonable reliance" on

the promise – each of which is independently sufficient to warrant dismissal.

Plaintiff's Amended Complaint cannot remedy these fatal defects, which are incurable.  Thus, the

only remaining and viable claims are the breach of contract and warranty claims with respect to

the eXConnect.

## STATEMENT OF FACTS

**The General Terms Agreement and the Shipset eXConnect**

In 2010, the parties executed the GTA for the purchase and installation of the Shipset

eXConnect (the "eXConnect") (a broadband internet connectivity system) in a private Boeing 737-

700 BBJ aircraft (the "Aircraft") owned by WCA.  *See* Am. Compl. ¶ 15 ("[t]he original Products

WCA purchased pursuant [to the] 2010 GTA included a Shipset eXConnect, which was essentially

an antenna system . . . provi[ding] in-flight broadband internet service to the Aircraft").   In

exchange for Panasonic's agreement to install the eXConnect, WCA agreed to pay $342,500.  Am.

Compl.¶ 16; GTA at Ex. A.  Under Exhibit D to the GTA, Panasonic also agreed to "purchase a

minimum of 24 hours flight time from [WCA] on the aircraft in which the Shipset is installed . . .

for purposes of system testing, validation, and customer demonstrations" at $6,000 per hour, and

in exchange, WCA agreed to make the Aircraft available for Panasonic's use "for at least a four

(4) hour time period at least once every ten (10) days."  GTA at Ex. D.

Pursuant to the GTA, the parties further agreed to define the term "Products" to solely

encompass the eXConnect.  The term "Products" is unambiguously and explicitly defined as the

"items set forth in Exhibit A" to the GTA (*see* GTA § 1.3), and Exhibit A identifies "One (1)

***Shipset eXConnect*** (Items 1-19 as set forth in Exhibit B)."  *Id.* at Exs. A and B (emphasis added);

*see also* Am. Compl. ¶ 16 ("[t]he original Products were identified in Exhibit A to the 2010 GTA").

3

For the avoidance of doubt, the GTA defines "Shipset" as the "Products" and "Software" set forth in Exhibit A.  GTA § 1.5 ("'**Shipset**' shall mean Panasonic's proprietary communication system consisting of the Products and the Software set forth in **Exhibit A**") (alterations in original).

Panasonic thus represented and warranted, in pertinent part, the following with respect to the eXConnect only:

> **6.1.1**   The Products shall be free from defects in material and worksmanship for a period of thirty-six (36) months from the date of shipment of the Products.
>
> **6.1.2**   For a period of one hundred eighty (180) days from the date of installation, the Software shall substantially operate in accordance with the applicable specification.
>
> **6.1.5**   The Services shall be performed in a good and workmanlike manner.

GTA §§ 6.1.1, 6.1.2, and 6.1.5 (bold in original); Am. Compl. ¶ 17.

Panasonic expressly disclaimed warranties, however, "for any defects in the Products that have been caused by . . . improper installation, service or maintenance," and refused to "warrant that the functions contained in the Software will meet [WCA's] requirements or that the operation of the Software will be uninterrupted or error free."  *Id.* § 7.1 and 7.2.

WCA contractually waived any warranties other than those expressly set forth in the GTA. *See* GTA § 7.3 ("Disclaimer of Warranties") ("[t]he warranties set forth in this Agreement are *exclusive* and are *in lieu of all other warranties. . .*") (capitalization in original) (emphasis added).

**The eX1 system**

Exhibit F to the GTA set forth "Additional Incentives" – namely, Panasonic's "new cabin management / in-flight entertainment system" (*i.e.*, the eX1 system) – for WCA's consideration. GTA at Ex. F; Am. Compl. ¶¶ 19, 21.  In light of the eX1 system's novelty, the parties expressly acknowledged that "*[a]dditional integration engineering and certification are required for this system*" and the "installation schedule will be determined at a program coordination meeting to be

scheduled between Panasonic and [WCA]." GTA at Ex. F (emphasis added). Consideration for the eX1 system was to be paid to Panasonic "in kind with flight orders at the rate and definitions described in Exhibit D,"[3] or (in the event WCA declined to participate in the additional flight orders) by invoicing WCA pursuant to section 2 of the GTA, for any balance. GTA at Ex. F. WCA accepted Panasonic's offer to install the eX1 system and, in exchange, WCA paid a discounted price of $500,000 and provided Panasonic with additional test flights. *Id.* ¶¶ 20-21.

**Amendment No. 1 to the GTA**

As contemplated by Exhibit F to the GTA, Panasonic provided an installation schedule for the eX1 system to WCA with a completion date of September 20, 2012. *See* Ex. 3 ("Amendment No. 1"). Due to unforeseen events, however, Panasonic informed WCA that it needed additional time to complete the eX1 system installation. Accordingly, the parties executed an amendment to the GTA, dated October 19, 2012, to extend the completed installation date ("Extended Completion Date") to December 20, 2012, and to compensate WCA for the excessive downtime of, and inability to use, the Aircraft. *See* Amendment No. 1 § 3; *id* at Third Recital, and § 4.0 (compensation schedule for loss of use of the Aircraft); Am. Compl. ¶ 24.

Amendment No. 1 also set forth the following provisions for the installation of equipment upgrades to the eX1 system ("Equipment Upgrade" or "Equipment Upgrades") in exchange for demonstration flights (defined below) (hereinafter the "Equipment Upgrade Bargain"):

> **Equipment Upgrade.** Panasonic shall install in the Aircraft in September 2017 (*or such other month as the parties may agree*) *any and all upgrades to the eX1 System then available*, including touch screens, Blu-ray players, audio speakers, LCD cabin monitors, cabin handsets, system remote controls and related software. All such upgrades to the eX1 System shall be covered by the warranty provided in Section 6 of the Agreement as amended by this Amendment. *It is the intention of*

---

[3] Exhibit D § 7 ("Panasonic will purchase a minimum of 24 hours flight time from [WCA]" on the Aircraft and "[WCA] shall make the [] Aircraft available for Panasonic's use for at least a four (4) hour time period at least once every ten (10) days…").

