**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WCA HOLDINGS III, LLC<br><br>                              Plaintiff,<br><br>        - against -<br><br>PANASONIC AVIONICS CORPORATION,<br><br>                              Defendant. | Case No.: 1:20-cv-7472 (GHW) |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S**

**<u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................. 1

STATEMENT OF FACTS ...................................................................... 3

LEGAL STANDARD............................................................................. 5

ARGUMENT ...................................................................................... 5

I.    WCA HAS STATED A TIMELY CLAIM FOR RELIEF BASED ON
      PANASONIC'S BREACH OF AN ENFORCEABLE CONTRACT............................. 5

      A.    WCA's claim is not barred by the statute of limitations........................ 5

      B.    WCA has sufficiently pled that Panasonic breached the Contract. ............... 8

      C.    WCA was obligated to perform under the Contract. ............................. 9

      D.    The Contract was sufficiently definite and are enforceable........................ 12

      E.    Even if the Contract were indefinite, WCA's claim for breach of contract
            cannot be dismissed. ...................................................... 14

      F.    The warranties in the GTA and the Amendments applied to the eX1
            System's operation and installation. ......................................... 15

II.   PANASONIC BREACHED THE IMPLIED COVENANT OF GOOD FAITH
      AND FAIR DEALING IF THERE WAS NO CONTRACTUAL OBLIGATION
      FOR THE EX1 SYSTEM TO BE FULLY FUNCTIONAL............................... 16

III.  WCA'S CLAIM FOR PROMISSORY ESTOPPEL IS SOLELY IN THE
      ALTERNATIVE SHOULD THE COURT FIND NO ENFORCEABLE
      AGREEMENT EXISTED BETWEEN THE PARTIES ................................. 18

CONCLUSION.................................................................................... 20

i

# **TABLE OF AUTHORITIES**

**Page(s)**

## Cases

*Arbitron, Inc. v. Tralyn Broad., Inc.*,
  400 F.3d 130 (2d Cir. 2005) .................................................................13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................5

*Ashland Inc. v. Morgan Stanley & Co.*,
  700 F. Supp. 2d 453 (S.D.N.Y. 2010), *aff'd*, 652 F.3d 333 (2d Cir. 2011) .............19

*Bayerische Landesbank, New York Branch v. Aladdin Capital Mgmt. LLC*,
  692 F.3d 42 (2d Cir. 2012) ...................................................................14

*CARI, LLC v. 415 Greenwich Fee Owner, LLC*,
  91 A.D.3d 583, 939 N.Y.S.2d 319 (2012) ...............................................11

*Cyberchron Corp. v. Calldata Sys. Dev., Inc.*,
  47 F.3d 39 (2d Cir. 1995) ................................................................19, 20

*Gillespie v. St. Regis Residence Club*,
  343 F. Supp. 3d 332 (S.D.N.Y. 2018) (Woods, J.) ................................7, 16, 17

*Golisano v. Vitoch Interiors Ltd.*,
  150 A.D.3d 1629, 54 N.Y.S.3d 244 (2017) ................................................6

*Haber v. Gutmann*,
  64 A.D.3d 1106 (2009) .........................................................................7

*Hagman v. Swenson*,
  149 A.D.3d 1, 47 N.Y.S.3d 324 (2017) .....................................................6

*Harsco Corp. v. Segui*,
  91 F.3d 337 (2d Cir. 1996) ..................................................................8, 9

*Highland CDO Opportunity Master Fund, L.P. v. Citibank, N.A.*,
  270 F. Supp. 3d 716 (S.D.N.Y. 2017) ......................................................11

*Homeward Residential, Inc. v. Sand Canyon Corp.*,
  298 F.R.D. 116 (S.D.N.Y. 2014) ...........................................................14

*Interallianz Bank AG v. Nycal Corp.*,
  No. 93 Civ. 5024 (RPP), 1994 WL 177745 (S.D.N.Y. May 6, 1994) ...................16

*JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*,
2009 WL 321222 (S.D.N.Y. Feb. 9, 2009)................................................................17

*Kassner v. 2nd Ave. Delicatessen Inc.*,
496 F.3d 229 (2d Cir. 2007).........................................................................................5

*M/A–COM Sec. Corp. v. Galesi*,
904 F.2d 134 (2d Cir. 1990)........................................................................................16

*Major League Baseball Properties, Inc. v. Opening Day Prods., Inc.*,
385 F. Supp. 2d 256 (S.D.N.Y. 2005).........................................................................13

*Oscar Schlegel Mfg. Co. v. Peter Cooper's Glue Factory*,
231 N.Y. 459, 132 N.E. 148 (1921).............................................................................11

*Pearce v. Manhattan Ensemble Theater, Inc.*,
528 F. Supp. 2d 175 (S.D.N.Y. 2007).........................................................................16

*Richbell Info. Servs., Inc. v. Jupiter Partners, L.P.*,
309 A.D.2d 288, 765 N.Y.S.2d 575 (1st Dep't 2003) ................................................18

*Robert L. Haag, Inc. v. Swift & Co.*,
696 F.2d 30 (2d Cir. 1982)............................................................................................9

*Roberts v. Weight Watchers Int'l, Inc.*,
217 F. Supp. 3d 742 (S.D.N.Y. 2016), *aff'd*, 712 F. App'x 57 (2d Cir. 2017).........10

