```
                                                           ┌─────────────────────────────────┐
                                                           │ USDC SDNY                       │
                                                           │ DOCUMENT                        │
UNITED STATES DISTRICT COURT                               │ ELECTRONICALLY FILED            │
SOUTHERN DISTRICT OF NEW YORK                              │ DOC #: _____        │
-------------------------------------------------------- X │ DATE FILED: 5/17/2025           │
                                                :          └─────────────────────────────────┘
WCA HOLDINGS III, LLC,                          :
                                                :
                             Plaintiff,         :              1:20-cv-7472-GHW
                                                :
                   -against-                    :
                                                :          MEMORANDUM OPINION
PANASONIC AVIONICS CORPORATION,                 :            AND ORDER
                                                :
                             Defendant.         :
                                                :
-------------------------------------------------------- X
```

GREGORY H. WOODS, United States District Judge:

Plaintiff WCA Holdings III, LLC ("WCA") is the owner of a private aircraft that Defendant Panasonic Avionics Corporation ("Panasonic") agreed to outfit with a new in-flight internet, cabin management, and entertainment systems. After entering into an agreement in 2010, Panasonic struggled to deliver on its promises, leaving WCA with what it viewed as an obsolete, poorly functioning in-flight entertainment system. WCA sued for breach of contract in 2020 as a result.

The parties began discovery almost immediately. By mid-2024, after a lengthy stay, document production was substantially complete. Panasonic, however, withheld hundreds of documents. Panasonic asserted that the withheld documents were privileged, but it did not produce a privilege log. WCA requested one several times. It was not until three months later that Panasonic complied. With a privilege log now in hand, WCA alerted Panasonic to several perceived deficiencies in the log. WCA contended, for example, that descriptions of the withheld documents were inadequate; WCA could not determine whether any privilege applied. Consequently, WCA demanded that Panasonic produce the withheld documents. Panasonic responded by producing a second—and then a third—supplemental privilege log. With each new privilege log, WCA objected.

WCA has now filed a motion to compel Panasonic to produce the withheld documents. Panasonic opposes the motion. The Court has reviewed Panasonic's most recent privilege log.

Because many of the privilege log entries are not on their face sufficient to establish privilege, Panasonic must update its privilege log.

## I.    BACKGROUND[1]

### A.    The Parties' Discovery Process

The parties began discovery in late 2020.  Dkt. No. 204 ("French-Brown Decl.") ¶ 2.  They each served initial requests for the production of documents in December 2020.  *Id.*  On September 29, 2021 the Court stayed the case pending the parties' mediation.  Dkt. No. 53.  On January 8, 2022, the Court extended the stay pending the resolution of a motion to dismiss filed by Panasonic. Dkt. No. 58.  On December 26, 2023, following resolution of the motion, the Court held a conference with the parties and entered a case management plan, which launched the parties back into discovery.  Dkt. No. 72.

The parties engaged in rolling document production.  WCA produced documents in May and June 2024.  French-Brown Decl. ¶ 7.  WCA produced its first privilege log on June 12, 2024.  *Id.* ¶ 8. WCA served a supplemental privilege log on June 21, 2024.  Dkt. No. 181 ("Wyant Decl.") ¶ 5. WCA made additional productions in September and November 2024.  French-Brown Decl. ¶ 7. Panasonic produced documents from May through at least October 2024.  *Id.* ¶ 6.  On May 17, 2024, Panasonic produced nearly 3,000 documents, its largest batch since the stay was lifted; by that date, Panasonic had substantially completed its document production.  *See* Dkt. No. 205 ("Reply") at 3; Dkt. No. 159 ¶ 2 (Panasonic declaration demonstrating that seven thousand of the roughly 7,500 documents produced by Panasonic were produced by May 17, 2024).

---

[1] The background facts of this case are provided in detail in the Court's prior opinion, *WCA Holdings III, LLC v. Panasonic Avionics Corp.*, 704 F. Supp. 3d 473, 479 (S.D.N.Y. 2023).  The Court therefore assumes familiarity with them and presents only a truncated version of the relevant events.

WCA requested a privilege log several times from Panasonic. It made requests on June 13, June 21, June 26, August 7, and August 14, 2024. Wyant Decl. ¶¶ 4–10. In response to the June 13, 2024 request, Panasonic contended that it was "working on" the log. Wyant Decl. ¶ 4. On June 26, 2024, Panasonic's counsel responded to WCA's request, asserting, "There is no due date for our privilege log and providing one tomorrow ahead of Panasonic's production of additional documents, which we've been discussing, makes no sense." Wyant Decl. ¶ 6. Of course, Local Rule 26.2 imposed the due date: the privilege log was due at the time of the production. *See* L. Civ. R. 26.2(b) ("Where a claim of privilege is asserted in response to discovery or disclosure other than a deposition, and information is not provided on the basis of the assertion, the information [required by the Local Civil Rules] must be furnished in writing at the time of the response to the discovery or disclosure . . . ."). On August 12, 2024, in response to WCA's fourth inquiry, Panasonic reiterated that it was "unaware of any deadline" for its privilege log, but stated that it would "aim to provide one the week of September 9." Wyant Decl. ¶ 9. WCA reminded Panasonic that at least one deposition was upcoming and again requested the privilege log. Wyant Decl. ¶ 10.

Panasonic did not produce a privilege log until August 26, 2024. Wyant Decl. ¶ 12. Panasonic concedes that it produced its first privilege log nearly "three months after serving objections to WCA's 2024 [request for production of documents]." Dkt. No. 203 ("Opp.") at 2. On September 6, 2024, WCA wrote a letter to Panasonic challenging Panasonic's privilege assertions. Wyant Decl. ¶ 13.

Over the next few months, Panasonic made some attempts to respond to WCA's objections, but Panasonic was largely uncooperative. For example, in response to WCA's September 6, 2024 letter, Panasonic produced a supplemental revised privilege log. Wyant Decl. ¶ 14. But the supplemental log listed 70 additional withheld documents, and Panasonic made "no reference or

response to WCA's letter."  *Id.*  In response, WCA requested a discovery conference to discuss its September 6 letter and its objections to the supplemental log.  *Id.*  On September 23, 2024, Panasonic responded to WCA's letter and served a second supplemental privilege log, but Panasonic still ignored WCA's request to meet and confer.  Wyant Decl. ¶¶ 15–17.  Only when WCA threatened to notify the Court did Panasonic meet with WCA.  Wyant Decl. ¶ 17.  Panasonic provided its third and most recent supplemental privilege log on October 4, 2024. Wyant Decl. Exhibit P.  According to WCA, however, the third supplemental log was still deficient.

