USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/4/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X
                                                 :

WCA HOLDINGS III, LLC,                 :
                                                 :

                         Plaintiff,     :               1:20-cv-7472-GHW
                                                 :

                -v-                     :              MEMORANDUM
                                                   :             OPINION & ORDER

PANASONIC AVIONICS CORPORATION,    :

                                                 :

                         Defendant.    :

                                                 :
-------------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

       WCA Holdings III, LLC ("WCA") is the holding company for a private jet—a Boeing 737. Panasonic Avionics Corporation ("Panasonic") was hired to install an inflight entertainment system on the jet. But the system did not work to WCA's satisfaction. This lawsuit is the result. Over the years since its filing, the parties have spent a lot of time and money to develop this case for trial. During the discovery period, WCA disclosed two expert witnesses who had been hired to testify on its behalf. After Panasonic disclosed its experts' reports, WCA's experts reexamined their view of the case and offered supplemental reports, offering new opinions that fell outside of the scope of their original testimony. More importantly, the supplemental reports were served after the deadline for completion of expert discovery.

       In a separate opinion, the Court denied Panasonic's request to exclude the opinions disclosed in WCA's experts' belated supplemental reports. Rather than impose that severe sanction, the Court found that the prejudice resulting from WCA's late disclosures could be cured by permitting Panasonic to depose the experts about their supplemental reports. Because WCA's experts had already been deposed about their initial reports, the Court ordered WCA to pay for the reasonable fees and costs incurred by Panasonic to conduct the additional depositions.

This opinion addresses a single question:  how much should WCA pay to compensate Panasonic for the work its lawyers did to respond to WCA's late expert disclosures?  Because the fees and costs incurred by Panasonic to conduct the depositions were reasonable, WCA must pay the full amount that Panasonic paid its counsel to do that work.  While the amount at issue is substantial, it is the consequence of WCA's tactical decision to enhance its litigation position through late modifications to its experts' opinions.  WCA's adversary should not bear the cost of that decision.

## I.    BACKGROUND

### A.    Factual Background

On July 24, 2025, the Court resolved a discovery dispute in this case.  The issue:  whether to grant Defendant's motion to exclude supplemental expert disclosures by Plaintiff's experts that were served long after the deadline to do so.  Dkt. No. 296-1 ("Tr.").  The Court reviewed the experts' supplemental reports and concluded that they were not proper supplements under Federal Rule of Civil Procedure 26(e), "because they contain new opinions and are based on information that was known and knowable at the time of their initial reports."  *Id.* at 12:4-6.

However, the Court declined to exclude all testimony based on the supplemental reports as requested by Defendant.  While the Court found that Defendant would be prejudiced by permitting Plaintiff to use the expert testimony embodied in the supplemental reports, the Court believed "that the prejudice can be addressed through a lesser sanction than preclusion."  *Id.* at 16:14-16.  As a sanction, the Court announced the following:

> I am going to reopen expert discovery to permit the deposition of the plaintiff's two expert[] witnesses regarding their supplemental reports.  To alleviate the prejudice to defendant, I am ordering that plaintiff pay the reasonable legal fees for no more than two lawyers for defendant to prepare for and conduct the supplemental depositions. Plaintiff must also pay the direct costs of the depositions—meaning the cost for retaining the reporter.  Plaintiff need pay no additional costs associated with the depositions.  In addition, Defendant may present rebuttal reports to the supplemental expert reports.

*Id.* at 17:11-21.

> The next day, the Court issued a written order describing the sanction:

> The deadline for the completion of all expert discovery is extended to August 30, 2025 for the sole purpose of permitting the deposition of Plaintiff's experts, Mr. Chatfield and Mr. Voth, regarding their supplemental reports. The reasonable fees of two counsel for Defendant to conduct those depositions will be paid by Plaintiff, as will the direct costs of the depositions. . . . Plaintiff will be required to pay the reasonable attorney's fees and costs of Defendant in connection with those depositions, including any hourly or other payment due to the experts to prepare for and participate in those depositions.

Dkt. No. 255 ("Order").