*the Buyer and Panasonic that the costs of all such upgrades shall be exchanged for Demonstration Flights as described below.*

**Demonstration Flights.** *In the event that [WCA], agrees* to provide Aircraft demonstration flights for Panasonic or its prospective customers, Panasonic shall pay to [WCA] an amount equal to the lesser of (a) for the reminder of calendar year 2012, $7,000.00 for each flight hour (or fraction thereof) elapsed during such demonstration flight or (b) for calendar year 2013. The Total Variable Cost/Hour as published in the Conklin and de Decker Aircraft Cost Report - 2012 Volume II, multiplied by 120%, or $8,598.00 for each flight hour (or fraction thereof) elapsed during such demonstration flight or (c) the maximum amount permitted to be paid to [WCA] under applicable FAA regulations…

. . .

Panasonic acknowledges and agrees that *nothing in this Amendment obligates [WCA] to provide Aircraft demonstration flights for Panasonic* or its prospective customers and that the provision of such flights shall be *solely at [WCA]'s discretion*, including without limitation, [WCA]'s determination of Aircraft availability.

Amendment No. 1 §§ 4.3, 4.4 (emphasis added); Am. Compl. ¶ 26.

**Amendment Nos. 2 and 3 to the GTA**

Thereafter, the parties executed two additional amendments to the GTA (Amendment Nos. 2 and 3[4]) which provided the Equipment Upgrade Bargain in identical form and as initially set forth in Amendment No. 1.  *See* Amendment Nos. 2 and 3 at §§ 5.3 and 5.4.[5]  In addition to superseding and replacing all prior amendments to the GTA (at § 1), Amendment No. 3 expressly

---

[4] *See* Ex. 4 ("Amendment No. 2") and Ex. 5 ("Amendment No. 3").

[5] Amendment Nos. 2-3 also extended the Extended Completion Date and further compensated WCA for the additional months of downtime and inability to use the Aircraft during the retrofit for the installation of the eX1 system.  *See* Am. Compl. ¶¶ 27-28; Amendment No. 2 § 5.1 (extending completion date to February 15, 2013 and compensating WCA $849,000); Amendment No. 3 § 5.1 (extending completion date to May 19, 2013 and compensating WCA approximately $1,400,000 more).

modified the warranty provisions set forth in the GTA by "delet[ing] Sections 6.1.1 and 6.1.2 thereof" and substituting them with the following:

> 5.2.1    The *Products* shall be free from defects in material and worksmanship for a period commencing on the date of shipment of the Products (the "Shipment Date") and ending on the later to occur of (a) the date that is sixty (60) months after the Extended Completion Date or (b) the date that ownership of the Aircraft is transferred to an entity that is not controlled by or is under common control with [WCA].

> 5.2.2    The *Software* shall substantially operate in accordance with the applicable specification for a period commencing on the date of installation (the "Installation Date") and ending on the later to occur of (a) the date that is one hundred eighty (180) days after the Installation Date or (b) the date that ownership of the Aircraft is transferred to an entity that is not controlled by or is under common control with [WCA].

Amendment No. 3 §§ 5.2.1 and 5.2.2 (emphasis added).

## Panasonic Completes Installation of the eX1 System and the Parties Execute Amendment No. 4 to the GTA

On or about May 19, 2013, Panasonic completed the Aircraft's installation of the eX1 system. *See* Ex. 6 ("Amendment No. 4"), *infra* at Third Recital; Am. Compl. ¶ 29. On April 10, 2017, the parties then entered a final amendment to the GTA (Ex. 6, "Amendment No. 4," together with Amendment Nos. 1-3, the "Amendments" and each, an "Amendment") to memorialize Panasonic's promise to replace the original broadband controller with a New Broadband Controller and WCA's agreement to provide Flight Tests (as defined under section 4) required to obtain FAA certification. *See id.*; Am. Compl. ¶ 39.

Much like Amendment Nos. 1 through 3, Amendment No. 4 contained, in identical form, the Equipment Upgrade Bargain under section 3.1:

> **Equipment Upgrades.** Panasonic shall also install in the Aircraft in September 2017 (or such other month as the parties may agree) any and all upgrades to the eX1 System then available, including touch screens, Blu-ray players, audio speakers, LCD cabin monitors, cabin handsets, system remote controls and related software. All such upgrades to the eX1 System shall be covered by the warranty provided in Section 6 of the Agreement as amended by this Amendment. *It is the*

*intention of [WCA] and Panasonic that the costs of all such upgrades shall be*
*exchanged for Demonstration Flights as described in Amendment 3, Section 5.4.*

Amendment No. 4 § 3.1 (emphasis added).

The terms of Amendment No. 4 expired on December 31, 2017. *Id.* § 5.

## STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this standard, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must nudge claims across the line from conceivable to plausible." *Gillespie v. St. Regis Residence Club*, 343 F. Supp. 3d 332, 339 (S.D.N.Y. 2018) (Woods, J.) (citing *Twombly*, 550 U.S. at 570)) (quotations omitted). Though all reasonable inferences are drawn in the plaintiff's favor on a motion to dismiss, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 680. (quoting *DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87-88 (2d Cir. 2013)). Accordingly, "a complaint that offers 'labels and conclusions' or 'naked assertion[s]' without 'further factual enhancement' will not survive a motion to dismiss." *Gillespie*, 343 F. Supp. 3d at 339 (S.D.N.Y. 2018) (citing *Iqbal*, 556 U.S. at 678 (alteration in original)).