*Souveran Fabrics Corp. v. Virginia Fibre Corp.*,
37 A.D.2d 925, 325 N.Y.S.2d 973 (1st Dep't 1971) ..................................................11

*Stanley v. Direct Energy Servs., LLC*,
466 F. Supp. 3d 415 (S.D.N.Y. 2020)...........................................................................5

*Woods v. Maytag Co.*,
2010 WL 4314313 (E.D.N.Y. Nov. 2, 2010) ................................................................6

**Statutes**

N.Y. U.C.C. § 2-725(1)...............................................................................................5, 7

N.Y. U.C.C. § 2-725(2)...................................................................................................6

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ......................................................................5

N.Y. C.P.L.R. 213............................................................................................................6

iii

Plaintiff WCA Holdings III, LLC ("WCA") respectfully submits this memorandum of law in opposition to Defendant Panasonic Avionics Corporation's Motion to Dismiss the Amended Complaint ("Motion"). For the reasons set forth herein, the Motion should be denied.

## PRELIMINARY STATEMENT

The Motion repeatedly misstates the factual allegations and underlying agreements to attack the Amended Complaint. Panasonic Aviation Corporation ("Panasonic") ignores the clear terms binding the parties in an attempt to undermine the validity of the contract. Panasonic's arguments rely on assertions that contradict the plain language of the General Terms Agreement ("GTA"), and Amendments Nos. 1-4 (the "Amendments" and, together with the GTA, the "Contract"). Panasonic also relies on numerous rhetorical questions that are easily answered by reviewing the terms of the Contract.

The Motion, which was re-filed after WCA amended the original Complaint, does not appear to reflect many of the amended allegations. A comparison of Panasonic's first Motion to Dismiss with the Motion to Dismiss the Amended Complaint appears to show that entire pages and arguments were unchanged, despite no longer reflecting the content of the allegations.

This failure to respond to the Amended Complaint led Panasonic to include multiple arguments that are demonstrably false. For instance, Panasonic argues that WCA "cannot cite to any specific provision (in either the GTA or Amendment Nos. 1-4) that Panasonic 'breached'. . . ." Mot. at 10. Yet WCA explicitly cited specific provisions in multiple places in the Amended Complaint. *See* Amend. Comp. ¶¶ 36, 41-43, and 47. Panasonic also contends that no express warranty applies to the eX1 System. Mot. at 12. Yet the Amendments explicitly state that "the eX1 System shall be covered by the warranty provided in Section 6 of the" GTA. *See, e.g.*, Amend. No. 1, Sec. 4.3.

1

Panasonic's erroneous arguments do little to undermine the strength of WCA's claims. WCA respectfully submits that it has sufficiently stated a claim for breach of contract, breach of the implied covenant of good faith and fair dealing, or, in the alternative, for promissory estoppel. These claims are not time barred for numerous reasons, including that the Contract includes numerous amendments that must be considered when analyzing the statute of limitations. Additionally, the GTA and the Amendments each included guarantees of future performance. For this reason, the statute of limitations did not begin to run on initial delivery, even if the Court can determine that delivery was completed.

Finally, the Contract was valid and does include mutuality of obligation as to each and every Amendment. Panasonic offers a tortured reading of the Contract, eliding elements of the GTA and Amendments, to argue that there was no mutuality of obligation. This argument is incorrect, as WCA was always obligated to pay for the goods and services it received; the fact that WCA and Panasonic (the "Parties") included two options for payment does not make the Contract unenforceable. The Contract was also definite, as it included specific industry standards for how WCA would pay for the upgrades and included an enumerated list of goods to be installed. The Parties manifested their intention to be bound, and included neither precatory language nor plans to enter into future agreements. Panasonic's arguments to the contrary are unsupported by the text of the Contract and the facts.

WCA also asserted claims based on the duty of good faith and fair dealing and an alternative claim for promissory estoppel to preserve its interests only if Panasonic were correct in arguing the Contract is invalid, which it is not. As this Court has previously recognized, if a claim for breach of contract is dismissed, a claim for a violation of the implied covenant of good faith and fair dealing need not be dismissed. *See* Argument, Section II, *infra.* Additionally, WCA

believes that if the Court were to agree with Panasonic that certain Contract provisions were unenforceable, justice would require enforcing the promises made by Panasonic on which WCA reasonably relied.

For these reasons, WCA respectfully submits that the Motion should be denied.

## STATEMENT OF FACTS

The relevant facts have already been provided in detail in the Amended Complaint. In short, WCA owns a Boeing 737-700 BBJ private aircraft ("Aircraft"). Under the Contract, Panasonic agreed to provide products, software and services for the Aircraft in exchange for either cash or in-kind payment by WCA.

Panasonic promised to install both the eXConnect system and the eX1 System. The eX1 system was a "cabin management" and "in-flight entertainment system." GTA, Ex. F. While Panasonic installed both systems, they were not fully functional, failing to operate as intended and represented. For example, the in-flight television failed to work. Panasonic attempted to remedy the problems. The Parties also entered into a series of amendments governing necessary upgrades to the eX1 system. Despite years of delays and attempts to have Panasonic properly upgrade the system, Panasonic has still failed to complete the upgrades. Given Panasonic's repeated failures to comply with its obligations, WCA initiated the present suit on September 11, 2020.