### B. Procedural History

The parties first raised this dispute by letter dated October 7, 2024.  Dkt. No. 167.  After a failed attempt to meet and confer, the parties renewed the dispute on October 17, 2025. Dkt. No. 170.  The Court held a pre-motion conference on October 24, 2024.  After discussing the issues, the Court set a briefing schedule.  WCA filed its motion to compel documents withheld as privileged on November 12, 2024.  Dkt. No. 179 (notice of motion); Dkt. No. 180 ("Mem."); Dkt. No. 181 ("Wyant Decl.").  WCA argues that Panasonic's failure to produce an adequate privilege log merits a finding that Panasonic waived its privilege over the withheld documents.  WCA contends that Panasonic repeatedly ignored its requests for a privilege log.  The log, WCA asserts, also fails to provide sufficient information for it to assess Panasonic's privilege claims.  WCA takes issue with several categories of documents that Panasonic asserts are privileged.  It also argues that Panasonic's log fails to comply with Local Rule 26.2.  WCA asks the Court to award the fees associated with filing this motion pursuant to Federal Rule of Civil Procedure 37(a)(5).

Panasonic opposes the motion.  Dkt. No. 203 ("Opp."); French-Brown Decl.  Panasonic asserts that the documents are properly withheld as attorney-client communications and work product.  Panasonic argues that its privilege log is complete, and was timely produced, and that waiver is inappropriate because any violation was not flagrant.  Panasonic also contends that the

parties "implicitly agreed to serve their respective privilege logs after the substantial completion of document productions—as evidenced by the discovery stay (*e.g.*, a court order), and then, based on WCA's service of its privilege log in 2024 and the parties' rolling document productions throughout the summer and fall of 2024."  Opp. at 6.

WCA filed a reply.  Dkt. No. 205 ("Reply"); Dkt. No. 206 ("Wyant Reply Decl.").  WCA asserts that there "was no 'implicit agreement'" between the parties "as the record is clear that WCA repeatedly demanded Panasonic's privilege log."  Reply at 4.  WCA also clarified that it is not moving to compel as a result of Panasonic's failure to comply with Rule 26.2(b), the timing requirement set forth in the Local Civil Rules.  *Id.* at 2.  WCA acknowledges that both parties failed to comply with the local rule.  *Id.* at 2–3.  Rather, WCA argues that Panasonic was flagrant in its failure to produce an adequate log.

WCA also filed a letter motion to seal two exhibits to the Wyant Declaration.  Dkt. No. 183.  Panasonic responded to WCA's sealing request by letter, offering proposed redactions to those exhibits.  Dkt. No. 188.

## II.    LEGAL STANDARD

### A.    Privilege Logs Under the Local and Federal Rules

"When a party withholds information otherwise discoverable by claiming that the information is privileged . . . , the party must . . . describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii).  Local Rule 26.2 details specific information that must be contained in a privilege log, which includes, "[f]or documents (including electronically stored information):  (i) the type of document, *e.g.*, letter, email or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) the author of the document, the addressees of the document,

and any other recipients, and, where not apparent, the relationship of the author, addressees, and recipients to each other . . . ." L. Civ. R. 26.2(a)(2)(A). "To properly demonstrate that a privilege exists, the privilege log should contain a brief description or summary of the contents of the document, the date the document was prepared, the person or persons who prepared the document, the person to whom the document was directed, or for whom the document was prepared, the purpose in preparing the document, the privilege or privileges asserted with respect to the document, and how each element of the privilege is met as to that document." *Sulaymu-Bey v. City of New York*, 372 F. Supp. 3d 90, 93 (E.D.N.Y. 2019).

"Compliance with 'the requirements of the Federal and Local Rules,' however, 'is insufficient, standing alone. . . .'" *Norton v. Town of Islip,* 2017 WL 943927, at *2 (E.D.N.Y. Mar. 9, 2017) (citing *Favors v. Cuomo*, 285 F.R.D. 187, 221 (E.D.N.Y. 2012)). "In assessing the adequacy of a privilege log, Courts must also ask whether it 'suffice[s] to establish each element of the privilege or immunity that is claimed.'" *Norton*, 2017 WL 943927, at *2  (citing *A.I.A. Holdings, S.A. v. Lehman Bros.*, 2000 WL 1538003, at *2 (S.D.N.Y. Oct. 17, 2000)); *see also Bowne of N.Y. City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 474 (S.D.N.Y. 1993) (explaining that a privilege log should "identify each document and the individuals who were parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure"). "Moreover, the burden of establishing the elements of the purported privilege rests on the party asserting the protection from disclosure." *Norton*, 2017 WL 943927, at *2 (citing *Favors*, 285 F.R.D. at 221).

"Withholding privileged materials without including the material in a privilege log 'may be viewed as a waiver of the privilege or protection.'" *Dey, L.P. v. Sepracor, Inc.*, 2010 WL 5094406, at *2 (S.D.N.Y. Dec. 8, 2010) (quoting Fed. R. Civ. P. 26 Advisory Committee Notes). The same principle applies to the omission of critical information that would allow for a challenge to a claim

of privilege. *See Weiss v. Nat'l Westminster Bank, PLC*, 242 F.R.D. 33, 66 (E.D.N.Y. 2007) ("Failing to include sufficiently descriptive information may result in waiver of the privilege.") (collecting cases); *see also McNamee v. Clemens*, 2014 WL 1338720, at *4-5 (E.D.N.Y. Apr. 2, 2014) (privileges were waved where privilege log was found to be deficient due to "vague" log entries); *Aurora Loan Servs., Inc. v. Posner, Posner & Assocs., P.C.*, 499 F. Supp. 2d 475, 478-79 (S.D.N.Y. 2007) (waiver for deficient privilege log that "often [did] not identify the parties to the communication" or "which privilege [was] being asserted"). However, "[i]t has been observed that 'only "flagrant" violations of these rules should result in a waiver of privilege.'" *Dey, L.P.*, 2010 WL 5094406, at * 2 (*quoting Pern-America, Inc. v. Sunham Home Fashions, LLC*, 2007 WL 3226156, *2 (S.D.N.Y. Oct. 31, 2007)). "Whether waiver is warranted depends on such factors as the length of the delay, the willfulness of the transgression, and the harm to other parties." *Id.*

A delay in the production of a privilege log can also result in the waiver of the privilege. The Second Circuit has not established a bright-line test for determining when privileges have been waived by delay, but district courts in the circuit have typically considered three factors. The first is "the length of the delay" in asserting the privilege claim. *See e.g., Am. Intl Specialty Lines Ins Co. v. Connecticut Res. Recovery Auth.*, 2012 WL 13018418, at *3 (D. Conn. Mar. 6, 2012); *Schiller v. City of N.Y.*, 245 F.R.D. 112, 118 (S.D.N.Y. 2007). The second factor is "the willfulness of the transgression." *Am. Int'l Specialty Lines*, 2012 WL 13018418, at *3. And the third factor is the "harm to other parties" occasioned by the delay in asserting the claim. *Id.* In applying these three factors, courts again have often added that "only flagrant violations of the discovery rules should result in a waiver of privilege." *Id.* (quotation marks and brackets omitted); *accord Dey, L.P.*, 2010 WL 5094406, at *2 (S.D.N.Y. Dec. 8, 2010).