Defendant used the opportunity to depose Plaintiff's experts about their supplemental reports. Consistent with the Court's Order, two lawyers worked to prepare for the depositions: Wanda D. French-Brown and James McConnell from Fox Rothschild LLP (the "Firm"). Ms. French-Brown was a senior partner at the Firm and was the lead lawyer representing Panasonic in this action. Dkt. No. 296 ("French-Brown Decl.") ¶ 14. She was the co-chair of the Firm's intellectual property litigation practice. *Id.* ¶ 12. Mr. McConnell was also a partner at the Firm. *Id.* ¶ 6. With undergraduate degrees in mathematics and chemistry, "Mr. McConnell focuses on matters involving complex technologies." *Id.* ¶ 13. Ms. French-Brown and Mr. McConnell billed their time at a rate of $770 per hour and $486 per hour, respectively. *Id.* ¶ 6; Dkt. No. 303 ("Second French-Brown Decl.") ¶ 5. Those rates reflected substantial discounts to the Firm's standard billing rates. French-Brown Decl. ¶ 11.

Ms. French-Brown and Mr. McConnell billed a total of 78.4 hours to prepare for, and conduct, the expert depositions, as shown in the following table:

| ATTORNEY | | TIME BILLED | HOURLY RATE | TOTAL BILLED |
|---|---|---|---|---|
| French-Brown | | | | |
| | Chatfield–Prep | 14.0 hours | $770/hour | $10,780.00 |

|  | | | | |
|---|---|---|---|---|
|  | Chatfield–First Chair Deposition | 4.5 hours | $770/hour | $3,465.00 |
|  | Voth–Prep | 7.3 hours | $770/hour | $5,621.00 |
|  | Voth—Second Chair Deposition | 2.5 hours | $770/hour | $1,925.00 |
|  | **SUB TOTAL** | **28.3 hours** | **$770/hour** | **$21,791.00** |
| McConnell | | | | |
|  | Chatfield–Prep | 30.1 hours | $486/hour | $14,628.60 |
|  | Chatfield–Second Chair Deposition | 4.5 hours | $486/hour | $2,187.00 |
|  | Voth–Prep | 13.0 hours | $486/hour | $6,318.00 |
|  | Voth–First Chair Deposition | 2.5 hours | $486/hour | $1,215.00 |
|  | **SUB TOTAL** | **50.1 hours** | **$486/hour** | **$24,348.60** |
|  | **TOTAL** | **78.4 hours** | | **$46,139.60** |

*Id.* ¶ 21.  These hours are reflected in counsels' invoice to their client.  *Id.* Ex. D.  The invoice

contains detailed descriptions of the time billed by each lawyer.

As the table indicates, the bulk of the hours billed by the Firm was spent preparing for the

deposition of Thomas B. Chatfield regarding his supplemental report (44.1 hours).  Ms. French-

Brown explained that Mr. Chatfield's new report required substantial analysis because

> the New Chatfield Report contained:  (A) two entirely new methodologies calculating the total value of upgrades to the eX1 System ("Equipment Upgrades")—amounting to a difference of over $1 million from his earlier method; (B) new opinions and calculations about completion center bids; (C) new bases for his opinion about components that fall under the definition of "any and all upgrades" and (D) new opinions about the eXConnect System.

*Id.* ¶ 16.

Ms. French-Brown delegated responsibility to Mr. McConnell to prepare deposition strategy

for both depositions.  *Id.* ¶ 15.  In her view, "Mr. McConnell's technical background and experience

was critical to determining the scope of changes to Chatfield's opinions."  *Id.*  Ms. French-Brown

explained that the bulk of Mr. McConnell's 30.1 hours preparing for Mr. Chatfield's deposition,

"was spent conducting an in-depth analysis of the New Chatfield Report vis-à-vis the original

Chatfield Report so that Mr. McConnell could prepare deposition questions for Ms. French-Brown

(21.5 hours), followed by researching Chatfield's background and publications for potential points of probing (*e.g.*, inconsistencies between litigation opinions and prior work, qualifications for specific opinions rendered, etc.) (1.4 hours); and strategizing the lines of questioning and exhibits to be used during Chatfield's second deposition (7.2 hours)." *Id.* ¶ 18.