"A breach of contract claim will not survive a motion to dismiss where the plaintiff fails to allege the specific provisions of the contract upon which liability is predicated." *Id.* (internal quotations and citations omitted). It is fundamental under New York law that contracts are to be "construed in accord with the parties' intent. The best evidence of what parties to a written

agreement intend is what they say in their writing.  Thus, a written agreement that is complete, clear and unambiguous on its face must be interpreted according to the plain meaning of its terms." *Id.* at 340 (internal quotations and citations omitted); *see also Homeward Residential, Inc. v. Sand Canyon Corp.*, 298 F.R.D. 116, 128 (S.D.N.Y. 2014) (quoting *Olin Corp. v. Am. Home Assur. Co.*, 704 F.3d 89, 99 (2d Cir. 2012) ("[a] contract is unambiguous when it has 'a definite and precise meaning . . . and concerning which there is no reasonable basis for a difference of opinion'"). Where a contract is unambiguous, a court may dismiss a breach of contract claim on a motion to dismiss.  *See Rounds v. Beacon Assocs. Mgmt. Corp.*, No. 09-cv-6910, 2009 U.S. Dist. LEXIS 117360, at *6-7 (S.D.N.Y. Dec. 14, 2009).  On a motion to dismiss for failure to state a claim, the Court "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *Gillespie*, 343 F. Supp. 3d at 337 n.1 (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)).

## ARGUMENT

### I.  PLAINTIFF'S BREACH OF CONTRACT CLAIM AS TO THE EX1 SYSTEM IS FATALLY DEFICIENT AND SHOULD BE DISMISSED

The essential elements of a breach of contract cause of action are "(1) the existence of a contract; (2) performance by one party; (3) breach of the contract by the other party; and (4) resulting damages." *Gillespie*, 343 F. Supp. 3d at 339 (citations omitted).  To withstand a motion to dismiss, a breach of contract claim must "allege, in nonconclusory language, . . . the essential terms of the parties' purported contract, including the specific provisions of the contract upon which liability is predicated…." *Sud v. Sud*, 211 A.D.2d 423, 424 (1st Dep't 1995) (affirming dismissal of breach of contract claim as "too vague and indefinite, and therefore unenforceable");

*Gillespie*, 343 F. Supp. at 340 (dismissing contract claim where plaintiff failed to identify "any express provision imposing an obligation" on defendant).

A.     **WCA's Breach of Contract Claim is Incurably Defective and is Otherwise Time-Barred**

WCA fails to allege an actionable breach of the GTA or any subsequent Amendment to the GTA based on Panasonic's purported failure to install a "fully working" eX1 system in accordance with "related specifications for the eX1 system."  Am. Compl. ¶¶ 16, 47(a).  As an initial matter, WCA's collective reference to "GTA" in the complaint obviously does not merge the five distinct "agreements" into one.  In this case, it underscores the fact that WCA cannot cite to any specific provision (in either the GTA or Amendment Nos. 1-4) that Panasonic "breached" with respect to installing the eX1 system in accordance with "related specifications," and this claim should be dismissed on this ground alone.  *See*, *e.g.*, *Gillespie*, 343 F. Supp. at 339-40 (breach of contract claim cannot "survive a motion to dismiss where the plaintiff fails to allege the specific provisions of the contract upon which liability is predicated"); *Roberts v. Weight Watchers Int'l, Inc.*, 217 F. Supp. 3d 742, 753 (S.D.N.Y. 2016), *aff'd*, 712 F. App'x 57 (2d Cir. 2017) (since "plaintiff cannot identify an obligation that the defendant breached, his claim must be dismissed" under Rule 12(b)(6); *see also Sud*, 211 A.D.2d at 424.

This failure is unsurprising given that there are no terms whatsoever—in either the GTA or any subsequent Amendment—which purport to set forth the installation process or specifications for the eX1 system.  As WCA alleges, Exhibit D to the GTA merely set forth the process to install a different "Product" – the eXConnect.  Am. Compl. ¶ 18.  In fact, only *Exhibit F* to the GTA even discusses the eX1 system beyond setting forth the completed installation date (as set forth in Amendment Nos. 1-3).  GTA at Ex. F.  Under Exhibit F, WCA expressly acknowledged, in light of the eX1 system's novelty, that "***[a]dditional integration engineering***

*and certification are required for this system*" and that the "installation schedule will be determined at a program coordination meeting to be scheduled between Panasonic and [WCA]." *Id.* (emphasis added). Clearly, the GTA does not set forth any "specifications" for the future eX1 system, which, at the time, simply did not exist. Am. Compl. ¶ 20 (noting "[t]he price to WCA for the *future* eX1 System") (emphasis added).

Even if WCA could state a claim for breach of the GTA or any Amendments thereto for Panasonic's failure to install the eX1 system "in a fully working condition" or according to "related specifications"—which it cannot—WCA's claims are barred by the statute of limitations, whether under the New York Uniform Commercial Code ("N.Y.U.C.C.") (as applied to the sale of goods[6]), or New York common law (as applied to breach of contract claims). Compl. ¶ 47(a); *see, e.g.*, *Carter, Jr. v. Neverett Farms, Inc.*, 173 F.3d 843 (2d Cir. 1999) (citing N.Y.U.C.C. § 2-725, a breach of contract claim related to a sale of goods is subject to a four-year statute of limitations, which accrues from the date of delivery or completion of installation); *see, e.g. Gillespie*, 343 F. Supp. 3d at 347 (explaining "statute of limitations for breach of contract—express and implied— is six years," under C.P.L.R. §213(2), and "accrues at the time of the breach . . . even though the injured party may be ignorant of the existence of the wrong or injury at that time" (citing *Ely-Cruikshank Co. v. Bank of Montre*al, 81 N.Y.2d 399, 402-03, (1993)).