Central to the Parties' dispute is the existence of and applicability of certain warranties in the Contract. The GTA included numerous warranties. Section 6 of the GTA included warranties, some of which extended to future performance. Section 6.1.1 stated that the "Products shall be free from defects in material and workmanship for a period of thirty-six (36) months from the date of shipment of the products." The GTA was dated June 29, 2010; this guarantee of future performance therefore extended until at least June 29, 2013, subject to later amendments.

3

The GTA was amended four times. The first amendment, which was dated October 19, 2012 ("Amendment No. 1"), extended the warranty in GTA section 6.1.1 to 60 months after the extended completion date (December 20, 2012). Amend. No. 1, Sec. 4.2.1. The defects and workmanship warranty therefore ran through December 20, 2017 as of the signing of the first amendment. The second amendment, dated November 16, 2012 ("Amendment No. 2"), extended the warranty provisions to the "later of" 60 months after the extended completion date or the date the Aircraft was transferred. Amend. No. 2, Sec. 5.2.1. Panasonic therefore guaranteed the Products would be free from defects in material and workmanship until, at the earliest, February 15, 2018 and, at the latest, until the Aircraft was sold or transferred. The third amendment, dated March 11, 2013 ("Amendment No. 3"), included the same language, extending the guarantee to May 19, 2018. Amend. No. 3, Sec. 5.2.1. Finally, the fourth amendment, dated April 10, 2017 ("Amendment No. 4")[1], also included this language, extending the materials and workmanship guarantee to, at the earliest, 60 months after the installation date, which was yet to be determined, and at the latest until the Aircraft was sold or transferred. Even if the installation had occurred the next day, this warranty would have been in place until 2022.

Amendment No. 4 also extended the term of the GTA through December 31, 2017. Section 5 stated that "Panasonic and [WCA] each agree that the term of the Agreement shall be extended through December 31, 2017." The "Agreement" was defined as "that certain General Terms Agreement dated June 29, 2010." Amend. No. 4, at 1.

Each of the Amendments also applied the original warranty provisions in Section 6 of the GTA to the equipment upgrades to the eX1 system. *See* Amend. No. 1, Sec. 4.3 ("All such

---

[1] Amendment No. 1, Amendment No. 2, Amendment No. 3, and Amendment No. 4 are collectively referred to herein as the "Amendments."

upgrades to the eX1 System shall be covered by the warranty provided in Section 6 of the [GTA], as amended by this Amendment."); Amend. No. 2, Sec. 5.3 (same); Amend. No. 3, Sec. 5.3 (same); Amend. No. 4, Sec. 3.1 (same).

## LEGAL STANDARD

A complaint may only be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff fails to allege facts that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must accept all material factual allegations in the Amended Complaint as true and draw all reasonable inferences in favor of Plaintiff. *See, e.g.*, *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007); *see also Stanley v. Direct Energy Servs., LLC*, 466 F. Supp. 3d 415, 428 (S.D.N.Y. 2020) (denying defendant's motion to dismiss and stating that "all ambiguities must be resolved in favor of Plaintiff").

## ARGUMENT

### I.   WCA HAS STATED A TIMELY CLAIM FOR RELIEF BASED ON PANASONIC'S BREACH OF AN ENFORCEABLE CONTRACT

#### A.   WCA's claim is not barred by the statute of limitations.

Panasonic contends that *one aspect*[2] of WCA's breach of contract claim is barred by the statute of limitations as to Panasonic's failure to install a fully-working eX1 system, as alleged in Paragraph 46(a) of the Amended Complaint. Panasonic misapplies the statute and the law to WCA's claim. The installation of the eX1 system is not, on the face of the Amended Complaint, subject to the four-year statute of limitations under the Uniform Commercial Code.[3] N.Y. U.C.C.

---

[2] Notably, Panasonic does not argue that the breaches alleged in Paragraphs 46(b) (warranty breaches) and 46(c) (failure to install Equipment Upgrades in or after 2017) of the Amended Complaint are barred by the statute of limitations. *See* Mot. at 10.

[3] Even if the four-year limitation period under the UCC applied, Panasonic is wrong as to when the statute began to run because of the existence of the warranty provisions. Under New York's

Law § 2-725(1). First, as described in Exhibit F to the GTA, the eX1 system includes new engineering work, products, software and services and installation—it is not merely a sale of goods. *See, e.g.*, *Hagman v. Swenson*, 149 A.D.3d 1, 3, 47 N.Y.S.3d 324, 325 (2017). Second, Panasonic did not satisfy its burden to establish as a matter of law that the installation of the eX1 was predominantly a sale of goods. *See Golisano v. Vitoch Interiors Ltd.*, 150 A.D.3d 1629, 1630, 54 N.Y.S.3d 244, 245 (2017). Indeed, Panasonic stated that either the four-year or six-year statutes may be applicable. Mot. at 11. Thus, the applicable statute is the six-year limitation period for breach of contract for purposes of this Motion. N.Y. C.P.L.R. 213; *Hagman*, 149 A.D.3d at 3, 47 N.Y.S.3d at 325 (finding that the contract was predominantly one for services and applying the six-year statute of limitations in CPLR 213).