### B.        Attorney-Client Privilege

"Under Federal Rule of Evidence 501, in diversity actions such as this one, the state law that governs the underlying action defines the elements of the attorney-client privilege." *FPP, LLC v. Xaxis US, LLC*, 2016 WL 1733466, at *2 (S.D.N.Y. Apr. 29, 2016); *see also Dixon v. 80 Pine St. Corp.*, 516 F.2d 1278, 1280 (2d Cir. 1975) ("[I]n a diversity case, the issue of privilege is to be governed by the substantive law of the forum state."); *Parneros v. Barnes & Noble, Inc.*, 332 F.R.D. 482, 490 (S.D.N.Y. 2019) ("Because this Court's subject matter jurisdiction is based upon diversity, state law provides the rule of decision concerning the claim of attorney-client privilege") (citing *Dixon*, 516 F.2d at 1280).

Accordingly, New York law defines the scope of the attorney-client privilege. "Under New York law, the attorney-client privilege protects confidential communications between client and counsel where such communications are made for the purpose of providing or obtaining legal advice." *HSH Nordbank AG New York Branch v. Swerdlow*, 259 F.R.D. 64, 70 (S.D.N.Y. 2009) (citing N.Y.C.P.L.R. § 4503(a)(1) and *Rossi v. Blue Cross & Blue Shield of Greater N.Y.*, 73 N.Y.2d 588, 593 (1989)). However, "it has long been recognized that New York law on attorney-client privilege is 'generally similar to accepted federal doctrine.'" *Parneros*, 332 F.R.D. at 491 (citing *Bank of Am., N.A. v. Terra Nova Ins. Co. Ltd.*, 211 F. Supp. 2d 493, 495 (S.D.N.Y. 2002)) (collecting cases). In any case, "[t]he privilege is designed 'to encourage attorneys and their clients to communicate fully and frankly and thereby to promote 'broader public interests in the observance of law and administration of justice.'" *HSH Nordbank AG New York Branch*, 259 F.R.D. at 70 (quoting *In re Cty. of Erie*, 473 F.3d 413, 418 (2d Cir. 2007)).

The privilege applies to "[a] corporation's communications with counsel, no less than the communications of other clients with counsel . . . ." *Parneros*, 332 F.R.D. at 491 (citing *Rossi*, 73 N.Y.2d at 592). "A communication between an attorney and the agent or employee of a corporation

may be privileged where the agent 'possessed the information needed by the corporation's attorneys in order to render informed legal advice.'" *Id.* "The privilege applies to communications with attorneys, whether corporate staff counsel or outside counsel." *Id..* "Nonetheless, because in-house counsel may have 'mixed business-legal responsibility . . . their day-to-day involvements in their employers' affairs may blur the line between legal and nonlegal communications." *Id.* "[I]n light of the two hats often worn by in-house lawyers, communications between a corporation's employees and its in-house counsel, though subject to the attorney-client privilege, must be scrutinized carefully to determine whether the predominant purpose of the communication was to convey business advice and information or, alternatively, to obtain or provide legal advice." *In re Aenergy, S.A.*, 451 F. Supp. 3d 319, 323 (S.D.N.Y. 2020). "[G]iven that privilege obstructs the truth-finding process and its scope is limited to that which is necessary to achieve its purpose . . . the need to apply it cautiously and narrowly is heightened in the case of corporate staff counsel, lest the mere participation of an attorney be used to seal off disclosure." *Parneros*, 332 F.R.D. at 491 (internal quotations omitted). In any case, because the privilege "renders relevant information undiscoverable, it must be narrowly construed; and its application must be consistent with the purposes underlying the immunity." *HSH Nordbank AG New York Branch*, 259 F.R.D. at 70 (internal citations and quotations omitted).

"The burden of establishing attorney-client privilege is on the party asserting it." *Id.* "Likewise, the party asserting the privilege also bears the burden of demonstrating that it has not been waived." *Id.* "Such a party satisfies its burden of proof where it 'establish[es] that the information was a communication between client and counsel, that it was intended to be and was kept confidential, and [that] it was made in order to assist in obtaining or providing legal advice or services to the client.'" *Id.* (internal quotation marks and alterations).

### C.    Work-Product Privilege

"While state law governs the question of attorney-client privilege in a diversity action, federal law governs the applicability of the work product doctrine." *Allied Irish Banks v. Bank of America, N.A.*, 240 F.R.D. 96, 105 (S.D.N.Y. 2007); *Cicel (Beijing) Sci. & Tech. Co. v. Misonix, Inc.*, 331 F.R.D. 218, 226 (E.D.N.Y. 2019) (same).  Federal Rule of Civil Procedure 26(b)(3)(A) provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."  Fed. R. Civ. P. 26(b)(3)(A).  Rule 26 "recognizes as work product both the factual fruits of an attorney's investigations—sometimes referred to as 'fact work product'—and an attorney's mental impressions and opinions—sometimes referred to as 'opinion work product.'"  *Am. Oversight v. United States Dept of Just.*, 45 F.4th 579, 590 (2d Cir. 2022).

"The party asserting work-product protection must demonstrate that the material at issue '(1) [is] a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by his representative.'"  *United States Sec. & Exch. Comm'n v. Collector's Coffee Inc.*, 337 F.R.D. 70, 74 (S.D.N.Y. 2020), *objections overruled*, 2021 WL 391298 (S.D.N.Y. Feb. 4, 2021) (internal quotation marks omitted).  A document is "prepared 'in anticipation of litigation' and therefore subject to work-product . . . if, 'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'"  *Schaeffler v. United States*, 806 F.3d 34, 43 (2d Cir. 2015) (citing *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998)).  "Conversely, protection will be withheld from 'documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation.'"  *Id.*

10

### III.    DISCUSSION

#### A.    The Court Reviewed the Face of Panasonic's Third Supplemental Privilege Log

As a threshold matter, the Court has limited its review to the face of Panasonic's third supplemental privilege log.  The Court has done so for two reasons.  First, while "the Court may require, through affidavits or testimony, additional information" to assess privilege claims, it does not have to.  *See Favors*, 285 F.R.D. at 222.  Second, Local Rule 26.2 requires that the party asserting the privilege must provide certain information when it withholds documents, not after the fact in an attempt to justify the adequacy of its privilege log.  Here, the Court advised the parties during the pre-motion conference that, "to the extent that there's information that should have been included in [the privilege log] under 26.2 that defendant chose not to include in the privilege log," the Court "[did] not expect to permit counsel for defendant to supplement the privilege log with additional information that should have been provided pursuant to the rule."  *See* Wyant Decl. Exhibit U (Pre-Motion Conference Transcript), Tr. 27:9-17.  The Court instructed that it "will be reviewing the privilege log based on the information that was provided in the privilege log."  *Id.*  Consistent with that direction, the Court has reviewed the face of Panasonic's third supplemental privilege log.