Panasonic's counsel spent substantially less time preparing for the deposition of Drew E. Voth (20.3 hours). Mr. Voth's updated opinions regarding Plaintiff's damages relied on Mr. Chatfield's updated analysis. *Id.* ¶ 19. Therefore part of the time spent preparing for Mr. Chatfield's deposition "formed the foundation for Panasonic's preparation for Voth's second deposition." *Id.*

The deposition of Mr. Canfield took place on August 26, 2026. *Id.* ¶ 5. The deposition of Mr. Voth took place two days later, on August 28, 2026. *Id.* The supplemental deposition of each of the experts was relatively brief: counsel billed 4.5 hours to conduct the deposition of Mr. Chatfield and 2.5 hours for the deposition of Mr. Voth. *Id.* ¶ 22.[1] Still, Mr. Voth's second deposition was longer than his first. Opp. at 6. And, as to Mr. Chatfield, the aggregate "duration of the second deposition was only one hour and twenty minutes fewer than Mr. Chatfield's first deposition, which addressed his entire opening report . . . ." Opp. at 10.

On October 14, 2025, Panasonic's counsel asked Plaintiff to pay the legal fees and expenses associated with the depositions. French-Brown Decl. ¶ 24. They requested reimbursement of $53,377.40 ($46,285.40 in attorney's fees and $7,092.26 in court reporter costs). *Id.* WCA disputed the amount, claiming that it was excessive given the "narrow" scope of the supplemental reports. *Id.* ¶ 25. The meet and confer process that followed surfaced a disagreement between the parties regarding the scope of discovery permitted by the Court's sanction Order. "Taking a very narrow view, WCA claimed that . . . the Court strictly limited the second depositions to only questions

---

[1] Counsel did not bill for the full duration of each of the two depositions. Mr. Chatfield's deposition spanned 5 hours and 45 minutes, including breaks. Dkt. No. 300 ("Opp.") at 10 (citing French-Brown Decl. Ex. C). Mr. Voth's deposition spanned 2 hours and 52 minutes, including breaks. Opp. at 6 (citing French-Brown Decl. Ex. C).

about the 'new' information set forth in its supplemental expert reports." *Id.* ¶ 27.  By contrast, Panasonic argued that "there were no restrictions about the scope of the supplemental depositions to be taken by Panasonic's counsel." *Id.* ¶ 28.  In addition, Panasonic contended that it "was entitled to test the veracity and consistency of WCA's experts' testimony between the two depositions and two sets of expert reports." *Id.*

The parties' exchanged offers to resolve the fee dispute without the need for motion practice.  WCA offered to pay Panasonic $20,000.  *Id.* ¶ 30.  But after WCA rejected Panasonic's final proposal to reduce its legal fees by 15%, Panasonic filed this motion.  *Id.* ¶ 32.

**B.      Procedural History**

Panasonic filed this motion for the fees and costs associated with the supplemental depositions on January 26, 2026.  Dkt. No. 294 (notice of motion); Dkt. No. 295 ("Mem.").  Ms. French-Brown filed an affidavit in support of the motion.  *See generally* French-Brown Decl.  One of the attachments to the affidavit was a copy of the invoice documenting the Firm's time on the project.  *See generally id.* Ex. D.  In its motion, Panasonic argued that the hourly rates of its lawyers were reasonable and that the hours spent preparing for and conducting the depositions were reasonable.  Panasonic also requested that the Court order reimbursement of the cost of preparing the transcripts for the depositions.

Panasonic also requested that the Court order WCA to pay the costs of the motion practice that led to this opinion.  "Because the fees incurred by Panasonic in preparing this fee application was caused by WCA's failure to obey the Court's Opinion & Order in the first instance—despite Panasonic's repeated efforts to resolve WCA's objections—a reimbursement of reasonable fees are warranted."  Mem. at 14.  Mary Jean Kim, a counsel at the Firm, completed all of the work billed to file the motion.  French-Brown Decl. ¶¶ 34–35.  At the time that the motion was filed, Ms. Kim had billed 25 hours to the project at a rate of $485 per hour.  *Id.* ¶ 36.