As alleged and acknowledged by WCA (Am. Compl. ¶ 28), Panasonic completed the installation of the eX1 system in the Aircraft on May 19, 2013. *See* Amendment No. 4 at Third

---

[6] WCA alleges (Am. Compl. ¶¶ 15, 17, 47(a)) that it agreed to purchase Products (which Panasonic agreed to sell) under the GTA which included the eXConnect, and that Panasonic breached the GTA by, *inter alia*, failing to deliver its Products according to "applicable specifications," thus this is a "classic sale of goods contract dispute." *Companhia Siderurgica Nacional v. D B Organ Co.*, No. 90 Civ. 5661 (RJW), 1991 U.S. Dist. LEXIS 6848, at *10 (S.D.N.Y. May 23, 1991) (N.Y.U.C.C.'s four-year statute of limitation applied to dispute involving plaintiff's purchase, and defendant's purported failure to deliver, steel as agreed).

Recital.  Any "breach" thus accrued on or about May 19, 2013 when Panasonic indisputably delivered and installed the eX1 system.  Accordingly, the limitations period expired at the earliest, under the N.Y.U.C.C., on May 19, 2017, and at the latest, under C.P.L.R. 213(2), on May 19, 2019. Under either scenario, WCA's filing of this action on September 11, 2020 is untimely and requires dismissal with prejudice.  *See Companhia*, 1991 U.S. Dist. LEXIS 6848. at *13-14 (dismissing as "time-barred" plaintiff's breach claims where "tender of delivery concededly occurred more than four years prior to the commencement of the action"); *see also LiveIntent, Inc. v. Naples*, 293 F. Supp. 3d 433, 443 (S.D.N.Y. 2018) (finding "breach-of-contract claim is untimely and must be dismissed" under Rule12(b)(6)); *Wechsler v. HSBC Bank USA, N.A.*, No. 15-CV-5907 (JMF), 2016 U.S. Dist. LEXIS 55404, at *10 (S.D.N.Y. April 26, 2016) (pre-answer motion to dismiss granted where "looking only at the face of the Complaint, it is clear that [plaintiff]'s [breach of contract] claims are time barred"), *aff'd*, 674 F. App'x 73 (2d Cir. 2017).

### B.    The eX1 System is Not Covered by Any Express or Implied Warranty

WCA's allegation that Panasonic "breached the warranty provisions of the GTA" suffers from similar defects as the breach of contract claim, and is plainly insufficient to give rise to a cause of action.  Am. Compl. ¶¶ 6, 47(b).  As shown more fully below, there is simply no express or implied warranty provision in either the GTA or Amendment Nos. 1-4 requiring Panasonic to repair or replace the eX1 system or ensure it is free from any defects in material or workmanship. *Id.* ¶¶ 6, 47(b).

Fatal to WCA's breach of warranty claim is WCA's inability to identify a single express warranty provision in the GTA (or Amendments Nos. 1-4) concerning the eX1 system, much less any "agreement" by Panasonic to repair or replace the eX1 system.  *See, e.g., Sud*, 211 A.D.2d at 424 (to withstand a motion to dismiss, a breach of contract claim must "allege, in nonconclusory language, . . . the essential terms of the parties' purported contract, including the specific provisions

of the contract upon which liability is predicated"). Although Panasonic originally warrantied certain "Products" under sections 6.1.1 and 6.1.2 of the GTA, the parties expressly amended those provisions in subsequent Amendment Nos. 1 through 3. Then, Panasonic and WCA unambiguously agreed to *delete* the prior representations and warranties as to "Products" and "substitute . . . in their stead" section 5.2.1 ("[t]he *Products* shall be free from defects in material and worksmanship . . .") and section 5.2.2 ("[t]he *Software* shall substantially operate in accordance with the applicable specification"). Amendment No. 3 §§ 5.2.1 and 5.2.2 (emphasis added). The plain text thus evinces the parties' intent that the warranty, as amended, apply solely to "Products," *e.g.*, **one eXConnect** (as defined under the GTA at § 1.3), and not the eX1 system.

WCA itself acknowledges that "Products" originally included the "eXConnect" and were otherwise "identified in Exhibit A to the 2010 GTA." Am. Compl. ¶¶ 15-16; *see also* GTA at Exs. A and B. By comparison, the *eX1 system* is only referenced in Exhibit F to the GTA. That Panasonic would warrant its "new cabin management system / in-flight entertainment system" which lacked any specifications, and which the parties explicitly acknowledged required "*[a]dditional integration engineering and certification*" strains credulity. GTA at Ex. F (emphasis added); Am. Compl. ¶ 19.

Even after repleading, the Amended Complaint is entirely devoid of any allegation that the eX1 system is a "Product" covered by any express warranty provision. To obfuscate the clear contractual terms, WCA alleges in conclusory fashion that "the warranty obligations with respect to the . . . eX1 . . . system[]" "remain effective" merely because Amendment Nos. 2 and 3 to the GTA extended the warranty period for "Products." *Id.* ¶ 36. However, nothing in the Amendments modified "Products" to include the eX1 system. *See* Amendment No. 1 § 2 ("[a]ll capitalized terms used in this Amendment and not otherwise defined herein have the meanings specified in

the [GTA]"); Amendment No. 2 § 3 (same); Amendment No. 3 § 3 (same).  That the parties chose

to expand the definition of "Products" in Amendment No. 4 to cover the New Broadband

Controller and any Equipment Upgrades (which WCA now concedes, Am. Compl. ¶ 40) bolsters

the lack of any intention to include the eX1 system under "Products."  *See U.S. Bank v. ILDA,*

*LLC*, No. 13-CV-3082, 2014 U.S. Dist. LEXIS 121413, at *8 (S.D.N.Y. Aug. 29, 2014) ("[w]hen

a contract includes a phrase in one provision but not in another parallel provision, the court

presumes that the drafters acted intentionally and intended a difference in meaning").