Panasonic acknowledges the running of the statute of limitation occurs from the date of breach, not the date initial installation was complete. Mot. at 11. As alleged, "[t]he failures of the eX1 and eXConnect system were numerous [and] occurred over many years, dating from early installation through the present." Amend. Comp. ¶ 33. Thus, while the statute of limitations arguably limits *damages* for breaches first occurring prior to six years before the filing of this action, it does not bar the *claim* for failure to provide a fully-working eX1 system because the breaches occurred over the course of years after the system was initially installed. These are factual

---

Uniform Commercial Code, a breach of warranty occurs when "tender of delivery is made, *except that where a warranty explicitly extends to future performance of the goods* and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." N.Y. U.C.C. Law § 2-725(2) (emphasis added); *see also Woods v. Maytag Co.*, 2010 WL 4314313, at *3 (E.D.N.Y. Nov. 2, 2010) (noting that a "warranty for future performance guarantees the performance of the product itself for a stated period of time") (quoting *Ontario v. Zallea Sys., Inc.*, 569 F.Supp. 1261, 1266 (D.Del.1983)).

issues to resolve on summary judgment or at trial. There is no basis to dismiss the portion of the breach of contract claim alleged in Paragraph 46(a).

Panasonic's argument also fails because the Amendments, together with the GTA, constitute a single contract. Any analysis of the statute of limitations for breach of the Contract must include all the Amendments and alleged events occurring over the past several years. *See Haber v. Gutmann*, 64 A.D.3d 1106, 1107-8 (2009) (finding that the action was not time barred by calculating the statute of limitations from the end of the work performed under the amendment to the original contract). The Contract's term was extended through December 31, 2017. Amend. No. 4, Sec. 5. The initial complaint in this matter was filed on September 11, 2020, less than 3 years from the end of the contract term as stated in Amendment No. 4. Additionally, given the dates of the Amendments, the warranty provisions guaranteeing future performance were in effect up to and including the date of filing the initial complaint. Thus, even if the four-year statute of limitations found in N.Y. U.C.C. § 2-725(1) applied to Panasonic's services, software and equipment, WCA's claims were timely.

Finally, this Court in *Gillespie v. St. Regis Residence Club* found plaintiff's claims were timely under the six-year statute of limitations. *Gillespie v. St. Regis Residence Club*, 343 F. Supp. 3d 332, 347-48 (S.D.N.Y. 2018) (Woods, J.) ("Given that the governing documents do not specify a deadline for the Sponsor's performance, the Sponsor is entitled to a 'reasonable time' to perform. Because the question of 'reasonable time' is a question of fact, however, the Court declines to dismiss Count One as untimely at this stage."). Here, the GTA did not specify an installation date.[4]

---

[4] The Amendments did include target installation dates. See, e.g., Amend. No. 1, Sec. 3 (setting the Extended Completion Date on December 20, 2012). Yet when a reasonable time for installation would have been prior to Amendment No. 1—between June 29, 2010 and October 19, 2012—is a question of fact.

Therefore, under *Gillespie*, the question of a "reasonable time" for completing of the installation is a question of fact. The Court should therefore deny Panasonic's motion to dismiss on the ground that WCA's claim for breach is time barred.

### B.  WCA has sufficiently pled that Panasonic breached the Contract.

WCA's claim for breach of contract is both sufficiently pled and not defective. "To state a claim in federal court for breach of contract under New York law, a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996).

WCA pleads these elements under Count I, including the existence of a contract, its adequate performance by WCA, Panasonic's breach, and related damages. Amend. Comp. ¶¶ 45-48. WCA also pleads facts underlying each of these elements throughout the Amended Complaint. *See* Amend. Comp. ¶ 30 (pleading WCA's adequate performance); *id*. at ¶¶ 6, 36, 42 (pleading Panasonic breached the Contract); *id*. at ¶ 6 (pleading damages arising from Panasonic's breach).

Despite these allegations, Panasonic incorrectly argues that "WCA cannot cite to any specific provision (in either the GTA or Amendment Nos. 1-4) that Panasonic 'breached' with respect to installing the eX1 system . . . ." Mot. at 10. Not true. WCA has expressly alleged that Panasonic breached the following provisions of the Contract: (i) Exhibit F to the GTA, promising to engineer, certify and install a set of functional features in the eX1 system (Amend. Comp. ¶¶ 19, 31 and 46(a)); and (ii) Section 6 of the GTA and Amendments, warranting the Products, Software and Services (Am. Comp. ¶¶ 17, 36 and 46(b)).[5]

---

[5] Even if these allegations did not exist, Panasonic is also wrong as to the degree of specificity required at the pleading stage. The Second Circuit has indicated that while "a prudent plaintiff complaining of a breach of contract should allege what representations or warranties were

Panasonic also asserts that the there are no provisions in the Contract that "set forth the installation process or specifications for the eX1 system," arguing therefore that no provisions create binding obligations on Panasonic regarding the eX1 system. Mot. at 10-11. But Exhibit F to the GTA expressly provides that Panasonic would engineer and install an eX1 system with a specific set of working features. The absence of detailed installation specifications in the Contract does not absolve Panasonic of its obligation to complete the installation in a manner that rendered the system compliant with Panasonic's promises in Exhibit F.

Thus, Panasonic's argument that WCA cannot possibly state a claim for breach of the GTA as there "are no terms whatsoever" related to the eX1 system's installation is incorrect. There are numerous terms applicable to the eX1, and WCA has adequately alleged Panasonic's breach of these obligations.