#### B.    Some Withheld Documents Are Protected by The Attorney-Client Privilege

##### i.    *Communications Between Employees and Corporate Counsel*

###### 1.    The Descriptions of Direct Communications Between Employees and Corporate Counsel Concerning Legal Advice Establish That the Attorney Client Privilege Applies

Panasonic's privilege log contains several entries that adequately assert that the attorney-client privilege applies because the withheld documents are communications between Panasonic employees and corporate counsel for the purpose of obtaining legal advice.  *See* Log Entry Nos. 52, 73, 79, 178–79 (emails between employees and corporate counsel "discussing or reflecting legal

advice or analysis regarding GTA");[2] Log Entry No. 71 (email from corporate counsel "requesting or rendering legal advice or analysis regarding GTA"); Log Entry Nos. 110, 115, 180 (emails between employees and corporate counsel "discussing or reflecting legal advice or analysis regarding anticipated litigation").  Some of these entries pertain to pending requests for legal advice.  *See* Log Entry Nos. 55, 59, 122, 126, 129 (emails between employees and corporate counsel "discussing a pending request for legal advice from in-house counsel"); Log Entry No. 119 (email between employees and copying corporate counsel "discussing a pending request for legal advice from in-house counsel"); Log Entry No. 153 (email from corporate counsel to employees "discussing pending request for legal advice or analysis regarding WCA and GTA.").[3]

Each of these descriptions "suffice[s] to establish each element" of the attorney client privilege.  *See Norton*, 2017 WL 943927, at *2.  First, each of the listed communications represents "confidential communications between client and counsel," *HSH Nordbank AG New York Branch*, 259 F.R.D. at 70, because each entry represents emails between identified corporate employees and corporate counsel about the General Terms Agreement—the contract at issue in this case—and the anticipated litigation.  Second, these are communications made for the purpose of providing or obtaining legal advice.  "Clients are entitled to communicate confidentially with their business lawyers, as much as with their litigation counsel, provided that the business lawyers are functioning in their capacity as lawyers, and that the advice being solicited or offered has a 'legal' character."  *In re Allergan plc Sec. Litig.*, 2021 WL 4121300, at *3 (S.D.N.Y. Sept. 9, 2021).  In each of the identified

---

[2] The "GTA" refers to the contract at issue in this case, namely the General Terms Agreement Between Panasonic Avionics Corporation and WCA Holdings III, LLC.

[3] There is no suggestion by either party that the named individuals listed in the privilege log are not Panasonic employees.  "Because the adequacy of privilege log entries depends on whether the other parties will be able to assess the validity of the privilege claim,  Fed.R.Civ.P. 26(b)(5)(A)(ii), the entries should be evaluated not in a vacuum, but in light of information that the parties can be presumed to possess."  *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 898 F. Supp. 2d 584, 590 (S.D.N.Y. 2012).  Indeed, WCA notes that "[t]he vast majority of Panasonic's privilege descriptions state that the documents are between Panasonic employees and in-house counsel." Mem. at 11.  The Court therefore assumes that there are no issues with third-party waiver with respect to these entries.

entries, the log asserts that the purpose of the communication is legal in nature; the emails are described as "discussing or reflecting legal advice or analysis regarding GTA," "requesting or rendering legal advice or analysis regarding GTA," "discussing or reflecting legal advice or analysis regarding anticipated litigation," "discussing a pending request for legal advice from in-house counsel," and so on. The log descriptions are clear: the purpose of each communication was to obtain legal advice from corporate counsel. There is no indication that the predominant purpose of any of these communications was to convey generic business information. Consequently, the privilege log adequately asserts that the following entries are protected by the attorney-client privilege: Log Entry Nos. 52, 55, 59, 73, 79, 71, 110, 115, 119, 122, 126, 129, 153, and 178–80.

That some of these entries relate to pending requests for legal advice, or reflect an intention to request advice from in house counsel, does not vitiate the assertion of the attorney-client privilege. As with any purportedly privileged communication, "the vital element in establishing that the attorney-client privilege applies is that the communication is made in confidence for the purposes of obtaining legal advice from the attorney." *Hayden v. Int'l Bus. Machines Corp.*, 2023 WL 4622914, at *3 (S.D.N.Y. July 14, 2023) (quoting *Sokol v. Wyeth, Inc.*, 2008 WL 3166662, at *7 (S.D.N.Y. Aug. 4, 2008)). As explained, the log entries between employees and corporate counsel for pending legal advice still assert that the communications were primarily or predominately of a legal character, rather than for a business or non-legal purpose. For example, many emails are described as "discussing a pending request *for legal advice* from in-house counsel," Log Entry Nos. 55, 59, 122, 126, 129, or "discussing pending request for *legal advice or analysis* regarding WCA and GTA.," Log Entry No. 153. These descriptions are sufficient.

That said, Panasonic has not met its burden with respect to certain emails sent to corporate counsel that are described only as "providing documents and/or information at counsels' request regarding WCA and GTA" because the description does not establish that the communication

related to legal—rather than business—purposes. *See* Log Entry Nos. 2, 56–57, 60–62, 91, 121, 127–28. "It is well-established that merely copying a lawyer on a communication does not render it privileged." *Hayden*, 2023 WL 4622914, at *4. "[A] document will not become privileged simply because an attorney recommended its preparation if it contains merely business-related or technical communications between corporate employees." *Cicel (Beijing) Sci. & Tech. Co., Inc.*, 331 F.R.D. at 234. While these emails may well be privileged, the description does not currently assert that these communications were requested by and provided to corporate counsel for legal purposes. Consequently, Panasonic has not met its burden of establishing the attorney-client privilege with respect to these entries, namely, Log Entry Nos. 2, 56–57, 60–62, 91, 121, and 127–28.

          2.    Attachments Sent to Corporate Counsel for The Purpose of
                Obtaining Legal Advice or Analysis Are Privileged

Next, several entries adequately assert that attachments sent to corporate counsel for the express purpose of receiving legal analysis are privileged. *See* Log Entry Nos. 53, 80, 82–89, 92–93, 130–31, 135–36 ("attachment to privileged email communication for legal analysis," which was sent to corporate counsel); Log Entry Nos. 181–84, 185A–C, 186D ("document providing confidential information to obtain legal advice or analysis from in-house counsel" sent to corporate counsel); *see also* Log Entry No. 120 ("document providing confidential information to obtain legal advice or analysis from in-house counsel," with corporate counsel copied on the email).