WCA filed its opposition to the motion on February 17, 2026.  Opp.  In its opposition, WCA accepted that the hourly rates charged by Ms. French-Brown and Mr. McConnell were reasonable.  Opp. at 5.  But it argued that the number of hours that they billed was excessive.  Principally, WCA argued that the work conducted by Panasonic's counsel exceeded the scope of discovery permitted by the Court's sanction Order.  Rather than opening the door to plenary discovery from the experts, WCA contended that the "Order was clear on its face:  Panasonic was to prepare for and ask questions about the new information in the supplemental reports."  *Id.* at 6.

WCA also argued that many of the questions posed during the supplemental depositions duplicated questions that had been posed to the experts in their prior depositions.  *Id.* at 7, 11.  In addition, WCA contended that the Firm's time records were not precise enough to allow the Court to evaluate the amount of time the lawyers spent preparing to ask questions about the supplemental reports "versus re-asking questions" about the experts' original reports.  *Id.* at 13.

WCA argued that Panasonic's request for reimbursement of court reporter fees was excessive as a direct consequence of the excessive length of the depositions.  "This cost was excessive because . . . Panasonic far exceeded the scope of the deposition, generating excess transcript pages without cause."  *Id.*

Finally, WCA argued that an award of fees for Panasonic's motion practice was unwarranted for two reasons.  WCA first argued that Panasonic "should not be rewarded for demanding non-compensable costs."  *Id.* at 14.  Because the depositions and the preparation for them took too long, WCA asserted, Panasonic should not have pursued the full cost that they incurred; instead, they should have accepted the $20,000 "generously offered" by WCA to resolve the dispute.  *Id.*  And WCA asserted that because Panasonic had failed to provide the billing records associated with the fee request, the application should be denied.  *Id.*

The motion was fully briefed on February 26, 2026, when Panasonic filed its reply.  Dkt. No. 302.

## II.      LEGAL STANDARD

"As with the award of statutory attorneys' fees to a party that prevails on the merits, an award of fees as a sanction for discovery abuse begins with a lodestar analysis." *Rahman v. Smith & Wollensky Rest. Grp., Inc.*, No. 06 Civ. 6198, 2008 WL 1899938, at *2 (S.D.N.Y. Apr. 29, 2008). "[T]he lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)).  While presumptively reasonable, the lodestar is not "conclusive in all circumstances." *Id.* at 167 (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010)).  A district court "may adjust the lodestar when it does not adequately take into account a factor that may properly be considered in determining a reasonable fee.  However, such adjustments are appropriate only in rare circumstances, because the lodestar figure [already] includes most, if not all, of the relevant factors constituting a reasonable attorney's fee." *Id.* (internal quotations and citations omitted, alteration in original) (quoting *Perdue*, 559 U.S. at 553-54).  District courts have "considerable discretion" in determining what constitutes a reasonable award of attorneys' fees. *Arbor Hill*, 522 F.3d at 190.

The Second Circuit has directed that district "courts should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *Restivo v. Hessemann*, 846 F.3d 547, 590 (2d Cir. 2017) (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)).  Those hourly rates "are the market rates 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and

8

reputation.'" *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)).

To determine a reasonable hourly rate, the Second Circuit has also instructed district courts to "bear in mind *all* of the case-specific variables." *Arbor Hill*, 522 F.3d at 190. The touchstone inquiry is "what a reasonable, paying client would be willing to pay." *Id.* at 184; *see id.* at 192 ("By asking what a reasonable, paying client would do, a district court best approximates the workings of today's market for legal services."). The court should "bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively" and "should also consider that [a client] might be able to negotiate with his or her attorneys." *Id.* at 190. A district court may additionally factor into its determination "the difficulty of the questions involved, the skill required to handle the problem, the time and labor required, the lawyer's experience, ability and reputation, the customary fee charged by the Bar for similar services, and the amount involved." *OZ Mgmt. LP v. Ozdeal Inv. Consultants, Inc.*, No. 09 Civ. 8665, 2010 WL 5538552, at *2 (S.D.N.Y. Dec. 6, 2010) (alterations adopted) (quoting *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1263 (2d Cir. 1987)), *report and recommendation adopted*, 2011 WL 43459 (S.D.N.Y. Jan. 5, 2011); *see also Arbor Hill*, 522 F.3d at 190 ("[T]he district court should consider . . . the *Johnson* factors . . . .").