Accordingly, WCA's transparent attempt to expand the terms of the contracted for express

warranty (as directly quoted above) without citation to any specific provision modifying

"Products" to include the eX1 system must be rejected.  *See, e.g., Gillespie*, 343 F. Supp. 3d at 340

(it is fundamental under New York law that contracts are to be "construed in accord with the

parties' intent").

      Nor can WCA state a claim for an implied warranty, in the absence of an express warranty,

under Article 2 of the N.Y.U.C.C.  First, WCA contractually waived any warranties other than

those expressly set forth in the GTA.  *See* GTA § 7.3; *see* N.Y.U.C.C. § 2-316 (allowing buyers

(like WCA) to waive all implied warranties through waiver provisions which "call the buyer's

attention to the exclusion of warranties and makes plain that there is no implied warranty" and

conspicuously reference the waiver of the implied warranties of merchantability and fitness (like

that in Section 7.3 of the 2010 GTA)); *see, e.g., Roberts*, 217 F. Supp. 3d at 750-51, *aff'd*, 712 F.

App'x 57 (2d Cir. 2017) (explaining "[u]nder New York law, disclaimers of warranties and

representations are permissible, and bar contract claims based on the alleged breach of those

warranties and representations" thus plaintiff's "attempt[] to maintain a claim for breach of

contract against the defendant based upon purported obligations that do not exist" and were

explicitly waived, fail to state a claim).  Second, and as argued above (Argument § I.A.) an implied warranty claim would be time-barred in any event under the four-year statute of limitation, which accrued on or before May 19, 2013 when Panasonic indisputably delivered and installed the eX1 system.  *See, e.g., Companhia*, 1991 U.S. Dist. LEXIS 6848, at *13-14.

### C.    The Alleged Equipment Upgrade Agreement is Unenforceable For Lack of Mutuality of Obligation

WCA's allegations that Panasonic materially breached the GTA by failing to provide "Equipment Upgrades to the Aircraft no later than September 2017" (Am. Compl. ¶¶ 16, 47(c)) is not only disingenuous[7] but also fails as a matter of law, because the Equipment Upgrade Bargain is void and unenforceable for lack of mutuality of obligation.  *See, e.g., Roberts*, 217 F. Supp. 3d at 752 ("[a] bilateral contract may be illusory for lack of mutuality of obligation"); *Souveran Fabrics Corp. v. Virginia Fibre Corp.*, 37 A.D.2d 925, 925–26 (1st Dep't 1971) ("[u]nless both parties to a contract are bound, so that either can sue the other for a breach, neither is bound'"). New York courts routinely refuse to enforce a so-called contract where, as here, one party to the contract is free to perform or not.  *See, e.g., CARI, LLC v. 415 Greenwich Fee Owner, LLC*, 91 A.D.3d 583 (1st Dep't 2012), *aff'd*, 19 N.Y.3d 845 (2012) (court correctly determined that provision allowing the purchaser to unilaterally cancel the agreement for any reason "rendered the contracts unenforceable for lack of mutual consideration").

There is no mutuality of obligation if one of the promissor parties — like WCA here — is free to perform it or not, as it wills.  *See, e.g., CBI Capital LLC v. Mullen*, No. 19 Civ. 5219 (AT), 2020 U.S. Dist. LEXIS 125943, at *13-14 (S.D.N.Y. July 16, 2020) (finding alleged contract's indefiniteness which conditioned party's promise only, *e.g.* "if necessary," "amount[ed] to an

---

[7] The Equipment Upgrade Bargain does not explicitly set a September 2017 deadline, and offers, as an alternative, "such other month as the parties may agree."  Amendment No. 4 § 3.1.

illusory promise that is unenforceable under New York law"). Here, from the outset and through and including Amendment No. 4, WCA was free to perform the Demonstration Flights, or not, at its sole discretion.[8]  Pursuant to the Amendments, the parties agreed "that the costs of all such upgrades shall be exchanged for Demonstration Flights" but only "*[i]n the event that [WCA] agrees* to provide Aircraft demonstration flights for Panasonic . . ."  Amendment No. 1 § 4.3; Amendment Nos. 2-3 at §§ 5.3; Amendment No. 4 at § 3.1.  Accordingly, *nothing* in any of the Amendments "obligate[d] [WCA] to provide Aircraft demonstration flights for Panasonic or its prospective customers" because the provision of such flights was "*solely at [WCA]'s discretion*, including without limitation, [WCA]'s determination of Aircraft availability."  Amendment No. 1 § 4.4; Amendment Nos. 2-3 at §§ 5.4; Amendment No. 4 at § 3.1 (the "*costs* of all such [Equipment] [U]pgrades shall be *exchanged for Demonstration Flights as described in Amendment 3, Section 5.4*").  Put simply, WCA did not bind themselves to do anything.  Because WCA alone possesses a unilateral, unrestricted right to perform the Equipment Upgrade Bargain or not, and because the Equipment Upgrade Bargain lacks any express or implied consideration on WCA Holdings' part, there is no enforceable "agreement" requiring Panasonic to provide any Equipment Upgrades to the eX1 system.

WCA's allegation that "various mutual promises in GTA Amendment No. 4 collectively formed the consideration for [Amendment No. 4]," including "among others: (i) WCA's agreement on a "test flight" process in Section 4, which gave Panasonic the right to conduct test

---

[8] Inasmuch as the GTA lacks any reference to Equipment Upgrades, neither the GTA nor any subsequent Amendment can be read to impart an obligation on WCA's part.  While Exhibit F to the GTA sets forth price terms, that provision (as alleged by WCA itself) only applies to the *eX1 system*.  *See* Am. Compl. ¶¶ 19-21.

flights on the Aircraft, (ii) a modification of the "Term" provision in Section 5, and (iii) the "General Provisions" in Section 7" fares no better and is entirely nonsensical.  Am. Compl. ¶ 38.