### C.  WCA was obligated to perform under the Contract.

Panasonic contends it cannot be held to its *repeated* promises to provide Equipment Upgrades to the eX1 system because those promises lack consideration. This is false. The Contract was valid and enforceable. A contract lacks mutuality of obligation only when "one party provides no enforceable consideration for the agreement." *Robert L. Haag, Inc. v. Swift & Co.*, 696 F.2d 30, 31 (2d Cir. 1982). Here the Parties acknowledged that each Amendment was supported by consideration and neither party offered an illusory promise, as WCA was obligated to pay for the goods and services provided by Panasonic.

First, Panasonic's promises to provide Equipment Upgrades in Amendments 1-4 were supported by numerous counter-promises from WCA. For example, WCA promised to extend the

---

breached, it is not clear that notice pleading requires such specificity." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996).

date for Panasonic's installation of the eX1 system and to provide the Aircraft for flight testing. Amend. No. 1, Sec. 3-4; Amend. No. 2, Sec. 4-5; Amend. 3, Sec. 4-5; Amend. No. 4, Sec. 4. WCA also agreed to extend the term of the Agreement. Amend. No. 4, Sec. 5. The Parties, both of whom are sophisticated business entities, correctly acknowledged that each Amendment contained mutual covenants and promises. Panasonic errs by ignoring these mutual promises from WCA.

Second, WCA did not have a unilateral option to perform a payment obligation to Panasonic in exchange for the Equipment Upgrades under the Contract. Panasonic's strained, unsupported interpretation of the Contract is an attempt to render the contract illusory and unenforceable. Under New York law, an "interpretation that renders a contract illusory and therefore unenforceable is disfavored and enforcement of a bargain is preferred, particularly where, as here, the Parties have expressed their intent to be contractually bound in a writing." *Roberts v. Weight Watchers Int'l, Inc.*, 217 F. Supp. 3d 742, 752 (S.D.N.Y. 2016), *aff'd*, 712 F. App'x 57 (2d Cir. 2017) (quoting *Credit Suisse First Bos. v. Utrecht–Am. Fin. Co.*, 80 A.D.3d 485, 915 N.Y.S.2d 531, 535 (2011)).

The Parties intended that the Equipment Upgrades be paid for by Demonstration Flights. Amend. No. 4, Sec. 3.1. Nothing *obligated* WCA to provide payment in the form of demonstration flights, although WCA had done so as a matter of practice during performance of the Contract. Amend. No. 3, Sec. 5.4; Amend. Comp. ¶ 2. Yet this option to provide demonstration flights did not vitiate WCA's obligation to pay for the Equipment Upgrades in some form. As established in Exhibit F to the GTA, "[s]hould [WCA] decline to participate in this additional flight and demonstration testing, Panasonic shall invoice and [WCA] *shall pay* any balance of the discounted eX1 pricing per section 2 of this GTA." GTA, Ex. F (emphasis added). Nothing in the Amendments

voided this provision. The Parties therefore had mutuality of obligation, as WCA was not entitled to receive goods without paying for them.

The Contract envisioned alternative payment methods and Panasonic has provided no case law indicating that this makes a buyer's performance obligation optional.[6] In fact, New York courts have analyzed contracts with alternative payment options and found them to be enforceable. *See, e.g.*, *Highland CDO Opportunity Master Fund, L.P. v. Citibank, N.A.*, 270 F. Supp. 3d 716, 732 (S.D.N.Y. 2017) (finding that one party had no obligation to pay in cash, where contract allowed for in-kind payment as well).

The case law Panasonic cites in support of its arguments in section I.C are largely inapplicable. For instance, in both *Souveran Fabrics Corp. v. Virginia Fibre Corp.*, 37 A.D.2d 925, 325 N.Y.S.2d 973 (1st Dep't 1971) and the case it relies on in the passage quoted by Panasonic, *Oscar Schlegel Mfg. Co. v. Peter Cooper's Glue Factory*, 231 N.Y. 459, 132 N.E. 148 (1921), the cases involved buyers who contracted to purchase as much, *or as little*, as they wanted from the seller. In *Souveran*, the buyer prevented the seller from selling any product to any other party, without obligating itself to purchase anything. This is plainly inapposite to the present contract, as WCA did not prevent Panasonic from selling its goods nor did it have the right to not purchase the Equipment Upgrades identified in Amendment No. 4. *Souveran*, 37 A.D.2d at 925. Similarly, *CARI, LLC v. 415 Greenwich Fee Owner, LLC*, 91 A.D.3d 583, 939 N.Y.S.2d 319 (2012), involved a contract that one party was entitled to unilaterally terminate, which is also inapplicable to the present case.

---

[6] Panasonic also provides no support for its novel legal argument that each separate provision in Amendment No. 4 must have mutual obligations. *See* Motion at 16-17. To be clear, Amendment No. 4 was an enforceable agreement that included both promises and consideration. As noted, under New York law, where parties have expressed their intent to be bound in writing, courts should interpret agreements to maintain their enforceability.