"Whether an attachment to a privileged e-mail is itself privileged will depend on the circumstances." *Durling v. Papa John's Int'l, Inc.*, 2018 WL 557915, at *8 (S.D.N.Y. Jan. 24, 2018). "The general standard for the attorney-client privilege applies. To be subject to a claim of attorney-client privilege, an attachment must have been communicated in confidence between counsel and client for the purpose of obtaining or providing legal advice." *Id.*

Here, the privilege log's descriptions of these attachments "suffice[s] to establish each

element of the privilege or immunity that is claimed." *Norton*, 2017 WL 943927, at *2. Because each attachment was sent from an employee to corporate counsel seeking legal advice, they are "confidential communications between client and counsel." *See HSH Nordbank AG New York Branch*, 259 F.R.D. at 70. Additionally, the log describes that each attachment was expressly sent to counsel "for the purpose of providing or obtaining legal advice," *id.,* in that the document was provided specifically "for legal analysis," or "to obtain legal advice or analysis from in-house counsel." These descriptions demonstrate that the attachment was sent to counsel for the purpose of obtaining legal advice, such that the attorney-client privilege attaches. Consequently, Panasonic has met its burden of establishing that the following attachments sent to counsel for the purpose of obtaining legal advice were properly withheld: Log Entry Nos. 53, 80, 82–89, 92–93, 130–31, 135–36, 181–84, 185A–C, and 186D.

> ### 3. The Court Cannot Determine Whether Broadly Distributed Emails That Copy Unidentified Email Addresses Are Privileged, or If Any Privilege Has Been Waived

Some withheld email exchanges between groups of employees do not contain sufficient information to determine whether the privilege was waived. *See* Log Entry Nos. 139–44, 146–51, 154–62, 165–72 (emails between employees "discussing pending request for legal advice or analysis regarding WCA and GTA" that copy corporate counsel but also generic recipients like "DL-CPC Fleet Operations"); Log Entry No. 173 (emails between employees and corporate counsel "discussing a pending request for legal advice from in-house counsel" but also copying "DL-CPC Fleet Operations"); Log Entry Nos. 186–192, 194, 196–201 (emails between employees "requesting and discussing an intent to seek legal advice or analysis regarding GTA" that copy corporate counsel and "DL-CPC Fleet Operations").

"As the Second Circuit recognized, '[t]he general rules governing waiver are more complicated when the issue arises in the context of corporate entities.'" *E.B. v. New York City Bd. of*

*Educ.*, 2007 WL 2874862, at \*3 (E.D.N.Y. Sept. 27, 2007).  "Thus, although dissemination of privileged information to third parties generally waives attorney-client privilege, the distribution within a corporation of legal advice received from its counsel does not, by itself, vitiate the privilege."  *Id.; see Scott v. Chipotle Mexican Grill, Inc.*, 94 F. Supp. 3d 585, 598 (S.D.N.Y. 2015) (same) (collecting cases).  "The distribution of attorney communications between or among senior officers of a corporation who have a need to know the information also does not vitiate the privilege." *Wellnx Life Sciences. Inc. v. Iovate Health Sciences Research. Inc.*, 2007 WL 1573913, at \*2 (S.D.N.Y. May 24, 2007); *see also E.B.*, 2007 WL 2874862, at \*4 ("Courts determining whether dissemination of a document to employees amounts to a waiver of an entity's attorney-client privilege apply a need to know standard:  did the recipient need to know the content of the communication in order to perform her job effectively or to make informed decisions concerning, or affected by, the subject matter of the communication?") (internal quotation marks and citation omitted).  "A corporate entity's attorney-client privilege may, however, be waived by disclosure of the communication to employees of the corporation who are not in a position to act or rely on the legal advice contained in the communication." *Scott*, 94 F. Supp. 3d at 598.  As already mentioned, it is "the burden of the party asserting a privilege to establish that it has not been waived." *Parneros*, 332 F.R.D. at 492.

Here, Panasonic has not met its burden to establish that any privilege was not waived by distributing emails containing legal advice to the address "DL-CPC Fleet Operations."  Several communications between employees and corporate counsel that are described as discussing legal advice include this email address, but there is no indication of who is behind the account.  Is it a listserv with hundreds of employees, or is it only linked to a single, senior level person?  It may be that the communications are privileged.  An equally fair reading of the privilege log, however, is that corporate counsel provided legal advice, and the employees improperly shared that advice with others, potentially destroying the privilege.  The descriptions of the following entries therefore fail to

provide enough information for the Court or WCA to make that determination: Log Entry Nos. 139–44, 146–51, 154–62, 165–72; 173; 186–192, 194, and 196–201.

ii.    ***Communications Exclusively Between Employees***

1.   The Descriptions of Communications That Are Exclusively Between Employees and Purport To "Reflect" Counsel's Legal Advice Are Insufficient to Establish Applicability of The Privilege

Several withheld communications are exclusively among non-lawyer employees and purport to "reflect" counsel's legal advice. However, the log fails to establish whether the employees' dissemination of the legal advice maintains or waives the attorney-client privilege. *See* Log Entry Nos. 38–49 ("Email discussing or reflecting pending request for legal advice regarding potential resolution under GTA."); Log Entry No. 69 ("Email discussing or reflecting in house counsels' legal advice or analysis regarding GTA"); Log Entry Nos. 37, 63–68, 70, 75 ("Email discussing or reflecting legal advice or analysis regarding GTA."); Log Entry No. 111 ("Email discussing or reflecting legal advice or analysis regarding anticipated litigation."); Log Entry No. 176 ("Email discussing, reflecting, and requesting legal advice or analysis regarding potential resolution under GTA"); *see also* Log Entry No. 118 (attachment to email between employees described as a "document providing confidential information to obtain legal advice or analysis from in-house counsel" ).

"Communications among non-attorneys in a corporation may be privileged if made at the direction of counsel, to gather information to aid counsel in providing legal services." *Cicel (Beijing) Sci. & Tech. Co.*, 331 F.R.D. at 234 ("Defendant fail[ed] to establish that any given communication listed on [the] privilege log involving solely non-attorneys was made pursuant to [counsel's] directive"); *Robinson v. De Niro*, 2022 WL 704922, at *5 (S.D.N.Y. Mar. 9, 2022) (explaining that courts have "applied the privilege to communications among non-lawyer employees of a corporation where the purpose of the communication was to provide information to counsel or aid counsel in

providing legal advice.").  "A privileged communication should not lose its protection if an executive relays legal advice to another who shares responsibility for the subject matter underlying the consultation."  *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 442 (S.D.N.Y. 1995).  "This follows from the recognition that since the decision-making power of the corporate client may be diffused among several employees, the dissemination of confidential communications to such persons does not defeat the privilege."  *Id.*

Here, Panasonic has not met its burden to establish that emails among employees that purport to reflect legal advice are privileged.  The log does not assert that the employees were gathering information at the direction of counsel and "to aid counsel in providing legal services," *Cicel (Beijing) Sci. & Tech. Co.*, 331 F.R.D. at 234, or that the legal advice was relayed to employees "who share[] responsibility for the subject matter underlying the consultation," *Bank Brussels Lambert*, 160 F.R.D. at 442.  Each email is described as a conversation between employees to the effect of "discuss[ing] or reflecting in house counsels' legal advice or analysis."  There is no explanation as to why the employees are circulating or discussing legal advice.