After establishing the appropriate hourly rate, a court must determine how much time was reasonably expended in order to arrive at the presumptively reasonable fee. "The relevant issue . . . is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992); *see also Flores v. J&B Club House Tavern, Inc.*, No. 10-cv-4332, 2012 WL 4891888, at *5 (S.D.N.Y. Oct. 16, 2012) (internal citation omitted) ("The critical inquiry is whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.").

A court should exclude from the lodestar calculation "excessive, redundant[,] or otherwise unnecessary hours." *Quaratino v. Tiffany & Co.,* 166 F.3d 422, 425 (2d Cir. 1999).  To determine the reasonableness of hours spent on a matter, "[t]he district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award" by a reasonable percentage. *Hensley v. Eckerhart*, 461 U.S. 424, 436-37.  "[I]n dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (internal quotation marks omitted).  "[T]rial courts need not, and indeed should not, become green-eyeshade accountants. . . .  [T]rial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

"The district court retains discretion to determine . . . what constitutes a reasonable fee." *Millea*, 658 F.3d at 166 (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 758 (2d Cir. 1998)). "However, this discretion is not unfettered," and "the district court must abide by the procedural requirements for calculating those fees articulated by [the Second Circuit] and the Supreme Court." *Id.*  "Attorney's fees must be reasonable in terms of the circumstances of the particular case . . . ." *Alderman v. Pan Am World Airways*, 169 F.3d 99, 102 (2d Cir. 1999).

The applicant for an award of fees bears "the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437.  A party seeking an award of attorneys' fees must support its request with contemporaneous time records that show "for each attorney, the date, the hours expended, and the nature of the work done." *N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).  "The applicant should exercise 'billing judgment' with respect to hours worked and should maintain

10

billing time records in a manner that will enable a reviewing court to identify distinct claims."

*Hensley*, 461 U.S. at 437.

## III.    DISCUSSION

### A.    Reasonable Rates

The hourly rates billed by Panasonic's counsel were reasonable.  WCA agrees that they were—with good reason, for here, each of the partners billed at reasonable hourly rates that are in line with market rates.  "[C]ourts in this district have generally found hourly rates of $400 to roughly $750 to be appropriate for partners in copyright and intellectual property cases."  *See Latin Am. Music Co. v. Spanish Broad. Sys., Inc.*, No. 13-cv-1526, 2020 WL 2848232, at *6 (S.D.N.Y. June 1, 2020) (Sullivan, J.).  In some cases, counsel with substantial experience have been awarded rates similar to those of partners.  *See, e.g.*, *Cawthon v. Lishuang*, 2024 WL 3813879, at *12 (S.D.N.Y. July 19, 2024), *report and recommendation adopted*, 2024 WL 4200389 (S.D.N.Y. Sept. 16, 2024) (awarding $570 an hour to a highly experienced of-counsel); *see also BMaddox Enters. LLC v. Oskouie*, No. 17 Civ. 1889, 2023 WL 1418049, at *4 (S.D.N.Y. Jan. 6, 2023) (finding $500 a reasonable hourly rate for attorneys with more than ten years of copyright experience).

As described above, the touchstone inquiry is "what a reasonable, paying client would be willing to pay." *Arbor Hill,* 522 F.3d at 184.  Here, Panasonic was willing to and did pay the requested rates.  *See* French-Brown Decl. ¶ 10.  That a reasonable, paying client paid the requested rates confirms that the rate is reasonable, because the rate paid by a reasonable client "best approximates the workings of today's market for legal services." *Arbor Hill,* 522 F.3d at 192.  On balance, after a consideration of "*all* of the case-specific variables," including the lawyers' experience, the comparable hourly rates charged by attorneys in this district for similar work, and the rate "a reasonable, paying client would be willing to pay," *id.* at 184, 190, the Court finds that each of the requested hourly rates are reasonable.

### B.    Reasonable Number of Hours

The number of hours that Panasonic's counsel worked on this matter was reasonable.  At the outset, their work fell within the scope of the Court's sanction order.  The Court reopened expert discovery to permit the deposition of the plaintiff's two expert witnesses regarding their supplemental reports.  The Order required that WCA pay reasonable fees of counsel to prepare for those depositions.  The Order permitted Panasonic to use up to two lawyers to do that work.  The Order also permitted Panasonic to use its experts to prepare for the depositions and required WCA to pay those experts' fees as well.  On its face, the work billed by Panasonic's counsel fit within all of those parameters.