As per Amendment No. 4,"[WCA] and Panasonic desired to replace the Original Modem with a Newtec MDM5000 commercial satellite modem and the other items set forth in Schedule A [] (the 'New Broadband Controller')."  Amendment No. 4 at Fourth Recital.  Replacement of the Original Broadband Controller with the New Broadband Controller required that Flight Tests be conducted in order to obtain FAA certification for the use of the New Broadband Controller. *Id.* at Fifth Recital.  As acknowledged by WCA, Amendment No. 4 was executed to memorialize Panasonic's agreement to install the New Broadband Controller in the Aircraft in exchange for the Flight Tests (distinguished from Demonstration Flights) as set forth in Section 4 of Amendment No. 4.  *Id.* § 3.  By contrast, the Equipment Upgrade Bargain does not identify any consideration for the installation of the Equipment Upgrades and explicitly refers to the Demonstration Flights set forth in Amendment 3, section 5.4.  *Id.* § 3.1.

### D.   The Alleged Equipment Upgrade Bargain is Too Indefinite to be Enforced

Likewise, WCA's allegations as to the terms of the Equipment Upgrade Bargain (as most recently updated in Amendment No. 4) are impenetrably vague and uncertain.  Am. Compl. ¶¶ 37-43.  Courts have, time and again, emphasized that "'few principles are better settled in the law of contracts than the requirement of definiteness,' and that under New York law, 'if an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract.'" *Arbitron, Inc. v. Tralyn Broad., Inc.*, 400 F.3d 130, 136 (2d Cir. 2005); *see also Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*, 52 N.Y.2d 105, 109 (1981) ("definiteness as to material matters is of the very essence of contract law.  Impenetrable vagueness and uncertainty will not do").

This Court has declined to enforce vague contractual terms in similar circumstances. *See*, *e.g.*, *Foros Advisors LLC v. Digital Globe, Inc.*, 333 F. Supp. 3d 354, 361 (S.D.N.Y. 2018) ("there [was] no binding agreement because the Offer Clause [was] merely an agreement to agree on these material terms at a later time"). In fact, "precatory language" such as "[i]t is the intention of [the parties] '. . . to effect certain acts" (*i.e.*, "that the costs of such upgrades shall be exchanged for Demonstration Flights") has been held unenforceable as a matter of law. *Dragon Head LLC v. Elkman*, 118 A.D.3d 424, 425 (1st Dep't 2014). In this case, the fact that material terms of the Equipment Upgrade Bargain are entirely missing from the Amendments indicates that the parties did not have an intent to be bound or intended to negotiate a more definite agreement in the future. *See*, *e.g.*, *Foros*, 333 F. Supp. 3d at 361; *DiMare Homestead, Inc. v. Alphas Co. of New York*, No. 09 Civ. 6644 PKC, 2012 U.S. Dist. LEXIS 48546, at *68 (S.D.N.Y. Apr. 5, 2012) (where "a dispute as to a material term manifests a lack of intention to form a contract, no enforceable contract results"), *aff'd*, 547 F. App'x 68 (2d Cir. 2013).

As an initial matter, what were the Equipment Upgrades? WCA fails to identify Panasonic's "promise" in the first instance, and merely alleges that Panasonic agreed to "install in the Aircraft in September 2017 (*or such other month as the parties may agree*) *any and all upgrades to the eX1 System then available* . . ." Am. Compl. ¶ 26; Amendment No. 4 § 3.1. Nor does WCA allege what Equipment Upgrades were available as of September 2017.

If the Equipment Upgrade Bargain was certain in terms, why did WCA fail to provide a single Demonstration Flight to Panasonic? Tellingly, there is not one sentence alleging that WCA even attempted to provide the Demonstration Flights. Yet even if WCA was obligated to provide Demonstration Flights – which it was not – how many were required to compensate Panasonic for the Equipment Upgrades? One? Ten? One hundred? Alternatively, if the parties agreed to cash

payments as WAC alleges (Am. Compl. ¶ 39) what monetary price was set for the Equipment Upgrades, including, "touch screens, Blu-ray players, audio speakers, LCD cabin monitors, cabin handsets, system remote controls and related software?" *Id.* at ¶ 37.

The Amendments do not specify the quantity of Demonstration Flights (one, ten, or one hundred) or set any price structure for the eX1 system Equipment Upgrades—they merely provide that Panasonic will be charged for the Demonstration Flights by "each flight hour." *See* Amendment No. 1 § 4.4; Amendment Nos. 2-3 §§ 5.4; Amendment No. 4 § 3.1 (incorporating Amendment No. 3 § 5.4). Similarly, the Amendments fail to specify the number of flight hours required. The imprecision of this alleged "agreement" thus leaves the Court with no basis for determining what the "contract" is, or how it should be enforced. The Equipment Upgrade "agreement" is therefore impossibly and incurably indefinite and should be precluded from enforcement. *See Major League Baseball Props. v. Opening Day Prods.*, 385 F. Supp. 2d 256, 271 (S.D.N.Y. 2004) (quoting *Cooper Square Realty, Inc. v. A.R.S. Mgmt. Ltd.*, 181 A.D.2d 551, 551-52 (1st Dep't 1992) (affirming pre-answer dismissal of contract claim lacking the "essential ingredient" of "price"); *GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*, 667 F. Supp. 2d 308, 326-27 (S.D.N.Y. 2009) ("consideration to be paid under a contract is a material term" thus absence of "methodology, formula, or external measure" to determine compensation rendered breach of contract claim unenforceable).