**D.  The Contract was sufficiently definite and are enforceable.**

Panasonic is also wrong that the terms of the Equipment Upgrades provision were not sufficiently definite to be binding.[7] First, the equipment upgrades provision included a promise that Panasonic would act in the future. Panasonic was to "install in the Aircraft in September 2017 (or such other month as the parties may agree) any and all upgrades to the eX1 System then available." Amend. No. 1, Sec. 4.3. The Amendments then included a list of the expected upgrades that might have been available and would have been installed in or around September 2017. The Amendments did not allow for an unlimited universe of possible technological upgrades as it did not include the phrase "including, but not limited to" in its reference to the available upgrades. This is a sufficiently definite obligation, and Panasonic presents no substantive argument to the contrary.

The equipment upgrades provision also established that WCA was to pay for the upgrades. Panasonic cites case law for the proposition that "few principles are better settled in the law of contracts than the requirement of definiteness." Mot. at 17 (quoting *Arbitron, Inc. v. Tralyn Broad., Inc.*, 400 F.3d 130, 136 (2d Cir. 2005)). Immediately following the sentence quoted by Panasonic, the court in *Arbitron* added that courts have also noted that price terms are not indefinite simply because they do not include a specific amount:

> A price term is not necessarily indefinite because the agreement fails to specify a dollar figure, or leaves fixing the amount for the future, or contains no computational formula. Where at the time of agreement the parties have manifested their intent to be bound, a price term may be sufficiently definite if the amount can be determined objectively without the need for new expressions by the parties; a method for reducing uncertainty to certainty might, for example, be found within the agreement or ascertained by reference

---

[7] This provision was included in each of the Amendments. *See, e.g.*, Amend. No. 1, Sec. 4.3. Panasonic refers to this provision as the "Equipment Upgrades Bargain" yet includes no allegation that this provision was separately bargained for in each Amendment.

> to an extrinsic event, commercial practice or trade usage. A price so arrived at would have been the end product of agreement between the parties themselves.

*Arbitron,* 400 F.3d at 136 (2d Cir. 2005) (quoting *Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp.*, 74 N.Y.2d 475, 483, 548 N.E.2d 203, 206 (1989)).

The price terms in the Contract were definite. The Equipment Upgrade provisions stated the Parties' intention was for WCA to pay for the upgrades using Demonstration Flights.[8] This was not precatory language; there is no allowance in the provision or anywhere else in the Amendments for WCA to choose not to pay for the upgrades. The price of the Equipment Upgrades was determinable based upon the Panasonic list price or industry-standard values at the time of the installation. Within the context of the Contract as a whole, noting the intention of the Parties was simply identifying which option of payment the Parties agreed would be preferable. *See, e.g.*, GTA, Ex. F (providing that WCA was to pay in cash if it did not provide demonstration flights).

The cases cited by Panasonic on this point all involved cases in which the parties envisioned entering into a future agreement that would make the terms of the agreement definite. *See, e.g.*, *Major League Baseball Properties, Inc. v. Opening Day Prods., Inc.*, 385 F. Supp. 2d 256, 271 (S.D.N.Y. 2005) (finding that "defendant contemplated an agreement in the future that would spell out such compensation"). The Amendments did not include any precatory language indicating that the Parties would reach an agreement on their respective obligations in the future, and these cases are therefore inapplicable.

---

[8] Despite Panasonic's rhetorical questions about how many flights it would take to pay for the upgrades, the Amendments explain in detail how the demonstration flights were to be priced. The pricing incorporates objective criteria, including industry standards. *See, e.g.*, Amend. No. 1, Sec. 4.4 (referencing the "Total Variable Cost/Hour as published in the Conklin and de Decker Aircraft Cost Report").

### E.  Even if the Contract were indefinite, WCA's claim for breach of contract cannot be dismissed.

Even if the Court were to find that the Equipment Upgrades in the Contract are indefinite or ambiguous, which it should not, it must deny the Motion to the extent it seeks to dismiss a claim involving the ambiguity. Whether the contract is ambiguous is a question of law "for the Court to decide on a claim-by-claim basis." *Homeward Residential, Inc. v. Sand Canyon Corp.*, 298 F.R.D. 116, 128 (S.D.N.Y. 2014) (citing *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 197 (2d Cir.2005)). If, however, the Court determines the contract is ambiguous, the Parties' intent as to the meaning of the term is a question of fact, "'which of course precludes summary dismissal' on a Rule 12(b)(6) motion." *Homeward*, 298 F.R.D. at 129 (quoting *Crowley v. VisionMaker, LLC*, 512 F.Supp.2d 144, 152 (S.D.N.Y.2007)).

A contract is not ambiguous simply because the parties do not agree on an interpretation. A contract will be found to be ambiguous "where a contract term could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Bayerische Landesbank, New York Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 53 (2d Cir. 2012). A "court must avoid any interpretation that would be 'absurd, commercially unreasonable, or contrary to the reasonable expectations of the parties.'" *Homeward*, 298 F.R.D. at 129 (quoting *Landmark Ventures, Inc. v. Wave Sys. Corp.*, No. 11 Civ. 8440, 2012 WL 3822624, at *3 (S.D.N.Y. Sept. 4, 2012)).

WCA respectfully submits that Panasonic's interpretation of the Contract is, at best, contrary to the reasonable expectations of the Parties and should therefore be set aside. Yet, if the Court were to agree with Panasonic and find that the Equipment Upgrade provisions are

14

ambiguous as a matter of law, the meaning of the provisions would be a question of fact for trial. Thus, even if the Court accepts Panasonic's arguments regarding indefiniteness, it should deny the Motion as to the "Equipment Upgrade" portion of Count I.