It may also be that disseminating legal advice amongst a group of employees waived any privilege.  The log does not indicate whether the distribution of the legal advice was between employees who had "a need to know the information," *Wellnx Life Scis. Inc.*, 2007 WL 1573913, at *2, or if they were "not in a position to act or rely on the legal advice contained in the communication," *Scott*, 94 F. Supp. 3d at 598.  The privilege log only asserts that the employees are discussing or reflecting in house counsels' legal advice or analysis.  These entries may be privileged, but the log contains inadequate information to make that determination with respect to the identified entries, namely:  Log Entry Nos. 38–49, 37, 63–69, 70, 75, 111, 118, 176.

2.    The Descriptions of Communications That Are Exclusively Between Employees That Concern "Pending Requests" From Counsel Are Insufficient to Establish the Applicability of the Privilege

Next, several entries describe communications in which employees are "discussing a pending request for legal advice from in-house counsel," or are discussing the GTA, but no attorney is included. *See* Log Entry No. 23 ("Email requesting legal advice or analysis regarding WCA and GTA"); Log Entry Nos. 117, 174 ("Email discussing a pending request for legal advice from in-house counsel"); Log Entry Nos. 123–24 ("Email discussing a pending request for legal advice from counsel, Michael Fettig, Esq. and in-house counsel, Keith Matulich, Esq."); Log Entry Nos. 193, 195 ("Email requesting and discussing an intent to seek legal advice or analysis regarding GTA").

These communications, too, may be privileged if the "purpose of the communication was to provide information to counsel or aid counsel in providing legal advice," *Robinson*, 2022 WL 704922 at *5, or if the communications were "between clients and non-lawyer agents or contractors of the attorney [and] "made 'for the purpose of obtaining legal advice.'" *AU New Haven, LLC v. YKK Corp.*, 2016 WL 6820383, at *2 (S.D.N.Y. Nov. 18, 2016) (citing *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961)).  However, the log does not indicate whether those conditions are met; it does not say that these communications are related to information requests from the corporation's attorneys in order to render informed legal advice.  Thus, the log does not provide sufficient information to conclude that these communications are protected by the attorney client privilege.

C.    **The Descriptions in the Third Supplemental Privilege Log Do Not Establish the Work Product Privilege**

Panasonic's assertions of work product are inadequate because the privilege log does not establish that the withheld documents were "prepared 'in anticipation of litigation' and therefore subject to work product." *See Schaeffler*, 806 F.3d at 43.[4]  For example, Log Entry No. 75 is an email

---

[4] The Court does not address the adequacy of Panasonic's assertion of the work product privilege related to entries that it has already deemed privileged under the attorney client privilege.

between employees "discussing or reflecting legal advice or analysis regarding GTA." It may be that "the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Id.* But the description does not assert as much. Instead, it is equally possible that "the document was 'prepared in the ordinary course of business.'" *Id.* If so, work-product does not apply. Another withheld document is an email between two employees "*discussing* or reflecting legal advice or analysis *regarding* anticipated litigation." Log. Entry No. 111. This, too, is insufficient. Although the description mentions anticipated litigation, it does not establish that the document was prepared "*because of* the prospect of litigation.'" *Schaeffler*, 806 F.3d at 43. Panasonic bears the "burden of establishing the applicability of the work product protection." *Wultz v. Bank of China Ltd.*, 304 F.R.D. 384, 395 (S.D.N.Y. 2015). It has not done so. Panasonic may update its privilege log to provide more detail to establish work product, but the descriptions in the third supplemental log are inadequate.

### D.     The Privilege Log Does Not Fully Comply with Local Rule 26.2(a)

Finally, Panasonic should add the author and document descriptions of the withheld attachments to emails to comply with Local Rule 26.2, unless "divulgence of the information would cause disclosure of the allegedly privileged information." L. Civ. R. 26.2(a)(2). WCA objects to the fact that several entries list only the author of a parent email that attaches other documents, but do not list the author of the attachments. *See* Log Entry Nos. 1, 11, 72 ("document reflecting in-house counsels' legal analysis" attached to an email to or from in house counsel); Log Entry. Nos. 7, 74, 114 ("attorney draft provided in connection with request for legal advice or analysis," attached to an email from the attorney"); 53, 76, 78, 80, 82–89, 92–93, 130–31, 135–136, ("attachment to privileged email for legal analysis"), 118, 181–84, 185A–C, and 186–D ("document providing confidential information to obtain legal advice or analysis from in-house counsel"). Panasonic contends that "the documents attached to the parent-email have the same sender and recipient

information as the parent email."  Opp. at 20.

There is little case law with respect to whether a party must provide the author of documents attached to emails under the Local Rules.  But the text of the Local Rules provides guidance:  it provides an expansive definition of the term document.  Local Rule 26.2 is clear that the privilege log must disclose "the author of the document" and "the general subject matter of the document." L. Civ. R. 26.2(a)(2)(A).  Local Rule 26.3, which is titled "Uniform Definitions in Discovery Requests," defines the term "document" broadly.  That rule, namely Local Civil Rule 26.3, "has performed a useful role in simplifying definitions that are commonly used in discovery requests." *See* Pre-2024 Committee Note.  Local Civil Rule 26.3 states:  "The term 'document' is defined to be synonymous in meaning and equal in scope to the usage of the term 'documents or electronically stored information' in Fed. R. Civ. P. 34(a)(1)(A)."  L. Civ. R. 26.3(c).  Federal Rule of Civil Procedure 34(a)(1)(A) refers to "any designated documents or electronically stored information— including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form." Fed. R. Civ. P. 34(a)(1)(A).  The Local Rules also provide that "[a] draft or non-identical copy is a separate document within the meaning of this term."  L. Civ. R. 26.3(c)(2).

Given the text of the rule, and the expansive definition of the term document to include things like drafts and ESI as separate "documents" subject to Local Rule 26.2(a), Panasonic should add the author and general subject of the attachments to emails identified in its privilege log.  This is likely not difficult for many of the entries.  For example, Log Entry Nos 7, 74, 114 are described as "attorney draft[s] provided in connection with request for legal advice or analysis" that are attached to an email sent by a named lawyer.  It may be the case that the author of the email—whose identity has already been disclosed—is the same as the author of the draft.  If listing the author does not

reveal privileged information, Panasonic should list the name of the lawyer who created the draft.