WCA's objections to the reasonableness of Panasonic's fees rest on a misconception—that the supplemental expert reports could be examined in a vacuum, without careful consideration of the experts' prior reports and testimony that were modified by the supplemental reports.  WCA argued that Panasonic could only consider the "new" information contained in the supplemental reports.  French-Brown Decl. ¶ 27.  However, Panasonic's counsel made a reasonable determination that in order to understand the supplemental reports, they had to evaluate how the supplemental reports deviated from the prior reports, and how the supplemental reports impacted the experts' prior reports and testimony.  *Id* ¶ 28.

For example, for Panasonic to prepare to depose Mr. Chatfield regarding his supplemental report, Panasonic's counsel reasonably concluded that it was necessary to conduct an in-depth comparison of his supplemental report to his original report.  That decision was reasonable, given the substantive differences between Mr. Chatfield's original report and the supplemental report.  The bulk of the preparation work for Mr. Chatfield's deposition was dedicated to a substantive analysis of the supplemental report.  *Id.* ¶ 18.  That work was undertaken by Mr. McConnell, a partner at the Firm.  Panasonic's decision to staff a senior lawyer with a background in math on the

project was reasonable, and may, indeed, have been cheaper than the alternative: hiring an expert to analyze the report, who would then have to work to educate a lawyer about its substance.

Mr. McConnell spent a substantial number of hours evaluating the substance of Mr. Chatfield's report. But the Court has reviewed each of his time entries and does not have a basis to conclude that Mr. McConnell's time was spent in an unreasonable manner.

At base, WCA's argument that it was not reasonable for Panasonic's counsel to explore the impact of the supplemental reports on the reports and testimony on the reports they supplemented lacks merit. Panasonic's counsel reasonably examined WCA's initial expert reports in detail in order to evaluate the meaning and effect of the supplemental reports. It was also reasonable to explore topics covered by the original reports in order to evaluate the impact of the supplemental reports on the opinions offered in the original reports. The Court has reviewed all of counsels' individual time entries and has found none that are evidently excessive or redundant.

The depositions themselves were not unreasonably long: they clocked in at 4.5 billable hours and 2.5 billable hours respectively. WCA takes issue with a handful of questions that overlapped those asked at the experts' initial depositions. *See* Opp. at 7–8; 11–12. But the amount of deposition time taken up by the redundant questions identified by WCA is not substantial. The Court does not have a reasoned basis upon which to reduce the amount of deposition time billed for any such redundancies. WCA's speculation that the depositions might have been conducted in 1 to 2 hours without them is not supported. And it is based on a *post hoc* assessment of the decisions by Panasonic's counsel, rather than an assessment of whether a reasonable attorney would have engaged in similar time expenditures "at the time the work was performed." *Grant*, 973 F.2d at 99.

### C.  Reasonable Costs

Panasonic's request for an award of costs is reasonable. The Court's sanction order permitted Panasonic to recover the costs of the depositions. "As with attorneys' fees, the requesting

party must substantiate the request for costs." *Guo v. Tommy's Sushi, Inc.*, No. 14 Civ. 3964, 2016 WL 452319, at *3 (S.D.N.Y. Feb. 5, 2016). WCA's argument that the costs are excessive is based on its contention that the depositions were too long. Because the Court has found that the depositions were reasonable in length, this argument is not persuasive. The costs for which Panasonic seeks reimbursement are adequately documented and are reasonable.

### D.    Fees for Motion Practice

Panasonic is entitled to recover the fees associated with this motion practice. First, the Court finds that fees associated with preparing the fee application are within the bounds of the Order. "Since Rule 37(b)(2)(C) mandates payment of reasonable attorney's fees 'caused by the failure' to obey the Court's order, it follows that attorney's fees incurred in preparing the fee application to determine the appropriate amount of the sanctions award are necessarily 'caused by the failure' to obey the Court's order, where the sanctions motion has been granted, such as here." *LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC*, No. 12-cv-7311, 2016 WL 5812105, at *7 (S.D.N.Y. Sept. 22, 2016). "Even when not expressly granted by a court order, courts have routinely awarded fees for reasonable hours spent to prepare fee applications." *Teradek LLC v. Shenzhen Hollyland Tech Co.*, No. 20 Civ. 9170, 2025 WL 3227344, at *3 (S.D.N.Y. Nov. 19, 2025). "Bringing a successful motion for compensatory sanctions and fees necessarily entails the effort of compiling those fees." *Citigroup Inc. v. Seade*, No. 21 Civ. 10413, 2023 WL 1971827, at *2 n.1 (S.D.N.Y. Jan. 6, 2023).