That the parties specified the precise *number* of Flight Tests and *hours* required to replace and pay for the cost of the New Broadband Controller, in the *very same agreement*, underscores the uncertainty inherent with respect to the material terms of the Equipment Upgrade Bargain. *See* Amendment No. 4 at Recitals ("replacement of the Original Broadband Controller with the New Broadband Controller will require that the tests set forth on Schedule s hereto (each, a 'Flight Test'

and collectively, the 'Flight Tests'"); *see id.* § 3 ("the costs of the New Broadband Controller shall be exchanged for the Flight Tests as described in Section 4 and the Compensation as described in Section 4.4). It is black letter law that "a party alleging a breach of contract must 'demonstrate the existence of a . . . contract reflecting the terms and conditions of their . . . purported agreement.'" *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 181-82 (2011); *see Iqbal*, 556 U.S. at 678 (alteration in original)); *Sud*, 211 A.D.2d at 424 (a breach of contract claim must "allege, in nonconclusory language, . . . the essential terms of the parties' purported contract").

Furthermore, it is axiomatic that "[t]o create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*, 93 N.Y.2d 584, 589 (1999); *see also Saul v. Cahan*, 153 A.D.3d 947, 950 (2d Dep't 2017) (complaint failed to state claim for breach of contract where it "did not sufficiently allege a meeting of the minds with respect to the material terms of the [purported agreement]"). Confirming that there was no "meeting of the minds," WCA alleges that "the parties" intended for the Equipment Upgrades to be provided in exchange for *either* "in-kind test flights to obtain FAA certification and demonstration flights" *or* "alternatively, for cash payment by WCA," and that WCA "agreed to and was obligated to pay for the . . . Equipment Upgrades through such test flights, demonstration flights *and/or* cash payments." Am. Compl. ¶ 39.

## II. PLAINTIFF'S BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AND PROMISSORY ESTOPPEL CLAIMS FAIL AS A MATTER OF LAW

As discussed below, the breach of implied covenant of good faith and fair dealing, and promissory estoppel claims should be dismissed, with prejudice.

A.    **The Breach of Covenant of Good Faith and Fair Dealing is Duplicative of Plaintiff's Breach of Contract Claims and Must Be Dismissed**

WCA's breach of implied covenant of good faith and fair dealing (*id.* ¶¶ 49-55) and promissory estoppel (*id.* ¶¶ 56-60) claims must be dismissed because neither cause of action exists separate and apart from its breach of contract claim. *See, e.g., Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2012) (dismissing implied covenant claim because "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled"); *Karmilowicz v. Hartford Fin. Servs. Grp.*, 494 F. App'x 153, 157 (2d Cir. 2012) (explaining that "[u]nder New York law, quasi-contractual . . . relief is unavailable where [as here] an express contract covers the subject matter") (brackets and quotations omitted).

WCA's second cause of action for breach of implied covenant of good faith and fair dealing (Am. Compl. ¶¶ 49-55) seeks the same relief as the defective breach of contract claim. *See id.* ¶ 48 (seeking damages resulting from "obtaining Panasonic's promises under the GTA" and/or "the diminution in value to the Aircraft as a result of Panasonic's failure to correctly install the original eX1" system); *see id.* ¶ 55 (same). Such a redundant claim based on the same facts must therefore be dismissed. *See, e.g., Mariah Re Ltd. v. Am. Family Mut. Ins. Co.*, 52 F. Supp. 3d 601, 615-16 (S.D.N.Y. 2014) ("when a complaint alleges both a breach of contract and a breach of the implied covenant of good faith and fair dealing based on the same facts, the latter claim should be dismissed as redundant"), *aff'd*, 607 F. App'x 123 (2d Cir. 2015) (quoting *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013)); *Rojas v. Don King Prods.*, No. 11 Civ. 8468 (KBF), 2012 U.S. Dist. LEXIS 32192, at *9-10 (S.D.N.Y. March 6, 2012) (explaining that "covenant of good faith and fair dealing is read into the [] Agreement" but "it is not distinct from the Agreement

itself" thus "breach of the covenant is subsumed in [plaintiff's] breach of contract claim, which claim does not stand").

It is well-settled that a cause of action for "breach of the implied covenant [of good faith and fair dealing] can survive a motion to dismiss *only if* it is based on allegations different than those underlying the accompanying breach of contract claim and *if* the relief sought is not intrinsically tied to the damages allegedly resulting from the breach of contract." *Id.* (internal citations and quotations omitted) (emphasis added). WCA's claim fails to meet this standard. The allegation is premised on identical grounds to the breach of contract claim – that Panasonic failed to provide a "working" eX1 system including any and all Equipment Upgrades no later than September 2017, and that Panasonic purportedly failed to perform its obligations under the GTA. Am. Compl. ¶¶ 53-54. To the extent allegations that Panasonic sought to "pass its obligations . . . to other entities" and "acted unreasonably and in bad faith" (*id.* ¶ 54) could be construed as "different" from the allegations underlying the breach of contract claim—which it should not— WCA "does not allege any distinct damage from that conduct." *Rojas*, 2012 U.S. Dist. LEXIS 32192, at *11-12. Indeed, the relief sought is "intrinsically tied to the damages allegedly resulting from the breach of contract" claim. *Id.* at *10-11; *see* Am. Compl. ¶ 48 (seeking contract damages in connection with "obtaining performance of Panasonic's promises under the GTA" and/or "the diminution in value to the Aircraft as a result of Panasonic's failure to correctly install the original eX1 system and . . . Equipment Upgrades"); *see id.* ¶ 55 (same).

Thus, because the underlying "breach of contract" claim fails, the "breach of implied covenant of good faith and fair dealing" cause of action must be dismissed as well. *See*, *e.g.*, *Rojas*, 2012 U.S. Dist. LEXIS 32192, at *10 (even if plaintiff properly pled his contract claim to survive a motion to dismiss "he would not have a separate cause of action for breach of the

covenant of good faith and fair dealing"); *Gray v. Toyota Motor Sales, U.S.A., Inc.*, 806 F. Supp. 2d 619, 624 (E.D.N.Y. 2011) (finding plaintiffs' "implied covenant claim must fail . . . even though the Court has already dismissed the breach of contract claim").