**F. The warranties in the GTA and the Amendments applied to the eX1 System's operation and installation.**

Panasonic also offers demonstrably false arguments regarding the applicability of the warranties to the eX1 system. Panasonic incorrectly asserts that "there is simply no express or implied warranty provision in either the GTA or Amendment Nos. 1-4 requiring Panasonic to repair or replace the eX1 system or ensure it is free from any defects in material or workmanship."

In fact, all of the warranties in the GTA applied to the eX1. First, the "Services" warranty applied to the eX1 system. Under the GTA, "Services" included, among other things, "installation" and "certification" that Panasonic was to perform "pursuant to this Agreement." GTA, Sec. 1.4. The Services were not limited to the eXConnect system. Panasonic warranted the Services. *Id.* at Sec. 6.1.5 ("The Services shall be performed in a good and workmanlike manner."). Exhibit F to the GTA addressed the certification and "installation of eX1." *Id.* at Ex. F. Thus, prior to the Parties entering into any of the Amendments, the eX1 system was subject to an express warranty under the Contract.

Second, in the Amendments the Parties evidenced their intent to have the GTA warranties extend to the eX1 system when they explicitly stated that the warranties in Section 6 of the GTA apply to the 2017 equipment upgrades to the eX1 system. *See, e.g.*, Amend. No. 1, Sec. 4.3 ("All such upgrades to the eX1 System shall be covered by the warranty provided in Section 6 of the Agreement, as amended by this Agreement."). Thus, there was no need to add the equipment upgrades to the definition of "Products" in Amendment No. 4, as the upgrades were already subject to GTA Sec. 6.1.1 and 6.1.2.

Third, Panasonic consistently acted as though the warranty provisions in the Contract applied to the eX1 system. *See* Amend. Comp. ¶¶ 31-35. This is not consistent with Panasonic's current assertion that the Parties did not intend the warranty provisions in the Contract to apply to the GTA. These allegations establish an issue of fact as to the Parties' intent as to the scope of the warranty provisions and preclude dismissal of the breach of warranty portion of Count I.

## II. PANASONIC BREACHED THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING IF THERE WAS NO CONTRACTUAL OBLIGATION FOR THE EX1 SYSTEM TO BE FULLY FUNCTIONAL

"Under New York law, all contracts contain an implied covenant of good faith and fair dealing in the course of performance." *Gillespie*, 343 F. Supp. 3d at 341. "[W]here a party's acts subsequent to performance on the contract so directly destroy the value of the contract for another party that the acts may be presumed to be contrary to the intention of the parties, the implied covenant of good faith may be implicated." *M/A–COM Sec. Corp. v. Galesi,* 904 F.2d 134, 136 (2d Cir. 1990). The covenant derives from parties' reasonable expectations, "which arise out of the agreement entered into." *Interallianz Bank AG v. Nycal Corp.,* No. 93 Civ. 5024 (RPP), 1994 WL 177745, at *8 (S.D.N.Y. May 6, 1994) (citing *Fasolino Foods Co. v. Banca Nazionale del Lavoro,* 961 F.2d 1052, 1056 (2d Cir.1992)). "In other words, 'such a claim may be brought, if at all, only where one party's conduct, though not breaching the terms of the contract in a technical sense, nonetheless deprived the other party of the benefit of its bargain.'" *Pearce v. Manhattan Ensemble Theater, Inc.,* 528 F. Supp. 2d 175, 180–81 (S.D.N.Y. 2007) (quoting *Sauer v. Xerox Corp.,* 95 F.Supp.2d 125, 132 (W.D.N.Y.2000)).

Panasonic appears to argue that it was not obligated to install a fully functional eX1 system or to provide upgrades to the eX1 system. Panasonic alleges that it performed its obligations when it installed a non-functional eX1 system. Mot. at 1. Panasonic also argues that WCA "cannot" state

a claim for breach of contract "for Panasonic's failure to install the eX1 system 'in a fully working condition.'" Mot. at 11.

Panasonic was contractually obligated to deliver a functional eX1 system. Exhibit F to the GTA lists the "functional features" of the eX1 system. GTA, Ex. F. As explained above, Exhibit F was also subject to the warranties guaranteeing future performance. *See, e.g.*, Amend. No. 1, Sec. 4.3 (applying the warranties in GTA Section 6, including those applying to defects in materials and workmanship). Yet if Panasonic is correct, and it was not contractually obligated to provide a fully functional eX1 system, then WCA had a reasonable expectation that the products it purchased from Panasonic would be fully functional. Panasonic's installation of a system that did not fully function destroyed the value of the Contract for WCA and therefore breached the implied covenant of good faith and fair dealing.

Additionally, Panasonic's current position that its promise to install Equipment Upgrades was illusory and required it to do nothing at all ignores its requirement to act in good faith in identifying the available Equipment Upgrades in 2017 and installing those upgrades in the Aircraft. Panasonic's failure to make *any effort* to identify and install the applicable upgrades is a breach of its obligation.