However, Panasonic need not divulge information if "divulgence of the information would cause disclosure of the allegedly privileged information." L. Civ. R. 26.2(a)(2). This limitation may shield Panasonic from having to describe fully all of its email attachments. For example, many of Panasonic's entries are described as "document[s] providing confidential information to obtain legal advice or analysis from in-house counsel," Log Entry Nos. 118, 181–84, 185A–C, and 186–D. Panasonic need not disclose information about these documents if "divulgence of the information would cause disclosure of the allegedly privileged information." L. Civ. R. 26.2(a)(2). Panasonic has not, however, objected to disclosure of the information required by Local Rule 26.2(a) on these grounds.

The parties should cooperate here. The Local Rules encourage parties to work together "in developing efficient ways to communicate the information required by Local Civil Rule 26.2 without the need for a traditional privilege log." Indeed, "[t]he Committee Note to Local Rule 26.2 recognizes that, with the proliferation of emails and email chains, traditional privilege logs are expensive and time-consuming to prepare," and therefore some deviation from the traditional model may be appropriate in some circumstances. *See Brown v. Barnes & Noble, Inc.*, 474 F. Supp. 3d 637, 647 (S.D.N.Y. 2019), *aff'd*, 2020 WL 5037573 (S.D.N.Y. Aug. 26, 2020). In sum, Panasonic should add the author and document descriptions of the withheld attachments to its log. It need not do so, however, if divulgence of the information would cause disclosure of the allegedly privileged information.

### E. The Deficiencies in Panasonic's Privilege Log Are Not So Flagrant as To Justify a Wholesale Waiver of Privilege

Although many of Panasonic's privilege log entries are deficient, the Court does not find that a waiver of any privilege is appropriate. As already stated, "only 'flagrant' violations of these rules should result in a waiver of privilege." *Dey, L.P.*, 2010 WL 5094406, at * 2. "Whether waiver is

22

warranted depends on such factors as the length of the delay, the willfulness of the transgression, and the harm to other parties." *Id.*

Here, there was an exceptional delay. Panasonic produced its first privilege log nearly three months after responding to WCA's requests for production. Opp. at 2. This violates Rule 26.2, which requires the production of a privilege log at "the time of the response to the discovery or disclosure . . . ." L. Civ. R. 26.2(b). But WCA also violated Rule 26.2. Neither party produced a privilege log at the time of its discovery productions. Had WCA followed Rule 26.2(b) and timely provided its privilege log, the Court likely would have found Panasonic's delay to be flagrant. However, although Panasonic was at times recalcitrant, Panasonic ultimately took incremental steps to attempt to remedy WCA's concerns within a reasonable amount of time. It produced revised privilege logs on September 16, September 23, and October 4, 2024. Under these circumstances, Panasonic's delay is mitigated because WCA also delayed the production of its own log, and because Panasonic attempted to remedy some of WCA's concerns.

Second, the Court does not believe that the willfulness of Panasonic's transgression weighs in favor of finding a waiver of privilege. Panasonic asserts that it understood that there was an "implicit" agreement between the parties, given WCA's own late production of its privilege log. Of course, Local Rule 26.2 requires a written agreement to override the rule's timing requirement precisely to avoid this kind of uncertainty. Here, the was no written agreement. But as with the delay, because both parties did not fully adhere to the Local Rules, Panasonic's conduct is relatively less flagrant. Additionally, there is caselaw supporting both parties' views about the specificity required for a privilege log to be deemed adequate. Many of Panasonic's descriptions are on the cusp; some courts have found similar descriptions to be inadequate, while others have found similar descriptions to be sufficient. *Compare S.E.C. v. Beacon Hill Asset Mgmt. LLC*, 231 F.R.D. 134, 144 (S.D.N.Y. 2004) (concluding that "correspondence or e-mails seeking, transmitting or reflecting legal

advice" was a sufficient description), *with In re Aenergy, S.A.*, 451 F. Supp. 3d at 326 (describing descriptions such as "confidential communications among GE employees and GE in-house counsel seeking or conveying legal advice relating to the on-sale contracts and the Credit Facility Agreement" as "vague" and "overbroad"). With respect to the dispute concerning the Local Rule, there is relatively little guiding caselaw, particularly with respect to attachments. Given the ambiguity, the parties' disagreements with respect to the descriptions required to be included in the privilege log are reasonable. The Court does not find the willfulness of Panasonic's transgression to justify a finding of waiver.

Finally, WCA was harmed by Panasonic's delay in producing an adequate privilege log. The parties have already conducted depositions, which may need to be redone. Even so, because waiver of privilege is an extreme remedy, Panasonic should be given an opportunity to supplement its privilege log with the benefit of judicial guidance. *See, e.g., Norton*, 2017 WL 943927, at *6 ("Defendants are directed to promulgate a revised privilege log[.]"). If it turns out to be necessary in the future, WCA may seek leave to take additional depositions in order to remedy any prejudice. At this stage, however, the deficiencies are not so flagrant as to warrant a finding of waiver.

### F.    Panasonic Need Not Pay WCA's Fees and Costs

In the event that a motion to compel discovery is granted—or if the disclosure or requested discovery is provided after the motion was filed—"the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion . . . to pay the movant's reasonable expenses in making the motion, including attorney's fees." Fed. R. Civ. Pro. 37(a)(5). "But the Court must not order this payment if:  (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." *Id.* In other words, "the rule provides . . . that the losing party on a

motion to compel must pay reasonable expenses, barring extenuating circumstances." *Creative Res. Grp. of New Jersey, Inc. v. Creative Res. Grp., Inc.*, 212 F.R.D. 94, 103 (E.D.N.Y. 2002) (emphasis in original).

In assessing whether or not a party's position was "substantially justified," the Court applies a standard that "holds the opposing party to an objective test of reasonableness and does not require that he acted in good faith." *Bowne of New York City, Inc.*, 161 F.R.D. 258, 262 (S.D.N.Y. 1995) (*citing Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). "Substantial justification" may be demonstrated where "there is 'justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request,' or 'if there exists a genuine dispute concerning compliance.'" *AIG Global Asset Management Holdings v. Branch et al.*, 2005 WL 425494, at *1 (S.D.N.Y. Feb. 18, 2005) (*quoting Jockey Int'l, Inc. v. M/V "Leverkusen Express"*, 217 F. Supp. 2d 447, 452 (S.D.N.Y. 2002)). While the test is an objective one, some courts have reasonably noted that the question of substantial justification should be decided "with some leniency" "given the fact that attorneys must advocate for their clients." *In re Omeprazole Patent Litig.*, 2005 WL 818821, at *6 (S.D.N.Y. Feb. 18, 2005), *aff'd*, 227 F.R.D. 227 (S.D.N.Y. 2005) (quoting *AmBase Corp.*, 161 F.R.D. at 262, 265).