Panasonic's request for reimbursement of its fees to litigate this dispute is reasonable. The briefing of this motion was delegated entirely to Ms. Kim, a counsel at the Firm. While Ms. French-Brown worked on the fee application, Panasonic is not seeking reimbursement for Ms. French-Brown's work. Second French-Brown Decl. ¶ 7. Ms. Kim billed 31.8 hours in the aggregate to this motion practice. *Id.* ¶¶ 6–7. Her 17.7 hours drafting the moving brief and supporting declaration, "required synthesis of the factual record, and targeted legal research to prepare a comprehensive fee

14

application." *Id.* ¶ 6.  She spent 14.1 hours preparing the reply brief, "analyzing WCA's opposition, developing responsive legal arguments, conducting issue-specific legal research, and the drafting of a thorough reply brief that addressed factual mischaracterizations and the controlling legal standards." *Id.* ¶ 7.  The Court has reviewed Ms. Kim's time records and has found no entries that are excessive.

Panasonic has adequately documented the fees sought for Ms. Kim's work.[2]  In its opposition, WCA argued that Panasonic had failed to do so because her billing records were not included with its initial application.  Opp. at 14.  But Panasonic presented the billing records to the Court together with its reply brief.  Second French-Brown Decl. Exs. M and N.  The delay was justified because Panasonic did not know how much its motion practice would cost at the time that it filed its motion.  That information was available when Panasonic filed its reply, and the detailed records were then presented to the Court.

WCA's argument that Panasonic should not recover its fees for this motion practice was premised on its belief that Panasonic's request for reimbursement was excessive, and that, consequently, Panasonic should have accepted WCA's $20,000 offer to resolve the dispute.  Because the work undertaken by Panasonic's counsel fell within the scope of the sanctions Order and was otherwise reasonable, WCA's argument is not persuasive.

## IV.    CONCLUSION

The Court awards Panasonic $46,139.60 in attorneys' fees and costs in the amount of $8,993.50, for a total of $55,133.10.  The Court expects to award Panasonic attorney's fees for the

---

[2] With one exception.  The Court cannot determine the amount that Ms. Kim billed for her work on the moving papers based on the submissions presented to the Court.  Exhibit M to the Second French-Brown Declaration includes the time entries for that work.  The Court has reviewed those time entries and has found them to be reasonable.  That invoice shows that Ms. Kim billed at a rate of $486 per hour.  However, in her declaration, Ms. French-Brown writes the following regarding that invoice: "On top of the discounted hourly rate, Panasonic was provided with an additional discount for this invoice."  Second French-Brown Decl. ¶ 6.  The amount ultimately billed to the client was redacted from the invoice presented to the Court, so the Court cannot see how much Ms. Kim actually billed for that work.  Because her fees are reasonable at her base rate of $486 per hour, the Court expects that it will find the lesser amount billed for the work to be reasonable.  Lacking information about the rate actually billed to the client, however, the Court cannot calculate the proper amount to award.

cost of this motion practice as well when Panasonic presents documentation that addresses the issue noted in footnote 2, above. Panasonic is ordered to file a supplemental submission and affidavit addressing that issue no later than June 12, 2026. WCA is ordered to pay Panasonic $46,139.60 no later than June 15, 2026.

This award is substantial. But it is the direct consequence of WCA's failure to comply with the scheduling order. WCA had the choice to rely on its initial expert reports. Instead, it chose to obtain new supplemental opinions—presumably to improve its likelihood of success on the merits. This is the price of that tactical decision.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 294.

SO ORDERED.

Dated: June 4, 2026

_____
GREGORY H. WOODS
United States District Judge