**B.    The Promissory Estoppel Claim Cannot Survive Independently of the Breach of Contract Claim and Lacks an Unambiguous "Promise" and "Reasonable Reliance" on the "Promise"**

WCA's third cause of action for promissory estoppel (Am. Compl. ¶¶ 56-60), in the alternative, likewise requires dismissal for a number of independent reasons.

First, an express contract – namely, the GTA and Amendment Nos. 1-4, the validity of which are not in dispute[9] – governs the subject matter at issue.  *See, e.g., Karmilowicz*, 494 F. App'x at 157 ("[u]nder New York law, quasi-contractual . . . relief is unavailable where [as here] an express contract covers the subject matter") (brackets and quotations omitted); *Bennett v. State Farm Fire & Cas. Co.*, 181 A.D.3d 777, 778 (2d Dep't 2020) ("[t]he existence of a valid and enforceable contract governing a particular subject matter precludes recovery under a promissory estoppel cause of action arising out of the same subject matter").  WCA's failure to allege any relationship between itself and Panasonic, outside the terms of the GTA and the Amendments thus precludes a promissory estoppel claim.  *See Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 374 (S.D.N.Y. 2016) (Woods, J.) (finding "claim for promissory estoppel is precluded because a breach of contract claim may not give rise to tort liability unless a legal duty independent of the contract . . . has been violated").

Second, WCA fails to allege essential elements of a promissory estoppel claim — a "clear and unambiguous promise" and "reasonable reliance" on the promise — each of which is

---

[9] WCA's confuses the *validity* of the relevant agreements with the *enforceability* of the Equipment Upgrade Bargain.  *See* Am. Compl. ¶ 57.

independently sufficient to warrant dismissal. *See id.* at 374 (promissory estoppel requires: (1) "a clear and unambiguous promise;" (2) "a reasonable and foreseeable reliance by the party to whom the promise is made," and (3) "an injury sustained by the party asserting the estoppel by reason of the reliance"). For the same reasons argued above (at Argument § I.D.), the alleged promise that Panasonic agreed to "install in the Aircraft in September 2017 . . . *any and all upgrades to the eX1 System then available* . . ." is fatally ambiguous and indefinite. Amendment No. 4 § 3.1; *see, e.g.*, *Richbell Info. Servs. v. Jupiter Partners, L.P.*, 309 AD2d 288, 304 (1st Dep't 2003) (alleged "promise" "too indefinite to be the type of clear and unambiguous promise required for promissory estoppel").

At most, the Equipment Upgrade Bargain merely indicates that the parties intended to negotiate a more definite agreement in the future. Accordingly, WCA's purported reliance on an illusory "promise" cannot be "reasonable" as a matter of law. *Ashland Inc. v. Morgan Stanley & Co.*, 700 F. Supp. 2d 453, 472 (S.D.N.Y. 2010), *aff'd*, 652 F.3d 333 (2d Cir. 2011) (finding reliance upon a "vague and indefinite" promise "cannot be said to be reasonable"); *Ridenhour v. Bryant*, No. 1:19-CV-2587 (ALC), 2020 U.S. Dist. LEXIS 55772, at *22 (S.D.N.Y. Mar. 29, 2020) (dismissing promissory estoppel claim because "[t]he alleged promise Plaintiff relies on is indefinite").

Third, to the extent WCA's claim is "based on promises that are consistent with the undertakings contained in the contract" (*e.g.*, that Panasonic did not perform its obligations under the GTA or Amendment Nos. 1-4), "the claim should be dismissed as duplicative of the breach of contract claim." *Four Finger Art Factory, Inc. v. DiNicola*, 99 Civ. 1259 (JGK), 2000 U.S. Dist. LEXIS 1221, at *27 (S.D.N.Y Feb. 5, 2000); *Nungesser*, 169 F. Supp. 3d. at 374 (Woods, J.) (dismissing, with prejudice, promissory estoppel claim as "redundant" of breach of contract claim).

Finally, this is not a case that requires the application of the promissory estoppel doctrine to avoid plaintiff from suffering an "unconscionable injury." *DDCLAB Ltd. v E.I. du Pont de Nemours & Co.*, No. 03 CV 3654 (GBD), 2005 U.S. Dist. LEXIS 2721, at \*17-18 (S.D.N.Y. Feb. 18, 2005). As discussed above, Panasonic installed the eXConnect and the eX1 system in accordance with Amendment Nos. 1-3, including the various, negotiated Extended Completion Dates. Invoking promissory estoppel here to require Panasonic to install Equipment Upgrades, when the material terms were never finalized in the first instance, would impermissibly vary the unambiguous terms set forth the GTA and Amendment Nos. 1-4 – that is, at best, an agreement to agree at a future time. *See id.* at \*18 (promissory estoppel cannot be used "to vary the unambiguous terms of a contract" nor can it imply "obligations inconsistent with the terms of a contract") (citation omitted).

## CONCLUSION

For all the foregoing reasons, Defendant Panasonic Avionics Corporation respectfully requests WCA III Holdings LLC's Amended Complaint be dismissed, as to Count I with respect to the eX1 system, and Counts II and III in their entireties, under Federal Rule of Civil Procedure 12(b)(6), together with such other and further relief as the Court may deem just and proper.

Dated: New York, New York
December 17, 2020

Respectfully Submitted,

LOEB & LOEB LLP

By: */s/ Wanda D. French-Brown*
Wanda D. French-Brown
Mary Jean Kim
345 Park Avenue
New York, New York 10154
(212) 407-4000

*Attorneys for Defendant Panasonic Avionics Corporation*

25