A claim for breach of the implied covenant of good faith and fair dealing is not always duplicative of a cause of action alleging breach. *See JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, 2009 WL 321222, at *5 (S.D.N.Y. Feb. 9, 2009). If the Court were to dismiss WCA's claim for express breach of contract, there would be no need to dismiss the claim for breach of an implied covenant as redundant. *Gillespie*, 343 F. Supp. 3d at n.4. Therefore, WCA respectfully requests that the Court not dismiss Count II of the complaint until it has ruled on Count I. If the Court were

17

to dismiss Count I, Count II would not be redundant and Panasonic's arguments for dismissal would no longer be applicable.

## III.   WCA'S CLAIM FOR PROMISSORY ESTOPPEL IS SOLELY IN THE ALTERNATIVE SHOULD THE COURT FIND NO ENFORCEABLE AGREEMENT EXISTED BETWEEN THE PARTIES

As stated in the Amended Complaint, WCA seeks relief for promissory estoppel in the alternative. For the reasons stated above, WCA respectfully submits that it has stated a valid claim for breach of contract. If, however, the Court were to eventually find that there was no contractual obligation requiring Panasonic to provide functional products, services and/or upgrades, WCA has sought alternative relief under a theory of promissory estoppel. Despite Panasonic's arguments to the contrary, WCA pleads the elements of promissory estoppel. *See* Amend. Comp. ¶¶ 58-60 (alleging Panasonic made an unambiguous promise on which WCA reasonably relied, and that WCA was injured by reason of this reliance).

Panasonic's promises were not ambiguous. Exhibit F to the GTA stated that Panasonic would install certain "functional features." GTA, Ex. F. WCA reasonably relied on that promise and, as Panasonic has not fulfilled this promise to date, WCA continues to be injured by this reliance. In Amendments 1-4, Panasonic promised to install then-available Equipment Upgrades. WCA relied on those promises in not seeking or obtaining alternative equipment, software or services on terms similar to those offered by Panasonic (i.e., in exchange for demonstration flights and FAA certification assistance).

As with much of the Motion, the cases Panasonic relies on to argue to the contrary rest on inapplicable facts. *Richbell* is not applicable, as the promise in that case involved a memorandum of understanding where the parties agreed in principle to use their "best efforts." *Richbell Info. Servs., Inc. v. Jupiter Partners, L.P.*, 309 A.D.2d 288, 304, 765 N.Y.S.2d 575 (1st Dep't 2003). The agreements here did not include such vague, precatory language; Panasonic did not promise

to use its best efforts, it promised to install functional equipment and then to provide Equipment Upgrades as available in 2017. The promise in *Ashland* was not reasonably relied on because Morgan Stanley included language in its policies that it was not obligated to act and that investors should not assume that it would do so. *Ashland Inc. v. Morgan Stanley & Co.*, 700 F. Supp. 2d 453, 472 (S.D.N.Y. 2010), *aff'd*, 652 F.3d 333 (2d Cir. 2011). Here, Panasonic made no such written statements informing WCA that it would never complete the installation of functioning equipment or Equipment Upgrades.[9]

Panasonic's final argument with regard to this injury is difficult to parse. Panasonic again insists that it performed its obligations under the Amendments simply by installing the eXConnect and eX1 systems, ignoring the requirement that these systems be functional and be upgraded over time. Next, it states in a single sentence that the agreement in Amendment 4 was "never finalized" yet to enforce that agreement would be to "impermissibly vary the unambiguous terms" of the GTA and the Amendments. Panasonic contradicts itself.

To be clear, Amendment No. 4 was finalized and WCA agrees that it includes unambiguous terms obligating Panasonic to provide further goods and services. Those terms included a promise that Panasonic would install upgraded equipment. To date, Panasonic has not completed this upgrade, which has injured WCA. WCA is not requesting that the Court vary the unambiguous terms of the Amendments, it is asking the Court to enforce them. Yet, if the Court were to find that the Amendments were unenforceable for lack of consideration, applying the doctrine of

---

[9] Unconscionable injury is not a necessary element for promissory estoppel. *See, e.g.*, *Cyberchron Corp. v. Calldata Sys. Dev., Inc.*, 47 F.3d 39, 44 (2d Cir. 1995) (noting that this is "sometimes required to fulfill" the third element of promissory estoppel) (collecting cases). Thus, it is immaterial that WCA did not plead this element.

promissory estoppel would be necessary to avoid injustice. *See, e.g.*, *Cyberchron*, 47 F.3d at 44 (collecting cases).

## **CONCLUSION**

For the foregoing reasons, WCA requests that this Court deny Panasonic's Motion to Dismiss the Amended Complaint.

Dated:   Seattle, Washington          K&L GATES LLP
         January 7, 2021

                            By:    s/ Christopher M. Wyant
                                   Christopher M. Wyant (*pro hac vice*)
                                   K&L Gates LLP
                                   925 Fourth Avenue, Suite 2900
                                   Seattle, WA 98104
                                   Tel.: (206) 623-7580
                                   Fax: (206) 623-7022
                                   E-mail: chris.wyant@klgates.com

                                   Justin H. Roeber (JR-9100)
                                   599 Lexington Avenue
                                   New York, New York 10022
                                   Tel.: 212.536.3900
                                   Fax: 212.536.3901
                                   E-mail: justin.roeber@klgates.com

                                   *Attorneys for Plaintiff*
                                   *WCA Holdings III, LLC*

503975913 v1