The Second Circuit has held that the imposition of Rule 37(a) monetary sanctions is appropriate as a disciplinary measure "to ensure that a party will not benefit from its own failure to comply with discovery." *Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988). "Further, monetary sanctions serve to encourage litigants and their counsel to promptly comply with discovery orders at the risk of being penalized for disobedience." *Fund Comm'n Serv., II, Inc. v. Westpac Banking Co.*, 1996 WL 469660, at *5 (citing *National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 643, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) (per curiam)).

Here, Panasonic need not pay WCA's reasonable costs associated with this motion because

Panasonic's failure to comply with WCA's discovery demands was substantially justified. This is the type of "case in which the parties dispute opposing views of the law," namely, the "privilege invocations" by Panasonic. *See Underdog Trucking, L.L.C. v. Verizon Servs. Corp.*, 273 F.R.D. 372, 377 (S.D.N.Y. 2011). As already explained, Panasonic's descriptions often toe the line between what is and is not adequate. Panasonic offered descriptions of withheld documents that are similar to some cases in which the court upheld the privilege log. *See Beacon Hill Asset Mgmt. LLC*, 231 F.R.D. at 144 ("e-mails seeking, transmitting or reflecting legal advice" was sufficient). Other cases, however, support WCA's view that more detail is required. *See In re Aenergy, S.A.*, 451 F. Supp. 3d at 326 (describing similar descriptions as "vague"). Therefore, Panasonic's failure to provide an adequate log was justified as there was a genuine dispute concerning the rules governing compliance. The Court does not conclude that ordering Panasonic to pay WCA's costs is appropriate here.

## IV.  MOTIONS TO SEAL

Finally, WCA filed a motion to seal two exhibits to the Wyant Declaration—Exhibit I and Exhibit S—both of which include internal Panasonic communications that Panasonic deemed confidential. Dkt. No. 183. However, both parties agree that neither exhibit generally requires sealing in their entirety. WCA, for its part, only filed the documents under seal because of Panasonic's assertion of confidentiality. WCA does not, in fact, "believe either exhibit is subject to sealing." *Id.* Panasonic, in its response to WCA's letter motion, proposes limited redactions to each exhibit. Dkt. No. 188. According to Panasonic, it "marked certain documents 'Confidential' including the communications referenced in Exhibit I, and the e-mail chain in Exhibit S, because they reflect internal communications, not known outside of Panasonic, that contain sensitive information related to Panasonic's proprietary business and marketing strategies and product development information, which, if revealed, could provide valuable insight into Panasonic's current business practices that competitors could exploit." *Id.*

There is a long-established "general presumption in favor of public access to judicial documents." *Collado v. City of New York*, 193 F. Supp. 3d 286, 288 (S.D.N.Y. 2016). The Second Circuit has defined "judicial documents" as documents filed with a court that are "relevant to the performance of the judicial function and useful in the judicial process." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (quotation omitted); *see also Lytle v. JPMorgan Chase*, 810 F. Supp. 2d 616, 620–621 (S.D.N.Y. 2011). The presumption of access is "based on the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice." *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995).

Applications to seal documents must therefore be "carefully and skeptically review[ed] . . . to insure [sic] that there really is an extraordinary circumstance or compelling need" to seal the documents from public inspection. *Video Software Dealers Ass'n v. Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994). "Documents may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Lugosch*, 435 F.3d at 120 (quotation omitted); *see also Bernstein v. Bernstein Litowitz Berger & Grossmann LLP,* 814 F.3d 132, 141 (2d Cir. 2016) (requiring that a court make "specific, rigorous findings before sealing a document or otherwise denying public access"). Examples of "higher values" that may justify the sealing of documents include national security concerns, attorney-client privilege, law enforcement interests, or the privacy interests of third parties. *See E.E.O.C. v. Kelley Drye & Warren LLP,* No. 10 Civ. 655 (LTS) (MHD), 2012 WL 691545, at *2 (S.D.N.Y. Mar. 2, 2012) (collecting cases).

"The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action[.]" *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997). To meet its heavy burden, the moving party "must offer specific facts demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Wells*

*Fargo Bank, N.A. v. Wales LLC*, 993 F. Supp. 2d 409, 413 (S.D.N.Y. 2014) (quotation omitted). "[T]he decision as to access [to judicial records] is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon v. Warner Commc'ns*, 435 U.S. 589, 599 (1978).

In *Mirlis v. Greer*, the Second Circuit summarized the three steps that the Court must follow to determine whether the presumption of public access attaches to a particular document and bars disclosure. *See* 952 F.3d 51, 59 (2d Cir. 2020). First, the Court determines whether the document is a "judicial document," namely, "one that has been placed before the court by the parties and that is relevant to the performance of the judicial function and useful in the judicial process." *Id.* (quotation omitted). Second, the Court "proceeds to 'determine the weight of the presumption of access to that document.'" *Id.* (quoting *United States v. Erie Cty.*, 763 F.3d 235, 239, 241 (2d Cir. 2014)). "The weight to be accorded is 'governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts.'" *Id.* (quoting *Amodeo*, 71 F.3d at 1049). "Finally, the court must identify all of the factors that legitimately counsel against disclosure of the judicial document, and balance those factors against the weight properly accorded the presumption of access." *Id.*

Having evaluated these factors, Panasonic's request to redact the exhibits is granted. First, both documents sought to be sealed are judicial documents because they were submitted in support of WCA's motion to compel documents withheld as privileged.

The second and third *Mirlis* factors weigh against public disclosure of the redacted portions of the sealed materials. The weight of the presumption of access to each of the exhibits is low. The sealed documents had no role in the Court's assessment of the adequacy of Panasonic's privilege log because the Court evaluated Panasonic's assertions of privilege on the face of the log. Additionally, there are legitimate factors that counsel against disclosure. For example, the information relates to

"specific business information and strategies, which, if revealed, 'may provide valuable insights into a company's current business practices that a competitor would seek to exploit." *Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 511 (S.D.N.Y. 2015) (approving redactions). Here, Exhibit I contains Panasonic's proprietary and confidential information related to product development, including information like software development timelines. Similarly, the two sentences that Panasonic proposes to redact in Exhibit S relate to Panasonic's "internal marketing strategies and decision-making processes, that if disclosed, would reveal the innerworkings of Panasonic's Global Communications System's department that is *not* known to the public." Dkt. No. 188. Panasonic's business interests outweigh the very low weight of the presumption of public access to the sealed documents at issue here. Accordingly, the Court will permit Exhibits I and S to be redacted in a manner consistent with Panasonic's proposals set forth in Dkt. No. 188.

## V.    CONCLUSION

For these reasons, WCA's motion is granted in part. Panasonic should provide an updated privilege log to WCA by May 30, 2025. The Clerk of Court is directed to terminate the motions pending at Dkt. Nos. 179, 183.

SO ORDERED.

Dated: May 17, 2025
    New York, New York

_____
GREGORY H. WOODS
United States District Judge